1  BO BRYAN JIN (SBN 278990)
   bryan.jin@stblaw.com
2  JONATHAN C. SANDERS (SBN 228785)
   jsanders@stblaw.com
3  SIMPSON THACHER & BARTLETT LLP
   2475 Hanover Street
4  Palo Alto, CA  94304
   Telephone: 650-251-5000
5  Facsimile: 650-251-5002

6  *Counsel for Defendants Alibaba Group Holding*
   *Limited, Alibaba Group (US) Inc., Alibaba*
7  *Cloud US LLC, Alibaba.com, US LLC, and*
   *Alibaba.com US Ecommerce Corp.*

8

9

10                  UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13
   BWB CO., LTD, a Japan limited liability        Case No. 23-cv-5917-JD
14 company,
                                                  **DEFENDANTS' NOTICE OF**
15                    Plaintiff,                  **MOTION AND MOTION TO**
                                                  **DISMISS PLAINTIFF'S**
16            v.                                  **COMPLAINT FOR PATENT**
                                                  **INFRINGEMENT**
17 ALIBABA GROUP HOLDING LIMITED,
   a Cayman Islands company, ALIBABA             Date: March 7, 2024
18 GROUP (US) INC., a Delaware company,          Time: 10:30 a.m.
   ALIBABA CLOUD US LLC, a Delaware              Judge: Hon. James Donato
19 limited liability company, ALIBABA.COM        Courtroom: 11
   US LLC, a Delaware limited liability
20 company, ALIBABA.COM US ECOMMERCE
   CORP., a Delaware company,
21
                      Defendants.
22

23

24

25

26

27

28

**<u>TABLE OF CONTENTS</u>**

**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENT .................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 2

I.       THE PATENTS-IN-SUIT ............................................................................. 2

II.      PLAINTIFF'S INFRINGEMENT ALLEGATIONS ........................................... 4

III.     PERSONAL JURISDICTION ALLEGATIONS AGAINST TWO DEFENDANTS ........ 4

IV.      WILLFULNESS ALLEGATIONS .................................................................. 4

LEGAL STANDARD ................................................................................................ 4

ARGUMENT ........................................................................................................... 6

I.       The Patents-in-Suit Claim Unpatentable Subject Matter Under 35 U.S.C § 101 ............... 6

         A.       Step 1:  All of the Asserted Patents Claim an Unpatentable Abstract Idea ............... 6

         B.       Step 2: The Claims of the Patent Contain No "Inventive Concept" ..................... 9

II.      Plaintiff's Boilerplate Allegations Fail to Plausibly Allege Direct Infringement .............. 10

         A.       Plaintiff Fails to Plead Any Direct Infringement in the United States ................... 11

         B.       Plaintiff Fails to Plead Receipt of "Pre-Customs Clearance Information" ............. 12

         C.       Plaintiff Fails to Plead Any Server Connected to a Customs "Authority" ............. 12

         D.       Plaintiff Fails to Plead the Existence of Numerous Other Claim Elements ............ 13

         E.       Plaintiff Fails to Plead *How* Defendants Infringed Any Patent-in-Suit ................. 13

III.     The Complaint Fails Adequately to Plead Personal Jurisdiction Over AGHL and Ecommerce ........................................................................................ 14

IV.      The Complaint Pleads No Facts Raising a Plausible Inference of Willfulness ................. 15

CONCLUSION ................................................................................................. 15

Defs.' Notice of Motion and Motion to Dismiss                                    Case No. 23-CV-5917-JD

i

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**<u>Cases</u>**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ........................................................................ 5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ................................................................................... 5, 10

*Amba Marketing Sys. Inc. v. Jobar International, Inc.*,
  551 F.2d 784 (9th Cir. 1977) ............................................................................ 5

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
  2016 WL 1719545 (N.D. Cal. Mar. 9, 2016) ................................................... 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 4, 13

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ......................................................................................... 5

*Broidy Capital Mgmt., LLC v. Qatar*,
  2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) ................................................. 14

*BuySAFE v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) .................................................................... 9, 10

*Cal. Mut. Ins. Co. v. Hoverboardsegway*,
  2020 WL 381043 (C.D. Cal. Apr. 23, 2020) .................................................... 14

*Centillion Data Systems, LLC v. Qwest Communications*,
  631 F.3d 1279 (Fed. Cir. 2011) ...................................................................... 11

*CNET Networks, Inc. v. Etilize, Inc.*,
  528 F. Supp. 2d 985 (Fed. Cir. 2007) ............................................................. 11

*Content Extraction & Transmission LLC v. Wells Fargo*,
  776 F.3d 1343 (Fed. Cir. 2014) ........................................................................ 7

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ........................................................................ 7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ....................................................................................... 14

*e.Digital Corp. v. iBaby Labs, Inc.*,
  2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) ................................................. 10

*Elec. Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) .................................................................... 6, 9

*Englert v. Alibaba.Com Hong Kong Ltd.*,
  2012 WL 162495 (E.D. Mo. Jan. 19, 2012) .................................................... 15

Defs.' Notice of Motion and Motion to Dismiss                 Case No. 23-CV-5917-JD

ii

*Fuzzysharp Techs. Inc. v. NVIDIA Corp.*,
    2013 WL 2249707 (N.D. Cal. Apr. 18, 2013) ........................................................ 15

*Hall v. Bed Bath & Beyond, Inc.*,
    705 F.3d 1357 (Fed. Cir. 2013) ........................................................................ 13

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    839 Fed. Appx. 534 (Fed. Cir. 2021) ............................................................... 6, 7

*Immersion Corp. v. Fitbit, Inc.*,
    313 F. Supp. 3d 1005 (N.D. Cal. 2018) ................................................................ 7

*In re Sagent Tech., Inc.*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ............................................................. 13

*In re TLI Commun's LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ........................................................................... 9

*In re Villena*,
    745 Fed. Appx. 374 (Fed. Cir. 2018) .................................................................. 6

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (2015) ........................................................................................ 7

*Keck v. Alibaba.com, Inc.*,
    Case No. 5:17-cv-05672 (N.D. Cal. Sept. 17, 2018) .................................... 13, 15

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ......................................................................... 14

*Maxell, Ltd. v. VIZIO, Inc.*,
    2022 WL 2167619 (C.D. Cal. Mar. 9, 2022) .................................................... 10

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
    566 U.S. 66 (2012) ..................................................................................... 5, 10

*Microsoft Corp. v. AT & T Corp.*,
    550 U.S. 437 (2007) ........................................................................................ 11

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016) ......................................................................... 8

*MyMail, Ltd. v. OoVoo, LLC*,
    613 F. Supp. 3d 1142 (N.D. Cal. 2020) ........................................................... 7, 8

*MyMail, Ltd. v. ooVoo, LLC*,
    934 F.3d 1373 (Fed. Cir. 2019) ...................................................................... 6, 7

*Novitaz Inc. v. inMarket Media, LLC*,
    2017 WL 2311407 (N.D. Cal. May 26, 2017) ................................................... 10

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................................. 5

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

iii

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) ............................................................... 5

*Shortridge v. Found. Constr. Payroll Serv., LLC*,
    2015 WL 1739256 (N.D. Cal. Apr. 14, 2015) ......................................... 9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, L.L.C.*,
    874 F.3d 1329 (Fed. Cir. 2017) .............................................................. 5

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) .............................................................. 8

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    2012 WL 1831543 (N.D. Cal. May 18, 2012) ...................................... 15

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018) .............................................................. 8

*Walden v. Fiore*,
    571 U.S. 277 (2014) .............................................................................. 14

*West View Research, LLC v. Audi AG*,
    685 F. App'x 923 (Fed. Cir. 2017) ......................................................... 6

## <u>Rules</u>

35 U.S.C. § 101 ............................................................................... 1, 5, 6

Rule 12(b)(2) ........................................................................................ 5

Rule 12(b)(6) ........................................................................................ 4

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

iv

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on March 7, 2024 at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11, 19th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable James Donato: (1) Defendants Alibaba Group Holding Limited, Alibaba Group (US) Inc., Alibaba Cloud US LLC, Alibaba.com, US LLC, and Alibaba.com US Ecommerce Corp. (collectively, "Defendants") will and hereby do move the Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Complaint for failure to state a claim, and (2) Defendants Alibaba Group Holding Limited and Alibaba.com US Ecommerce Corp. will and hereby do further move the Court under Federal Rule of Civil Procedure 12(b)(2) for an order dismissing the Complaint for lack of personal jurisdiction.

Defendants respectfully request that the Court grant the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2) and dismiss this case with prejudice on the grounds that: (1) the patents-in-suit are invalid under 35 U.S.C. § 101 for failing to claim patent-eligible subject matter; (2) the Complaint fails to plead facts raising a plausible inference of infringement; and (3) the Complaint further fails to plead facts supporting a plausible inference of personal jurisdiction with respect to Alibaba Group Holding Limited and Alibaba.com US Ecommerce Corp. Defendants also move to dismiss Plaintiff's willfulness allegation under Rule 12(b)(6).

This motion is based on this Notice of Motion; the Memorandum of Points and Authorities submitted herewith; the Declaration of Jonathan C. Sanders and exhibits submitted herewith; the argument of counsel; and such other matters as the Court may consider.

## ISSUES TO BE DECIDED

(1)     Whether Plaintiff's patent infringement Complaint should be dismissed because the patents-in-suit are invalid under 35 U.S.C. § 101 for failure to recite patent-eligible subject matter;

(2)     Whether Plaintiff's patent infringement Complaint should be dismissed for failure to plead facts supporting a plausible inference of direct infringement by any Defendant;

(3)     With respect to Alibaba Group Holding Limited and Alibaba.com US Ecommerce Corp., whether the Complaint should be dismissed for lack of personal jurisdiction; and

(4)     Whether Plaintiff's Complaint raises a plausible inference of willful infringement.

Defs.' Notice of Motion and Motion to Dismiss                     Case No. 23-CV-5917-JD

i

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff BWB Co., Ltd. ("BWB") alleges that Defendants directly infringe four patents-in-suit. The patents, which are all closely related and share a common specification, are directed to an e-commerce system for selling products from one country to another. The purported invention's alleged improvement over the prior art consists of the ability to provide "pre-customs clearance information"—so that a consumer knows ahead of time that the product will clear customs in the destination country. But each patent claims nothing more than the abstract idea of obtaining, transmitting, and displaying information on a user device. None of the patents claims any technological improvement or, indeed, *any* specific hardware or software other than a series of generic "servers," "processors," and a user's "terminal" that perform the same type of information gathering a human would have performed. Under hornbook Federal Circuit case law, all of the patents are invalid under 35 U.S.C. § 101 ("§ 101") for failing to claim patentable subject matter.

Plaintiff also falls far short of pleading facts sufficient to raise a plausible inference of direct infringement. The Complaint itself contains *no* information concerning how Defendants purportedly infringe any patent-in-suit. And the rudimentary claim charts Plaintiff attaches to the Complaint contain little more than a handful of screenshots that, in many cases, have nothing to do with the claim elements Defendants allegedly infringed. The claim charts also fail to plead facts showing that any part of the system used, offered, or sold by Defendants is in the United States. Finally, Plaintiff has failed adequately to plead numerous specific claim elements, including even what part of the accused products comprises each "server," that Defendants obtain "clearance information" from any customs "authority," or that this information is displayed on a user device.

With respect to Alibaba Group Holding Limited ("AGHL") and Alibaba.com US Ecommerce Corp., the Complaint should also be dismissed for the separate reason that the Complaint fails to plead facts even suggesting that these defendants have any connection to California or to any website accessible in California or, indeed, any connection to the forum.

Finally, Plaintiff's willfulness allegation should be dismissed. Plaintiff pleads no facts concerning willfulness, including no factual allegation that Defendants were aware of patents-in-

Defs.' Notice of Motion and Motion to Dismiss      Case No. 23-CV-5917-JD

1

suit or alleged infringement or that any Defendant intentionally or recklessly infringed.  Absent

any facts supporting an inference of willfulness, resolution at the pleading stage is appropriate.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

**I.      THE PATENTS-IN-SUIT**

The Complaint asserts four patents, U.S. Patent Nos. 10,460,366 (the "'366 Patent"),

11,138,644, 11,776,027, and 11,776,028 (collectively, the "patents-in-suit").  Complaint

("Compl."), Exs. A, C, E, G.  All of the patents share a common specification.  The patents are

directed to "a system for realizing logistics across economic zones."  Compl., Ex. A ('366 Patent)

at 1:8−9.  The patents assert that a flaw in the prior art was that "customs clearance procedures are

performed after a product is purchased, and thus, there are cases where it is determined that

custom conditions have not been met ex post facto."  *Id.* at 1:34−38.  The purported improvement

in the patents-in-suit is "to make customs clearance processing smoother."  *Id.* at 1:48−49.

The patents claim several different servers that purportedly facilitate this process.  An "EC

server" connects to an e-commerce system and a user device.  *Id.* at 1:50−52.  A "customs

clearance authentication server . . . administers pre-customs clearance information."  *Id.* at

1:52−53.  The customs clearance authentication server generates pre-customs clearance

information and transmits it to an "administration server."  *Id.* at 1:63−2:1.  The administration

server receives the pre-customs clearance information from the authentication server and provides

that information to the EC server.  *Id.* at 1:55−63.  Finally, the EC server transmits the pre-

customs clearance information and product information for display on the user terminal, and the

user accepts "an instruction to circulate a product specified by the product information via

customs."  *Id.* at 2:2−6.

Claim 1 of the '366 patent contains claim elements in each patent and is representative:

1. A commerce system comprising:
   [1] **a plurality of EC servers** that connect to a user terminal in a first economic zone and
   execute E-commerce;
   [2] **a customs clearance authentication server** that connects to a customs terminal **run
   by customs authorities** in a second economic zone and administers pre-customs clearance
   information; and
   [3] **an administration server** that is connected to the customs clearance authentication
   server and the plurality of EC servers;

Defs.' Notice of Motion and Motion to Dismiss                                    Case No. 23-CV-5917-JD

2

[4] the administration server including at least one first processor that executes the steps of

[5] generating a registration request that includes product information regarding a product provided by a product administration server to the administration server

[6] transmitting the registration request to the customs clearance authentication server

[7] **receiving pre customs clearance information** regarding the product from the customs clearance authentication server, wherein **the pre-customs clearance information indicates whether or not the product has been cleared by the customs authorities in the second economic zone**, the pre-customs clearance information including information on a tariff;

[8] notifying the pre-customs clearance information to at least one of the plurality of EC servers such that **the pre-customs clearance information is displayed** together with the product information **on a site accessed by the user terminal**;

[9] the customs clearance authentication server including at least one second processor that executed the steps of:

[10] generating pre customs clearance information based on the product information, in response to a request from the at least one of the plurality of the EC servers; and

[11] transmitting the generated pre-customs clearance information to the administration server, and

[12] each of the plurality of EC servers including at least one third processor that executes the steps of:

[13] transmitting the received pre-customs clearance information along with the product information to the user terminal in response to a search request made by a user, wherein **the user terminal displays a search results list** including the product information for one or more products, and the search results list includes an indication associated with each product of the one or more products, **the indication indicating whether or not pre-customs clearance has been performed** for a respective product of one or more products;

[14] accepting, from the user terminal, an instruction to circulate a product specified by the product information via customs;

[15] thereby improving customs efficiency when circulating products between the first economic zone and the second economic zone.

'366 Patent at Claim 1 (emphasis added). Figure 1 of the' 366 Patent, shown with the key

components highlighted below, shows the e-commerce system:



FIG. 1

Defs.' Notice of Motion and Motion to Dismiss      Case No. 23-CV-5917-JD

3

## II. PLAINTIFF'S INFRINGEMENT ALLEGATIONS

Plaintiff's Complaint itself contains no allegations concerning how Defendants purportedly infringe the patents. *See* Compl. at 2:1−12:3. Instead, Plaintiff attaches a series of rudimentary claim charts. *Id.*, Exs. B, D, F, H. Although Plaintiff submitted a claim chart for each patent, each is substantially similar. *See id.* Indeed, Plaintiff relies for almost every claim element on a handful of cursory website screenshots. *See, e.g.*, *id.*, Ex. B at p. 4 of 36 (screenshot referencing "online commissioned customs provide customs broker declaration" and "customs clearance points"); *id.* at p. 5 of 36 ("[r]eal-time online tracking of customs declaration status"); *id.* at p. 6 of 36 ("[p]rovide one-stop compliance fulfillment services such as tariff remittance"); *id.* at 12 of 36 ("export data").

## III. PERSONAL JURISDICTION ALLEGATIONS AGAINST TWO DEFENDANTS

The Complaint fails to make any personal jurisdiction allegations against two of the Defendants, AGHL and Alibaba.com US Ecommerce Corp. ("Ecommerce"). The Complaint alleges that AGHL is a Cayman Islands company located in China (*id.* ¶ 4) and that Ecommerce is a Delaware company located in New York. *Id.* ¶ 8. The Complaint contains no allegations that either of these defendants has any connection to California (or, for that matter, to the United States), other than the conclusory assertion—supported by no factual allegations—that, "[o]n information and belief, at all times material hereto, the Alibaba Defendants collectively owned, controlled and operated the websites" purportedly accessible in California. *Id.* ¶ 9.

## IV. WILLFULNESS ALLEGATIONS

Plaintiff's Complaint seeks "enhanced damages pursuant to 35 U.S.C. § 284." Compl. at 11:21 (Prayer for Relief). But the Complaint contains no factual allegations of willfulness, including no allegation that Defendants were previously aware of the patents-in-suit or the alleged infringement, except for the boilerplate statement—again supported by no factual allegations— that Defendants' infringement was "knowing and intentional." *See id.* ¶¶ 24, 31, 38, 45.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual detail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

Defs.' Notice of Motion and Motion to Dismiss

4

Case No. 23-CV-5917-JD

550 U.S. 544, 570 (2007). Specifically, the complaint must include sufficient "factual content allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Whether Plaintiff's patents are directed to ineligible subject matter under Section 101 of the Patent Act is a "threshold test," *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), which can "be determined at the Rule 12(b)(6) stage." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Section 101 defines the four categories of subject matter eligible for patent protection: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The United States Supreme Court has long recognized an exception to this provision: "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

When evaluating claims for patent-eligible subject matter, courts uses a two-part test established by the Supreme Court, commonly referred to as the "*Alice/Mayo*" test from the two cases from which it was derived. Step one determines "whether the claims at issue are directed to one of [the] patent-ineligible concepts." *Alice*, 573 U.S. at 217 (citing *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 76−78, (2012)). Step two then considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (quoting *Mayo*, 566 U.S. at 78−79). When applying this test, a single claim may be treated as representative of multiple asserted patents. *See, e.g., Alice*, 573 U.S. at 212 n.1, 213 n.2, (treating a single method claim as representative of all asserted method claims from four patents); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC.*, 874 F.3d 1329, 1333 (Fed. Cir. 2017).

Finally, Rule 12(b)(2) permits a party to move to dismiss for "lack of personal jurisdiction." Even at the pleading stage, Plaintiff "bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Plaintiff cannot "simply rest on the bare allegations of its complaint." *Id*. (quoting *Amba Mktg. Sys. Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

5

I.       **The Patents-in-Suit Claim Unpatentable Subject Matter Under 35 U.S.C § 101**

The patents-in-suit present a classic case of claiming unpatentable abstract ideas. Independent Claim 1 of the '366 patent, which is representative of all of the other asserted claims, asserts nothing more than a series of generic "servers" and "processors" that collect and transmit customs information—exactly what a human being would have done prior to the use of servers and computers. The patents neither claim nor describe ***a single physical aspect*** of any server, processor, or computer involved in the steps of any asserted claim—each of those devices is literally a black box. *See, e.g.*, '366 patent, Fig. 1. For the reasons set forth below, all of the patents claim unpatentable subject matter and are therefore invalid under 35 U.S.C. § 101.

A.       **Step 1:  All of the Asserted Patents Claim an Unpatentable Abstract Idea**

Defendants easily establish the first step of the *Alice/Mayo* test here, because representative Claim 1 of the '366 patent claims nothing more than the abstract idea of improving customs clearance efficiency by "gathering and analyzing" pre-customs clearance information and "then displaying the results," and the claim is "therefore directed to an abstract idea" under controlling Federal Circuit case law.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *accord, e.g., iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 Fed. Appx. 534, 536 (Fed. Cir. 2021) ("We have routinely held that claims directed to gathering and processing data are directed to an abstract idea.") (collecting cases); *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1378 (Fed. Cir. 2019) (finding claims that "'fall within the category of gathering and processing information'" invalid under § 101); *In re Villena*, 745 Fed. Appx. 374, 376 (Fed. Cir. 2018) ("Claim 57 recites the basic steps of receiving user input, producing property valuations, and providing display information.  This is a classic case of implementing an abstract idea on a computer, which is not eligible under *Alice*."); *West View Rsch., LLC v. Audi AG*, 685 F. App'x 923, 926 (Fed. Cir. 2017) (finding claims that "do not go beyond receiving or collecting data queries, analyzing the data query, retrieving and processing the information constituting a response to the initial data query, and generating a visual or audio response to the initial data query" directed to abstract idea); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343,

Defs.' Notice of Motion and Motion to Dismiss                                        Case No. 23-CV-5917-JD

6

1349 (2015) (explaining that "'mere [data-gathering] step[s] cannot make an otherwise
nonstatutory claim statutory'") (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d
1366, 1370 (Fed. Cir. 2011)); *Content Extraction & Transmission LLC v. Wells Fargo*, 776 F.3d
1343, 1347 (Fed. Cir. 2014) (claims directed to "abstract idea of 1) collecting data, 2) recognizing
certain data within the collected data set, and 3) storing that recognized data in a memory"); *In re
Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989) (holding that "'[data-gathering] step[s] cannot make an
otherwise nonstatutory claim statutory.'"); *Immersion Corp. v. Fitbit, Inc.*, 313 F. Supp. 3d 1005,
1027 (N.D. Cal. 2018) ("[C]laim 27 falls within the category of gathering and processing
information, which the Federal Circuit has established is an abstract idea.").

Like all of those cases, representative Claim 1 here claims nothing more than the
collection, processing, and display of information. A "customs clearance authentication server"
sends data to an "administration server." '366 patent, Claim 1 at 10:31−39. The administration
server receives "pre-customs clearance information" and provides it to an "EC server" for display.
*Id.* at 10:39−50. And the EC server transmits the clearance information along with production
information to the user, which provides "an instruction to circulate a product." *Id.* at 10:59−11:9.
In other words, each of these generic servers gathers and transmits information to be displayed by
the user—precisely the type of abstract idea that the Federal Circuit has deemed unpatentable for
decades. *See, e.g.*, *iLife Techs.*, 839 Fed. Appx. at 536; *MyMail*, 934 F.3d at 1378.

*MyMail, Ltd. v. OoVoo, LLC*, 613 F. Supp. 3d 1142 (N.D. Cal. 2020), is instructive.
There, the patents similarly related to a method for updating database "toolbars" on computers by
"send[ing] information about those databases to a network server, which in turn uses the sent
information to determine whether any of the databases require updates." *MyMail*, 613 F. Supp. 3d
at 1146−47. Defendant moved to dismiss under § 101. With respect to step one, the court
explained that "information itself is intangible," and, as a result, "the Federal Circuit has generally
found claims abstract where they are directed to some combination of ***acquiring information,
analyzing information, and/or displaying the results***." *Id.* at 1150 (emphasis added). The court
found that "the claims are analogous to claims that fall within the category of ***gathering and
processing information***, which the Federal Circuit has established is an abstract idea." *Id.* at 1160

Defs.' Notice of Motion and Motion to Dismiss                                            Case No. 23-CV-5917-JD

7

(emphasis added).  Similarly, merely adding "components" that were "all generic and function in a conventional manner"—specifically, "a 'user Internet device' and a server"—was not enough to transform that abstract idea into patent-eligible subject matter:

> Moreover, the claims call on these conventional components to perform their ***routine functions, including "displaying" a toolbar, "sending" and "receiving" information, "determining" something based on that information*** . . . . No language in the claims or the specifications "demonstrat[es] that the generic computer components function in an unconventional manner or employ sufficiently specific programming" . . . . Instead, the functions recited by the claims at issue—that is, ***"displaying," "sending," "receiving," "determining," and "initiating"***—are "specified at a high level of generality," which the Federal Circuit has found to be "insufficient to supply an inventive concept."

*Id.* at 1165−66 (emphasis added) (citations omitted).

Here, just as in *MyMail* and the numerous other cases set forth above, the patents claim describe nothing more than abstract ideas like gathering, sending, processing, and displaying customs information, using generic "servers" and "processors" that have no defined features.  *See, e.g.*, '366 patent at Claim 1 ("***transmitting*** the registration request") (emphasis added); *id.* ("***receiving*** pre-customs clearance information") (emphasis added); *id.* ("***generating*** pre-customs clearance information") (emphasis added); *id.* ("***display[ing]*** the search results list") (emphasis added).  Those are exactly the same abstract ideas that *MyMail* and dozens of other courts have held are insufficient abstract ideas that are unpatentable.  *See, e.g.*, *MyMail*, 613 F. Supp. 3d at 1150−51 (explaining that "displaying," "sending," and "receiving" are unpatentable abstract ideas).

Finally, steps that may be performed mentally—or that are the equivalent of human mental work—have long been held patent-ineligible.  *See, e.g.*, *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.,* 916 F.3d 1363, 1367 (Fed. Cir. 2019) (patent that "automate[s] 'pen and paper methodologies' to conserve human resources and minimize errors" was a "quintessential 'do it on a computer' patent"); *Voter Verified, Inc. v. Election Sys. & Software LLC,* 887 F.3d 1376, 1385−86 (Fed. Cir. 2018) (invalidating abstract idea for voter verification historically performed by humans and performed on generic computer); *Mortg. Grader, Inc. v. First Choice Loan Servs.*

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

8

*Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (computer-implemented system to enable borrowers to anonymously shop for loan packages claimed abstract idea when "[t]he series of steps covered by the asserted claims . . . could all be performed by humans without a computer."). Here, gathering customs information, transmitting it, and displaying it are all quintessential human work that does not become patentable merely by adding empty words like "server," "processor," or "computer."

**B.    Step 2: The Claims of the Patent Contain No "Inventive Concept"**

Plaintiff's claims also fail step two of the analysis, because the patents contain no inventive concept amounting to "significantly more" than the claimed abstract idea itself of sending and receiving data. *See generally Mayo*, 566 U.S. at 73. Indeed, the Federal Circuit has repeatedly held that patents invoking "computers and networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the application' of an abstract idea." *Elec. Power Grp.*, 830 F.3d at 1355; *accord, e.g.*, *TLI Commun's LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 614 (Fed. Cir. 2016) ("[H]ere we need to only look to the specification, which describes the ***telephone unit and server*** as either performing basic computer functions such as ***sending and receiving data***, or performing functions 'known' in the art . . . .") (emphasis added); *id.* at 614 ("Here, the ***server*** simply ***receives data***, 'extract[s] classification information . . . from the received data,' and 'stor[es] the digital images . . .'") (emphasis added); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a ***computer receives and sends the information over a network***—with no further specification—is not even arguably inventive.") (emphasis added); *Shortridge v. Found. Constr. Payroll Serv., LLC,* 2015 WL 1739256, at *11−12 (N.D. Cal. Apr. 14, 2015) (patent for processing payroll data describes routine computer-based application of "the well-known concept of categorical data storage, i.e., the idea of ***collecting information*** in classified form, then ***separating and transmitting that information.***") (emphasis added).

Here, the patents literally claim and describe "servers," "processors," and "computers" ***with no description*** of the physical characteristics of those empty nonce words—much less sufficient technological improvement to transform those abstract ideas into patentable subject matter. *See, e.g.*, '366 Patent at Fig. 1 (no information whatsoever about each server other than

black boxes with the words "EC Server," "Product Administration Server," "Administration Server," and "Customs Clearance Administration Server"); *id.* at Fig. 2 and 3:55−4:3 (depicting "functional configuration" of "administration server" consisting of "information processing apparatus," "communication unit," "data processing unit," "storage unit," and "delivery administration unit"); *id.* at 5:28−31 ("Storage unit 340 is a storage apparatus such as a hard disk or a semi-conductor memory, and stores a program for realizing the above described functions on administration server 300 when it is executed by an OS, or a processor."); *id.* at 6:43−44 ("Customers terminal 800 is a computer run by customs authorities."); *id.* at 2:35−36 ("Fig. 6 is a diagram showing an example of a screen displayed on user terminal 500").

But as explained above, merely describing generic "servers," "processors," "computers," or "terminals" that receive, transmit, and display data is not enough to transform an abstract idea into patentable subject matter. *See Alice,* 573 U.S. at 225 (no inventive concept where "the function performed by the computer at each step of the process" of the patents is "'[p]urely conventional'") (quoting *Mayo*, 566 U.S. at 79); *buySAFE, Inc.*, 765 F.3d at 1355 (computer sending and receiving information not even "arguably inventive"); *Maxell, Ltd. v. VIZIO, Inc.*, 2022 WL 2167619, at *6 (C.D. Cal. Mar. 9, 2022) ("Plaintiffs do not contend that any of the ***generic, black-box components*** recited in Claim 1 provide an inventive concept. Nor could they since such components were known in the art . . . . [W]ithout an explanation of the mechanism for ***how*** the result is accomplished, this purported feature of the invention cannot supply an inventive concept.") (emphasis added) (internal quotation marks and citations omitted). All of the asserted claims are therefore invalid under 35 U.S.C. § 101.

## II.    Plaintiff's Boilerplate Allegations Fail to Plausibly Allege Direct Infringement

The Complaint also fails for the separate reason that it fails to plead facts giving rise to a plausible inference of direct infringement. Direct infringement allegations must be plausible under *Iqbal* and "contain factual allegations that the accused product practices every element of at least one exemplary claim." *Novitaz Inc. v. inMarket Media, LLC*, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017); *accord, e.g.*, *e.Digital Corp. v. iBaby Labs, Inc.*, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016) (First Amended Complaint ("FAC") failed to state a claim where

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

10

plaintiff "ha[d] not attempted to map [a] limitation onto any allegations in the FAC" and, "based on the Court's own independent review, it [could not] discern how the FAC could be said to plausibly allege this limitation."); *Atlas IP LLC v. Pac. Gas & Elec. Co.*, 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016) ("[S]imply reciting some of the elements of a representative claim and then describing generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements, is insufficient.").

A.     **Plaintiff Fails to Plead Any Direct Infringement in the United States**

To be liable for direct infringement under 35 U.S.C. § 271(a), an alleged infringer must "make[ ], use[ ], offer[ ] to sell or sell[ ] any patented invention[ ] ***within the United States***." 35 U.S.C. § 271(a); *see Microsoft Corp. v. AT&T Corp.,* 550 U.S. 437, 441 (2007) ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country.").  Thus, Plaintiff must plausibly allege that the infringement occurred in the United States.  *See, e.g.*, *CNET Networks, Inc. v. Etilize, Inc.*, 528 F. Supp. 2d 985, 990−91 (N.D. Cal. 2007) (no infringement within United States where "system claims . . . for aggregating product information and creating a product catalog" occurred overseas); *Centillion Data Sys., LLC v. Qwest Commc'ns*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) ("We hold that to 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it" in the United States).

Here, Plaintiff alleges not a single fact showing that any part of the accused system—much less all of it—is made, used, or sold in the U.S.  *See, e.g.*, Compl. ¶ 21 (conclusory assertion that "Defendants' computer systems accessible through the Alibaba Website and/or the AliExpress Website" were made, used, or sold in United States); *id.*, Ex. B at page 8 of 36 (alleging existence of required server based on Chinese-language website).  To the contrary, each asserted claim on its face requires a server connected to a "first economic zone" (country) and a "second economic zone" (country), by definition requiring at least part of the system to operate outside of the United States.  *See* '366 Patent at Claim 1.  Because Plaintiff fails to make a single allegation as to ***where*** each alleged "server" is located, these allegations fall far short of plausibly alleging that any aspect of the system is made, sold, or used in the U.S.  *See, e.g.*, *CNET*, 528 F. Supp. 2d at 990-91.

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

11

### B. Plaintiff Fails to Plead Receipt of "Pre-Customs Clearance Information"

The heart of each claim is the receipt of "pre-customs clearance information" by the administration server from the custom clearance authentication server so that the customer knows whether the product has cleared customs before the sale is complete. *See, e.g.*, '366 Patent, Claim 1 at 10:39−45. Claim 1 makes clear that this "pre-customs clearance information" includes "***whether or not the product has been cleared*** by the customs authorities in the second economic zone") (emphasis added); *see id.* at Fig. 6 ("Pre-Custom Clearance . . . . ***OK***.") (emphasis added).

But Plaintiff does not even attempt to show that any aspect of the accused system shows whether the product "has been cleared" by a customs authority. For example, Plaintiff's claim charts cite screenshots stating that the product includes "visualization of the whole process of customs clearance points" (Compl., Ex B at p. 4 of 36), "full visibility of customs declaration link" (*id.* at p. 9 of 36), or "tariff remittance." (*id.* at p. 6 of 36.) These scant screenshots say nothing about whether the product has cleared customs. For example, allowing a customer to see the "customs declaration status" or what the tariffs might be does not show that the system "inquires as to whether or not the product has been cleared by customs." *See, e.g.*, *id.* at 6:13−14.

Plaintiff also does not plead the second part of this process, the "display" of pre-customs information on the "user terminal" with product information. *Id.* at 10:48−50. The closest Plaintiff comes is a single screenshot that does not display pre-customs clearing information at all, but rather "export data to prove trade strength" in order to "[u]se hot product for marketing." Compl., Ex. B at p. 12. None of this has anything to do with displaying customs information.

### C. Plaintiff Fails to Plead Any Server Connected to a Customs "Authority"

Representative Claim 1 of the '366 Patent requires "a customs clearance authentication server that connects to a customs terminal run by customs authorities in a second economic zone." '366 Patent, Claim 1 at 10:25−27. The specification makes clear that this "customs authority" is the actual governmental customs authority that "administers the import of articles." *Id.* at 3:25−26. But Plaintiff's claim charts only allege a server that connects to a customs ***broker*** that allegedly provides pre-clearance customs information. *See, e.g.*, Compl., Ex. B at p. 13 of 36 ("online commissioned customers ***broker***") (emphasis added); *id.* at p. 14 of 36 ("Customs ***Broker***

Defs.' Notice of Motion and Motion to Dismiss

12

Case No. 23-CV-5917-JD

Side Solution") (emphasis added). Because Plaintiff fails to allege a server connects to any "customs authority"—much less two different economic zones—the claims fail for this reason too.

### D. Plaintiff Fails to Plead the Existence of Numerous Other Claim Elements

Plaintiff also fails to plead facts giving rise to a plausible inference of direct infringement with respect to numerous other claim elements. For example, Plaintiff never even says what the administration server, customs clearance server, or EC servers actually are. *See, e.g.*, *id.* at p. 6 of 36 (to show "administration server," plaintiff merely points to screenshot discussing a "platform" that allows for "tariff remittance"); *id.* at p. 3 of 36 (pleading existence of "plurality of EC servers" merely by alleging that Alibaba has "sellers around the world"). To take yet another example, Plaintiff points to ***the exact same screenshot*** to plead the "administration server" and the "customs clearance server"—without saying which part of the screenshot shows what. *See id.* at pp. 4 & 21 of 36. Without point to what the allegedly infringing devices actually are, Defendants lack the fair notice required to defend this case. *See Twombly*, 550 U.S. at 555 & n.3 (plaintiff must "give [Defendants] fair notice of what the . . . claim is and the 'grounds' upon which it rests," which "requires a 'showing,' rather than a blanket assertion, of entitlement to relief.").

### E. Plaintiff Fails to Plead *How* Defendants Infringed Any Patent-in-Suit

Finally, Plaintiff does not even allege what each Defendant did to infringe any of the patents. *See, e.g.*, *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (explaining that plaintiff must, *inter alia*, "state the means by which" each "defendant allegedly infringes"). Nothing in the Complaint even suggests what each Defendant did—which Defendant purportedly operates which website? Which Defendant makes, uses, or sells each server, processor, or user terminal, and where? Without any detail about ***how*** each Defendant purportedly infringes, Plaintiff's Complaint fails. *See, e.g.*, *In re Sagent Tech., Derivative Litig.,* 278 F. Supp. 2d 1079, 1094−95 (N.D. Cal. 2003) ("A complaint that lumps together thirteen 'individual defendants,' where only three of the individuals [were] alleged to have been present for the entire period of the events alleged in the complaint, fails to give 'fair notice' of the claim to those defendants."); *Keck v. Alibaba.com, Inc.*, Case No. 5:17-cv-05672, at *20 (N.D. Cal. Sept. 17, 2018) (dismissing claims where "the Complaint's general reference to Alibaba without more does

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

13

not give sufficient notice whether all Alibaba Defendants or only specific entities engaged in the purported conduct.") (Exhibit A to the Declaration of Jonathan C. Sanders ("Sanders Decl.")).

### III. The Complaint Fails Adequately to Plead Personal Jurisdiction Over AGHL and Ecommerce

The Complaint should also be dismissed with respect to Defendants AGHL and Ecommerce because Plaintiff pleads no facts giving rise to personal jurisdiction. Plaintiff bears the burden of establishing that jurisdiction is proper and must "make a prima facie showing of jurisdictional facts." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). Personal jurisdiction may be general or specific. *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). In either case, the relevant inquiry focuses on each defendant's contacts with the forum. *See Walden v. Fiore*, 571 U.S. 277, 282−85 (2014).

A court may exercise general jurisdiction over a defendant in a forum "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). For a corporation, the paradigmatic forums for general jurisdiction are "place of incorporation and principal place of business." *Id.* at 118. But Plaintiff's Complaint alleges that these Defendants are neither incorporated in California nor have their primary place of business here. *See* Compl. ¶¶ 4, 8. Thus, the Complaint pleads no facts establishing general jurisdiction.

Nor does Plaintiff even attempt to plead specific jurisdiction. The Complaint contains no allegations that either Defendant has any connection to California, sold any product in California, operated any website accessible in California, or has any other connection to the state, other than the conclusory assertion—supported by no facts—that, "[o]n information and belief, at all times material hereto, the Alibaba Defendants collectively owned, controlled and operated the websites" purportedly accessible in California. *Id.* ¶ 9. These types of conclusory allegations fail. *See, e.g.*, *Cal. Mut. Ins. Co. v. Hoverboardsegway*, 2020 WL 3810438, at *8 (C.D. Cal. Apr. 23, 2020) (rejecting "conclusory, barebones assertions" that defendant directed products to state); *Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551, at *9 (C.D. Cal. Aug. 22, 2018) (rejecting "group pleading and conclusory allegations, which are insufficient to establish personal jurisdiction").

Defs.' Notice of Motion and Motion to Dismiss     Case No. 23-CV-5917-JD

14

As numerous other courts have already held for more than a decade, there is no personal jurisdiction under these circumstances. *See, e.g.*, *Keck*, Case No. 5:17-cv-05672-BFL, at *8 (dismissing claims against AGHL where plaintiff "failed to make a *prima facie* showing that AGHL had sufficient contacts with California and the United States to establish specific jurisdiction" merely because AGHL was a non-operating holding company listed on the New York Stock Exchange, including failing to show that AGHL "operated or controlled" Alibaba websites); *see also Englert v. Alibaba.Com Hong Kong Ltd.*, 2012 WL 162495, at *3−*4 (E.D. Mo. Jan. 19, 2012) (dismissing AGHL for lack of personal jurisdiction where "[t]here [wa]s no dispute that [AGHL] does not manufacture, display, or sell any products, and it does not operate the alibaba.com website or exercise any direct control over" the relevant subsidiaries); Sanders Decl. ¶¶ 2-5, Exs. A-D (collecting cases).

## IV. The Complaint Pleads No Facts Raising a Plausible Inference of Willfulness

Finally, Plaintiff offers no factual support for its willfulness claim. Compl. at 11:21 (Prayer for Relief). Willfulness requires a showing of intentional or reckless infringement, including at least knowledge of the patents and the likelihood of infringement. But Plaintiff does not plead *any* support for the proposition that Defendants knew about the patents, the alleged infringement, or otherwise met the standard for willful infringement, other than the bald assertion that Defendants' infringement was "knowing and intentional." *See id.* ¶¶ 24, 31, 38, 45.

These allegations fall far short of raising a plausible inference of willful infringement. *See, e.g.*, *Vasudevan Software, Inc. v. TIBCO Software Inc.,* 2012 WL 1831543, at *4 (N.D. Cal. May 18, 2012) (rejecting "conclusory assertion of 'willful infringement'" and noting, "without supporting facts," willfulness allegation fails); *Fuzzysharp Techs. Inc. v. NVIDIA Corp.*, 2013 WL 2249707, at *2 (N.D. Cal. Apr. 18, 2013) ("[Plaintiff] fails to state a claim for willful infringement because his allegations fail to raise the reasonable inference that NVIDIA was aware of the asserted patent.") (internal quotation marks and citations omitted).

## <u>CONCLUSION</u>

For all of the reasons set forth above, Defendants respectfully submit that the Court should dismiss Plaintiff's Complaint with prejudice.

Defs.' Notice of Motion and Motion to Dismiss

15

Case No. 23-CV-5917-JD

Dated: January 26, 2024

SIMPSON THACHER & BARTLETT LLP


By /s/ Bo Bryan Jin
BO BRYAN JIN (SBN 278990)
bryan.jin@stblaw.com
JONATHAN C. SANDERS (SBN 228785)
jsanders@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
Telephone: 650-251-5000
Facsimile: 650-251-5002