BO BRYAN JIN (SBN 278990)
bryan.jin@stblaw.com
JONATHAN C. SANDERS (SBN 228785)
jsanders@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA  94304
Telephone: 650-251-5000
Facsimile: 650-251-5002

*Counsel for Defendants Alibaba Group Holding
 Limited, Alibaba Group (US) Inc., Alibaba
Cloud US LLC, Alibaba.com, US LLC, and
Alibaba.com US Ecommerce Corp.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BWB CO., LTD, a Japan limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> ALIBABA GROUP HOLDING LIMITED, a Cayman Islands company, ALIBABA GROUP (US) INC., a Delaware company, ALIBABA CLOUD US LLC, a Delaware limited liability company, ALIBABA.COM US LLC, a Delaware limited liability company, ALIBABA.COM US ECOMMERCE CORP., a Delaware company, <br><br> Defendants. | Case No. 23-cv-5917-JD <br><br> **DECLARATION OF JONATHAN C. SANDERS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** <br><br> Date: March 7, 2024 <br> Time: 10:30 a.m. <br> Judge: Hon. James Donato <br> Courtroom: 11 |

I, Jonathan C. Sanders, declare as follows pursuant to 18 USC § 1746:

1. I am an attorney and Counsel at the law firm of Simpson Thacher & Bartlett LLP, counsel for Defendants Alibaba Group Holding Limited, Alibaba Group (US) Inc., Alibaba Cloud US LLC, Alibaba.com, US LLC, and Alibaba.com US Ecommerce Corp. in this action. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I submit this declaration in support of Defendants' Motion to Dismiss.

2. Attached hereto as Exhibit A is a true and correct copy of the September 17, 2018 Order Granting in Part and Denying in Part Alibaba Defendants' Motion to Dismiss in *Keck v. Alibaba.com, Inc. et al.*, Case No. 5:17-cv-05672.

3. Attached hereto as Exhibit B is a true and correct copy of the January 29, 2012 Order Granting Alibaba Defendants' Motion to Dismiss in *Englert v. Alibaba.Com Hong Kong Ltd. et al.*, Case No. 4:11-cv-1560.

4. Attached hereto as Exhibit C is a true and correct copy of the April 25, 2017 Order Granting Alibaba Defendants' Motion to Dismiss in *Atmos Nation LLC v. Alibaba Group Holding Ltd. et al.*, Case No. 0:15-cv-62104.

5. Attached hereto as Exhibit D is a true and correct copy of the November 8, 2011 Order Granting in Part and Denying in Part Alibaba Defendants' Motion to Dismiss in *Cepia LLC v. Alibaba Group Holding Ltd. et al.*, Case No. 4:11-cv-273.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 26, 2024 at Palo Alto, California

JONATHAN C. SANDERS (SBN 228785)

# EXHIBIT A

1
2
3
UNITED STATES DISTRICT COURT
4
NORTHERN DISTRICT OF CALIFORNIA
5
SAN JOSE DIVISION
6

7 MICHEL KECK,

8         Plaintiff,

Case No.  17-cv-05672-BLF

9
    v.

ORDER GRANTING IN PART AND
DENYING IN PART ALIBABA
DEFENDANTS' MOTION TO DISMISS;
AND GRANTING PLAINTIFF'S
MOTION TO STRIKE NEW
ARGUMENTS RAISED IN ALIBABA
DEFENDANTS' REPLY

10

11 ALIBABA.COM, INC., et al.,

12         Defendants.

[Re: ECF 152, 202-1]

13

14

15      Plaintiff Michel Keck brings this copyright and trademark infringement action against e-

16 commerce giant Alibaba Defendants[1] and numerous Chinese merchants.  *See generally* Compl.,

17 ECF 1.  Before the Court is Alibaba Defendants' motion to dismiss the complaint pursuant to

18 Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  Mot., ECF 152.  Having considered the

19 briefing and oral argument of the parties, as well as the governing law, the Court GRANTS IN

20 PART and DENIES IN PART Alibaba Defendants' motion to dismiss WITH LEAVE TO

21 AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART.

22  **I.    BACKGROUND**

23      Plaintiff is a professional artist who resides in Indiana and sells her artwork from her own

24 website and through authorized dealers.  Compl. ¶¶ 1, 148.  She alleges that her artwork was

25 reproduced and sold on Alibaba.com, AliExpress.com, Taobao Marketplace, Tmall, and 1688.com

26

27 [1] Defendants Alibaba.com, Inc., Alibaba Group (U.S.), Inc., Alibaba Group Holding, Ltd.,
Alibaba.com Hong Kong, Ltd., and Taobao China Holding, Ltd. are collectively referred to as
"Alibaba Defendants."  On February 7, 2018, Keck dismissed Defendant Alipay US, Inc. without
28 prejudice.  ECF 165.

United States District Court
Northern District of California

by Chinese merchants without her authorization.  *See, e.g.*, *id.* ¶¶ 156–161, 251, 255–58, 260–61, 263.  Plaintiff alleges that she sent numerous notices requesting that the infringing products be taken down from the virtual online stores.  *See, e.g., id.* ¶¶ 218, 224, 248–64.  Thereafter, on October 2, 2017, Plaintiff filed this lawsuit against Alibaba Defendants and numerous Chinese merchants ("Defendant Stores").

The Complaint further pleads the following.  Alibaba Group Holding, Ltd. ("AGHL") is organized and exists under the laws of Cayman Islands and has its principal address in Hangzhou, People's Republic of China.  Compl. ¶ 6.  Alibaba.com, Inc., is a Delaware corporation with its principal place of business in California.  *Id.* ¶¶ 3, 6.  It is an "indirect subsidiary of [AGHL] and is [AGHL's] principal American subsidiary."  *Id.*  Alibaba Group (U.S.), Inc. ("Alibaba US") is a Delaware corporation with its principal place of business in California.  *Id.* at ¶ 4.  It is a subsidiary of AGHL.  *Id.* ¶¶ 4, 6.

Alibaba.com Hong Kong, Ltd. ("Alibaba HK") is organized and exists under the laws of Hong Kong, S.A.R. with its principal place of business in Hong Kong.  Compl. ¶ 7.  Alibaba HK is "wholly owned by Alibaba.com Ltd."  *Id.*  Taobao China Holding, Ltd. ("TCHL") is organized and exists under the laws of Hong Kong, S.A.R. with its principal place of business in Hong Kong.  *Id.* ¶ 8.  TCHL is the "direct, wholly-owned, subsidiary of Taobao Holding."  *Id.*

Plaintiff asserts the following eight claims:

(1) direct copyright infringement (against Defendant Stores);

(2) contributory copyright infringement (against Alibaba Defendants);

(3) vicarious copyright infringement (against Alibaba Defendants);

(4) declaratory judgment (against Alibaba Defendants);

(5) injunctive relief (against Alibaba Defendants);

(6) injunctive relief (against Defendant Stores);

(7) contributory trademark infringement (against Alibaba Defendants); and

(8) contributory trademark infringement and false designation of origin under 15 U.S.C.
    § 1125(a) (against Alibaba Defendants).

Compl. ¶¶ 308–54.  The second, third, fourth, and fifth claims are class claims.

1        On January 31, 2018, Alibaba Defendants filed the instant motion seeking to dismiss

2    claims asserted against them pursuant to Rule 12(b)(2) and Rule 12(b)(6).  Thereafter, the Court

3    granted Plaintiff's request for jurisdictional discovery.  ECF 181.

4    **II.    LEGAL STANDARD**

5        **A.    Rule 12(b)(2)**

6        Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an

7    action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  "Where, as here, the defendant's

8    motion is based on written materials rather than an evidentiary hearing, the plaintiff need only

9    make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v.*

10   *Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted).

11   Uncontroverted allegations in the complaint are taken as true, *Schwarzenegger v. Fred Martin*

12   *Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), and factual disputes contained within declarations

13   or affidavits are resolved in the plaintiff's favor, *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th

14   Cir. 2008).

15       Where no applicable federal statute governs personal jurisdiction, "the law of the state in

16   which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements*

17   *Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  "California's long-arm statute allows courts to

18   exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of

19   the United States Constitution." *Id.*  A court may exercise personal jurisdiction "consistent with

20   due process only if [the defendant] has 'certain minimum contacts' with the relevant forum such

21   that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

22   justice.' " *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205

23   (9th Cir. 2006) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

24       "The strength of contacts required depends on which of the two categories of personal

25   jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at

26   1068.  General jurisdiction is based on certain limited affiliations that the defendant has with the

27   forum state.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  In

28   contrast, specific jurisdiction is based on the defendant's connections to the state with regard to the

United States District Court
Northern District of California

United States District Court
Northern District of California

particular controversy at issue.  *Id.*  Specific jurisdiction can thus exist even when the defendant's contacts with the forum state are limited, so long as the plaintiff's claims arise out of or relate to those contacts.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

### B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### III.    PLAINTIFF'S MOTION TO STRIKE NEW ARGUMENTS

After briefing closed, Plaintiff filed a motion for leave to submit her motion to strike new arguments raised in Alibaba Defendants' reply brief.  ECF 202.  Specifically, Plaintiff seeks to strike Alibaba Defendants' arguments that TCHL does not operate Taobao Marketplace and that amending the complaint to "plead claims against the entities that actually are responsible for operating Taobao Marketplace would be futile."  Mot. to Strike 5, ECF 202-1.  Alibaba Defendants filed an opposition to Plaintiff's motion for leave and motion to strike new arguments. ECF 203.  The Court granted Plaintiff's request for leave to file the motion to strike new arguments.  ECF 204.

During the June 14, 2018 hearing, the Court granted Plaintiff's motion to strike new arguments because Alibaba Defendants changed their position in their reply brief as to whether TCHL operates Taobao Marketplace.  *See* Hearing Tr. 39:5–8, ECF 208.  Plaintiff argues that her jurisdictional discovery was premised on Alibaba Defendants' earlier admission that TCHL operates Taobao Marketplace.  *Id.* at 15:5–14.  Plaintiff requests only to strike new arguments but

4

not the underlying evidence.  *See id.* at 4:1–12.  The Court agrees with Plaintiff.  Alibaba Defendants' claim that their reply papers merely reflect the facts identified during jurisdictional discovery is not persuasive.  The reply brief appears to argue a complete about face on the issue and as such, those arguments are prejudicial to Plaintiff.  While the Court will not consider Alibaba Defendants' new arguments, it will assess the evidence pertaining to the operation of Taobao Marketplace.

## IV.    DISCUSSION

Alibaba Defendants raises several grounds for bringing the instant motion.  First, Alibaba Defendants argue that AGHL and TCHL should be dismissed for lack of personal jurisdiction.  Mot. 1–2.  Second, Alibaba Defendants assert that the Complaint fails to state a claim against AGHL, Alibaba.com Inc., and Alibaba US.  *Id.* at 1–2.  Third, they contend that the fourth claim (declaratory judgment against Alibaba Defendants) and fifth claim (injunction relief against Alibaba Defendants) should be dismissed.  *Id.* at 2.  The Court addresses each argument in turn.

### A.    Dismissal Based on Lack of Personal Jurisdiction

The parties dispute whether this Court has personal jurisdiction over AGHL and TCHL.[2] A court has personal jurisdiction over a defendant if it is permitted by a long-arm statute and exercise of that jurisdiction does not violate due process.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  California's long-arm statute provides that a court may exercise jurisdiction to the extent that due process permits.  *Schwarzenegger*, 374 F.3d at 800–01.  If the defendant is "not subject to the personal jurisdiction of any state court of general jurisdiction," Federal Rule of Civil Procedure 4(k)(2) allows a court to exercise personal jurisdiction over federal law claims so long as the defendant's contacts with the United States as a whole satisfy due process.  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461–62 (9th Cir.

---

[2] While the Complaint alleges that infringement activities occurred on the Tmall and 1688.com websites, it does not plead that personal jurisdiction exists based on Alibaba Defendants' operation of those two websites.  *See* Compl. ¶¶ 101–23.  While Alibaba Defendants challenge Plaintiff's assertion of personal jurisdiction based on the Alibaba.com, AliExpress.com, and Taobao Marketplace websites, Plaintiff does not contend that personal jurisdiction exists due to the Tmall and 1688.com websites.  Accordingly, the Court declines to find personal jurisdiction based on operation of those two websites.

United States District Court
Northern District of California

2007).  Personal jurisdiction may be based on general jurisdiction or specific jurisdiction. *Daimler*, 571 U.S. at 126.

Alibaba Defendants contend that there is no general jurisdiction over AGHL and TCHL. Mot. 7–8.  Plaintiff does not dispute this contention.  As such, both parties' briefing focuses only on whether specific jurisdiction exists.

The Ninth Circuit has articulated a three-prong test to determine whether a defendant has sufficient "minimum contacts" with a forum to justify specific jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.  *Yahoo!*, 433 F.3d at 1206; *see also Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  If the plaintiff satisfies the first two prongs of this minimum contacts test, the burden then shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

The exact form of the Court's jurisdictional inquiry depends on the nature of the claim at issue.  "Purposeful direction" and "purposeful availment" are two distinct concepts, the former most often used in suits sounding in tort and the latter in suits sounding in contract. *Schwarzenegger*, 374 F.3d at 802.  The parties agree that Plaintiff's copyright and trademark infringement claims are both tort-like causes of action and thus the purposeful direction standard applies.  Mot. 6; Opp'n 5.  The Court agrees and applies the purposeful direction test.

The purposeful direction standard is evaluated under the "effects" test first articulated in *Calder v. Jones*, 465 U.S. 783 (1984).  Under that test, "a defendant purposefully directed his activities at the forum if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Picot*

6

*v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal quotation marks and citation omitted). Analysis of those factors must focus on the "defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

Against this backdrop, the Court turns to whether it has specific jurisdiction over AGHL and TCHL.

### i.   AGHL

Alibaba Defendants argue that Plaintiff cannot show a *prima facie* case of jurisdiction over AGHL because it is a foreign company "with no involvement in the events that give rise to this lawsuit." Mot. 6.  According to Alibaba Defendants, courts have held that AGHL is "not subject to personal jurisdiction in suits arising out of sales and listings on the Alibaba Websites."[3]  *Id.* at 6–7 (collecting cases).  Alibaba Defendants also assert that AGHL does not operate or control the Alibaba Websites and thus Plaintiff has failed to allege that her copyright and trademark infringement claims arise out of or relate to AGHL's forum-related activities.  *Id.* at 7.

Alibaba Defendants further contend that Plaintiff cannot establish personal jurisdiction based on an alter ego theory because the Complaint fails to allege any neglect of corporate formalities or day-to-day control over subsidiaries.  Mot. 14–15.  In addition, Alibaba Defendants argue that Plaintiff's reliance on an agency theory should be rejected.  *Id.* at 16.  First, in their view, the Ninth Circuit rejected the application of its prior agency theory test in the context of specific jurisdiction in light of the Supreme Court's decision in *Diamler*.  *See id.* (citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017)).  Second, even if some form of agency theory survives *Daimler*, Alibaba Defendants argue, the Complaint fails to allege that AGHL had "substantial control" over its so-called agents or that AGHL would fill the role of its agents if they ceased to operate.  *Id.* at 16–17.

Plaintiff counters that AGHL "expressly aimed conduct toward California and the U.S." and thus specific jurisdiction exists.  Opp'n 16.  According to Plaintiff, AGHL spent large sums of

---

[3] Alibaba.com, AliExpress.com, and Taobao Marketplace websites are referred to as "Alibaba Websites."  *See* Mot. 1.

1    money "lobbying the U.S. government on intellectual property issues." *Id.* (citing Ex. 26 to

2    Opp'n, ECF 196-26; Ex. 27 to Opp'n, ECF 196-27). Plaintiff also argues that AGHL had agents

3    who handled various intellectual property issues. *Id.* at 16–18. Specifically, Plaintiff asserts that

4    AGHL had a Global IP team for which Matthew Bassiur was appointed as "Vice President, Head

5    of Global Intellectual Property Enforcement." *Id.* at 16–17. Plaintiff also contends that Daniel

6    Dougherty and Xinghao Wang were part of the Global IP team and based in the United States. *Id.*

7    at 17. Plaintiff claims that even if Bassiur, Dougherty, and Wang were not employees of AGHL,

8    actions of those individuals were imputed to AGHL under an agency theory. *See id.* That said,

9    Plaintiff makes clear that she does not rely on an alter ego or "general agent" theory. *Id.* at 18.

10    Rather, Plaintiff contends that "the Global IP team members [were] AGHL agents." *Id.*

11        In addition, Plaintiff argues that AGHL established "forum contacts" by working with its

12    subsidiaries in overseeing the development of the Alibaba Websites. Opp'n 19. For instance,

13    Plaintiff asserts that in SEC filings AGHL states that "[w]e operate Taobao Marketplace," "[w]e

14    operate AliExpress," and [w]e operate Alibaba.com." *Id.* (citing Ex. 3 to Opp'n 58–59, ECF 196-

15    3). Plaintiff further contends that AGHL filed a lawsuit in the Southern District of New York

16    stating that "Alibaba Group Holding owns common law rights" to "Alibaba" trademarks. *Id.* at

17    19–20 (citing Ex. 21 to Opp'n, ECF 196-21). In Plaintiff's view, the U.S. marketing activities of

18    AGHL also demonstrate that it sought to exploit the U.S. market. *Id.* at 20. For support, Plaintiff

19    claims that AGHL operates Alizila.com which features stories about Alibaba events in the United

20    States. *Id.*

21        After reviewing the Complaint's allegations and the parties' submissions, the Court finds

22    that Plaintiff has failed to make a *prima facie* showing that AGHL had sufficient contacts with

23    California and the United States to establish specific jurisdiction. First, the lobbying reports (Exs.

24    26 and 27 to Opp'n) submitted by Plaintiff merely references intellectual property issues. The

25    Court thus finds that the relationship between AGHL's lobbying activities and Plaintiff's claims is

26    too tenuous. As such, the fact that AGHL lobbied the U.S. government on "intellectual property

27    issues" is insufficient to satisfy the minimum contacts test for establishing specific jurisdiction.

28        Second, Plaintiff has not adequately shown that the activities of Bassiur, Dougherty, and

United States District Court
Northern District of California

United States District Court
Northern District of California

Wang establish that AGHL made contacts with California or the United States.  Alibaba Defendants submitted a declaration stating that those individuals are employees of Alibaba US not AGHL.  Ho Corr. Decl. ¶¶ 10, 28–30, ECF 193.  Plaintiff contends that there is a factual dispute over which entity employs those three individuals given that Bassiur and Dougherty were identified in a June 2017 program as working for "Alibaba Group."  Opp'n 17.  She also asserts that Dougherty sent an email to Keck in December 2016 that identified him as working for "Alibaba Group" when at that time Alibaba US was known as Nimbus Development, Inc.  *Id.* (citing Ex. 29 to Opp'n, ECF 196-29).  The Court, however, finds that those references to "Alibaba Group" do not create a conflict with Alibaba Defendants' declaration providing that Bassiur, Dougherty, and Wang are employees of Alibaba US.  As provided in the numerous documents submitted by the parties, "Alibaba Group" has been used to reference the numerous Alibaba-related entities as a whole, which is a common marketing strategy.  Thus, the fact that Bassiur and Dougherty were described as "working for 'Alibaba Group'" does not contradict their claim of employment by Alibaba US.  Nor do other press releases (Ex. 15 to Opp'n, ECF 196-14) and the 2016 letter to the U.S. Trade Representative (Ex. 4 to Opp'n, ECF 196-4), which reference Alibaba Group, change this conclusion.  Because Bassiur, Dougherty, and Wang are not employees of AGHL, their activities could not have created contacts for AGHL unless an agency theory applies.[4]  But Plaintiff also fails to establish a *prima facie* case of jurisdiction under an agency theory as discussed below.

The Ninth Circuit formerly held that a subsidiary's forum contacts could be imputed to its parent if the subsidiary's services were "sufficiently important" so that the parent would perform similar services if no representative provided them.  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).  After *Diamler*, the "sufficiently important" formulation of the agency theory is no longer a valid basis to exercise general and specific jurisdiction.  *Williams*, 851 F.3d at 1024.  That said, the Ninth Circuit in *Williams* did not hold that an agency theory could never be applied in a specific jurisdiction analysis.  *Williams* made clear that if "some standard of agency

---

[4] Plaintiff represents that she does not rely on an alter ego theory.  Opp'n 18.

1   continues to be 'relevant to the existence of *specific* jurisdiction.'" *Id.* (citing *Daimler*, 134 S.Ct.

2   at 759 n.13) (emphasis in original), the plaintiff must at least show that the "parent company . . .

3   has the right to substantially control [the agent's] activities." *Id.* at 1024–25 (citation omitted).

4         Here, the Complaint fails to allege that AGHL had control over Bassiur, Dougherty, and

5   Wang.  Plaintiff points to a 2015 press release which states that Bassiur would work to "advance

6   Alibaba Group's . . . IP rights protection efforts" and that he would "report to Michael Evans,

7   President of Alibaba Group."  Opp'n 17 (citing Ex. 15 to Opp'n).  The 2016 letter to the U.S.

8   Trade Representative makes a similar statement.  *Id.* (citing Ex. 4 to Opp'n 11).  However, the

9   mere fact that Bassiur, the head of the Global IP team, reported to Evans is insufficient to establish

10  a *prima facie* case that AGHL had "substantial[]control" over Bassiur, let alone Dougherty and

11  Wang.  *Williams*, 851 F.3d at 1024–1025 (holding that the plaintiffs did not establish specific

12  jurisdiction under an agency theory because they failed to show control by the parent company).

13  Accordingly, the Court finds that there is no basis for specific jurisdiction over AGHL under

14  Plaintiff's theory that the Global IP team members were agents of AGHL.

15        Third, Plaintiff has failed to show "forum contacts" based on the SEC filings.  Alibaba

16  Defendants' declaration provides that AGHL "does not operate, control, or design" the Alibaba

17  Websites or exercise any control over the content of those websites.  Ho. Corr. Decl. ¶ 7.  On the

18  other hand, Plaintiffs points to a SEC filing that states that "[w]e operate Taobao Marketplace,"

19  "[w]e operate AliExpress," and [w]e operated Alibaba.com."  Opp'n 19 (citing Ex. 3 to Opp'n 58–

20  59).  Plaintiff contends that the reference to "we" means that AGHL is the entity that operates the

21  Alibaba Websites and that any factual conflict with other evidence should be resolved in her favor.

22  *See id.*  However, Plaintiff has not shown a factual dispute.  The SEC filing provides that "we"

23  means "[AGHL] and its consolidated subsidiaries and its affiliated consolidated entities."  Ex. 3 to

24  Opp'n at iii.  The "we" language, when read in context, merely provides that some entities in the

25  group including AGHL and its subsidiaries operate the Alibaba Websites not that AGHL operates

26  each of the Alibaba Websites.  *Cf. Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031 n.73

27  (N.D. Cal. 2018) (holding that the language "we" in the parent company's Form 10–K cannot be

28  "reasonably read to mean that [the parent] itself operates" the stores).  Thus, the SEC filing does

United States District Court
Northern District of California

1   not contradict Alibaba Defendants' declaration which states that AGHL does not operate the

2   Alibaba Websites.

3          Plaintiff also contends that AGHL operates the Alizila.com website.  Opp'n 20.  Even

4   assuming this contention is true, the Alizila.com website at best advertises the Alibaba Group's

5   various websites but does not show that AGHL operates the Alibaba Websites.  *See, e.g.*, Ex. 22 to

6   Opp'n, ECF 196-22; Ex. 23 to Opp'n, ECF 196-23.  Nor does the Alizila.com website appears to

7   promote specific products listed in the Alibaba Websites.  *See* Ex. 22 to Opp'n; Ex. 23 to Opp'n.

8   As such, the relationship between AGHL's purported operation of Alizila.com and Plaintiff's

9   infringement claims is too tenuous to support the minimum contacts test for establishing specific

10  jurisdiction.

11         As a final point, Plaintiff points out that the "Our Offices" page of alibabagroup.com

12  identifies California as the location of one of "the principal offices of Alibaba Group."  Opp'n 20

13  (citing Ex. 25 to Opp'n, ECF 196-25).  But this webpage generally refers to Alibaba Group as

14  opposed to AGHL and thus falls short of establishing AGHL's contacts with California or the

15  United States.

16         For the foregoing reasons, the Court concludes that Plaintiff has not met her burden to

17  establish a *prima facie* case of specific jurisdiction over AGHL.  Alibaba Defendants' motion to

18  dismiss AGHL for lack of personal jurisdiction is GRANTED.  Although Plaintiff had an

19  opportunity to conduct jurisdiction discovery, she has failed to provide evidence to support her

20  allegations that AGHL is subject to this Court's personal jurisdiction.  Plaintiff provides no

21  indication that additional jurisdictional discovery would cure the deficiencies identified above.  As

22  such, the Court concludes that allowing an opportunity to amend the Complaint would be futile.

23  *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1071 (9th Cir. 2014) (affirming the district

24  court's dismissal for lack of personal jurisdiction where additional jurisdictional discovery was

25  futile).  Thus, the dismissal as to AGHL for lack of personal jurisdiction is WITHOUT LEAVE

26  TO AMEND.

27         **ii.    TCHL**

28         As a preliminary issue, the parties dispute the scope of TCHL's operation of Taobao

United States District Court
Northern District of California

11

1    Marketplace.  During the hearing, the Court granted Plaintiff's request to strike Alibaba

2    Defendants' new arguments pertaining to whether TCHL operates Taobao Marketplace but stated

3    that it will review the evidence.

4            Regarding TCHL's operation, Plaintiff points to a SEC filing which states that TCHL is

5    the "operating entity for the overseas business of Taobao Marketplace."  Ex. 3 to Opp'n 56.  On

6    the other hand, Alibaba Defendants rely on a declaration provided to Plaintiff in response to her

7    request for jurisdiction discovery.  Ex. 30 to Opp'n, ECF 195-4.  That declaration states that

8    TCHL "has had no involvement in the day-to-day operation, control, marketing, or design of

9    Taobao Marketplace, nor has it exercised any control over the content included on Taobao

10   Marketplace."  *Id.* ¶ 6.  It further states that TCHL was classified as the "operating entity for the

11   overseas business of Taobao Marketplace" because it was tasked with signing agreements for

12   Taobao Marketplace with "third-party entities, such as marketing contractors and vendors."  *Id.*

13   ¶ 7 .

14           While Alibaba Defendants' declaration (Ex. 30 to Opp'n) qualifies TCHL's role in

15   operating Taobao Marketplace, it is ambiguous as to the scope of TCHL's operation and control

16   over Taobao Marketplace.  For instance, the declaration provides that TCHL signed agreements

17   with contractors and vendors.  Ex. 30 to Opp'n ¶ 7.  However, the activities of the contractors and

18   vendors may be attributed to TCHL as the signatory of the agreements.  The Court also notes that

19   the declaration states that TCHL does not process takedown notices or receive funds from U.S.

20   sales on Taobao Marketplace.  *Id.* ¶¶ 6, 10.  But that fact does not mean that entities other than

21   TCHL operate or control Taobao Marketplace.  Moreover, to the extent that Alibaba Defendants

22   represent that this declaration shows that TCHL is not the operating entity of Taobao Marketplace

23   for jurisdictional purposes, the Court finds that it creates a factual conflict with the Plaintiff's

24   allegations (*see e.g.*, Compl. ¶ 8) as well as Alibaba Defendants' SEC filing pertaining to TCHL's

25   operation of Taobao Marketplace.  At this stage, the Court must resolve a factual conflict in

26   Plaintiff's favor.  *Vista v. USPlabs, LLC*, No. 14-CV-00378-BLF, 2014 WL 5507648, at *1 (N.D.

27   Cal. Oct. 30, 2014).  Accordingly, the Court accepts as true that TCHL operates Taobao

28   Marketplace and evaluates the minimum contacts test based on the business of Taobao

United States District Court
Northern District of California

12

1    Marketplace as the parties have done in their briefing.

2         The Court first addresses whether it has specific jurisdiction over TCHL pursuant to Rule

3    4(k)(2).  If a defendant does not concede to jurisdiction in another state, a court may rely on Rule

4    4(k)(2) and evaluate the defendant's nationwide contacts to determine whether exercising personal

5    jurisdiction over federal law claims comports with due process.  *Holland*, 485 F.3d at 461–62.

6    Here, Plaintiff's copyright and trademark infringement claims are federal law claims and Alibaba

7    Defendants do not contend that TCHL is subject to jurisdiction in any state.  As such, the

8    remaining inquiry is whether this Court's exercise of personal jurisdiction under Rule 4(k)(2)

9    would satisfy due process.  The Rule 4(k)(2) due process analysis involves the same three-part

10   "minimum contacts" test, except "the relevant forum is the entire United States."  *LiveCareer Ltd*

11   *v. Su Jia Techs. Ltd.*, No. 14-CV-03336-JST, 2015 WL 1448505, at *7 (N.D. Cal. Mar. 31, 2015)

12   (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)).  The Court applies the

13   "minimum contacts" test below.

### a.  Purposeful Direction

15        As mentioned, the parties agree that the "purposeful direction" test is applicable, and this

16   test requires that a defendant have "(1) committed an intentional act, (2) expressly aimed at the

17   forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

18   *Picot*, 780 F.3d at 1212.  Here, Alibaba Defendants only challenge the second requirement of this

19   three-prong test.[5]  *See* Mot. 11–12.  The first and third requirements are met because operating

20   Taobao Marketplace website is an intentional act and displaying and selling infringing products on

21   the website cause harm that would be suffered by Plaintiff in the United States.

22        The Court turns to Alibaba Defendants' arguments concerning the second requirement—

23   whether TCHL's activities were "expressly aimed" at the United States.  According to Alibaba

24   Defendants, the mere fact that merchants on Taobao Marketplace can ship to the United States is

25   insufficient to show that TCHL expressly aimed at the United States.  Mot. 11.  Alibaba

26

27   ---
     [5] To be clear, Alibaba Defendants challenge other requirements of the broader "minimum
28   contacts" test, including whether Plaintiff's claims arise from TCHL's contacts with the United
     States.  *See* Mot. 12–13.

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    Defendants argue that Plaintiff fails to allege that TCHL directs advertisements toward United

2    States, targets U.S. customers, or that sales to U.S. customers are integral to its business model.

3    *Id.*  In Alibaba Defendants' view, Taobao Marketplace actually impedes sales to U.S. customers

4    because the website is available in Chinese.  *Id.* at 12.  Alibaba Defendants also contend that only

5    1.6 percent of Taobao Marketplace webpage views are from the United States and that such a

6    small percentage is not enough to demonstrate that the U.S. viewers are integral to TCHL's

7    business model.  *Id.*  Alibaba Defendants further claim that less than 0.01% of total sales are

8    delivered to the United States annually.  *Id.*

9         The Court disagrees with Alibaba Defendants' arguments.  While "maintenance of a

10    passive website alone cannot satisfy the express aiming prong[,] . . . operating even a passive

11    website in conjunction with 'something more'—conduct directly targeting the forum—is

12    sufficient."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011)

13    (internal quotation marks and citation omitted).  "In determining whether a nonresident defendant

14    has done 'something more,' [the Ninth Circuit has] considered several factors," such as the

15    "interactivity of the defendant's website" and the "geographic scope of the defendant's

16    commercial ambitions."  *Id.* (citations omitted).

17         Here, the interactive commercial Taobao Marketplace website is sufficient to support a

18    *prima facie* showing that TCHL has done "something more" than maintaining a passive website

19    and expressly aimed its Taobao Marketplace activities toward the United States.

20         First, Taobao Marketplace lists prices for some products on sale—including Keck's

21    artwork—in U.S. dollars in addition to Chinese yuan.  *See* Ex. 9 to Opp'n 4, ECF 196-9; Ex. 10 to

22    Opp'n, ECF 196-10.  This evidence indicates that Taobao Marketplace targets U.S. consumers.

23    *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 598 (E.D. Va. 2003); *cf.*

24    *LiveCareer*, 2015 WL 1448505, at *8 (holding that the defendant's websites evidently targeted

25    U.S. customers where they accepted payment only in U.S. dollars).

26         The evidence also shows that users of Taobao Marketplace can register for an account

27    using an English-language registration webpage by entering a U.S. mobile phone number.  Ex. 17

28    to Opp'n, ECF 196-17.  Apparently, the English-language registration webpage sets United States

1    as the default location for entering the U.S. phone number.  *See id.*; Opp'n 12.  This supports a

2    showing that Taobao Marketplace targets U.S. consumers.  *See LiveCareer*, 2015 WL 1448505, at

3    *8.  Moreover, certain English webpages of Taobao Marketplace display "United States" and thus

4    show that the website's services are directed to U.S. customers.  *See* Ex. 11 to Opp'n 21–24, 27,

5    32, ECF 196-11.

6         Second, Taobao Marketplace provides guidance on which logistics carriers have dedicated

7    staff for shipping products to the United States.  Ex. 11 to Opp'n 37.  Moreover, the website

8    provides pricing for delivering products to the United States via the U.S. Postal Service.  Ex. 13 to

9    Opp'n 9, ECF 169-13; *see also* Ex. 8 to Opp'n 17, ECF 169-8; Ex. 34 to Opp'n, ECF 196-34.  As

10   such, it is evident that part of TCHL's business is aimed at selling and shipping products to the

11   United States.  The Court rejects Alibaba Defendants' argument that "procedures to ship to the

12   United States do not constitute personal jurisdiction" (Reply 12).  The fact that Taobao

13   Marketplace provides shipping information for regions other than the United States does not mean

14   U.S. consumers are ignored.  There is sufficient evidence showing that TCHL focuses and

15   facilitates U.S.-bound sales.

16        Third, U.S. customers' access to Taobao Marketplace is facilitated by the use of Content

17   Delivery Networks (CDNs) which are located throughout the United States, including California,

18   Colorado, Florida, Illinois, New York, Texas, and Washington.  Ex. 30 to Opp'n ¶¶ 13, 15.  To be

19   sure, the CDNs temporarily store cache images but not actual product listings, and the mere

20   location of a server may not give rise to personal jurisdiction.  However, Alibaba Defendants

21   affirmatively state that the purpose of the CDNs is to facilitate the access of Taobao Marketplace

22   for users in the United States.  *Id.* ¶¶ 13–14.  As such, use of the CDNs located in the United

23   States cannot be characterized as merely "random," "fortuitous," or "attenuated."  *Burger King*

24   *Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985).  Because the evidence shows that the U.S. location

25   of the CDNs are not fortuitous, the Court is unconvinced by Alibaba Defendants' argument that

26   "[u]sing [CDNs] as the basis for purposeful direction would unreasonably expand personal

27   jurisdiction" (Reply 12).

28        Alibaba Defendants contend that Taobao Marketplace is in Chinese and the language

                                                    15

United States District Court
Northern District of California

barrier indicates that United States is not the focus of the website.  Reply 11.  While the dominant use of Chinese language in Taobao Marketplace poses a difficulty to non-Chinese speaking users, there is ample evidence showing that Taobao Marketplace serves consumers in the United States.  The Court thus is unpersuaded by Alibaba Defendants' contention.

The evidence discussed above shows that TCHL has done "something more" to aim its activities toward the United States.  *Mavrix*, 647 F.3d at 1229.  The Court further notes that Taobao Marketplace received visits from ███████████ of unique U.S.-based IP addresses and about ███████████ worth of products are sold and delivered to addresses in the United States annually.  *Id.* ¶¶ 16, 21.  Alibaba Defendants attempt to downplay those numbers.  Specifically, Alibaba Defendants claim that the number of visitors is inflated and represents only 1.6% of worldwide views of Taobao Marketplace and the gross value of sales is less than 0.01% of total sales.  Reply 10.  Because the issue is whether TCHL's activities were purposefully directed to the United States, the Court is unpersuaded that the percentage of visitors or sales is the only meaningful metric.  *See Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, 2012 WL 4755041, at *3 (N.D. Cal. Oct. 4, 2012) (holding that personal jurisdiction existed where total online sales to the forum's customers were 0.02% of total sales and stating that "while these sales may be small, it cannot be said they are not purposefully directed at California"); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891–92 (6th Cir. 2002) ("The proper test for personal jurisdiction is not based on a 'percentage of business' analysis . . . but rather on whether the absolute amount of business conducted . . . represents something more than 'random, fortuitous, or attenuated contacts' with the [forum]." (quoting *Burger King*, 471 U.S. at 475)).  The Court finds that the number of visitors and gross value of U.S. sales reflect "the geographical scope of [TCHL's] commercial ambitions" and that TCHL "anticipated, desired, and achieved a substantial" United States user base.  *Mavrix*, 647 F.3d at 1229–30.  It should come as no surprise to TCHL that it might be forced to litigate disputes based on its U.S.-related sales activities.

For the foregoing reasons, the Court is satisfied that TCHL's activities were expressly aimed at the United States.  As mentioned, the other two requirements in the *Calder* test are satisfied.  The Court thus concludes that Plaintiff has made a *prima facie* case that TCHL

purposefully directed its activities toward the United States.

### b.  Arising Out of Forum-Related Activity

Alibaba Defendants argue that the Complaint fails to allege that Plaintiff's injuries arise from TCHL's contacts with the United States.  Mot. 12.  Alibaba Defendants contend that it is unclear whether Plaintiff even alleges any infringing sales via Taobao Marketplace into the United States.  *Id.*  In Alibaba Defendants' view, "specific jurisdiction cannot rest on non-infringing sales."  *Id.* at 10.  They also argue that Plaintiff fails to plead that anyone in the United States other than Plaintiff viewed the purportedly infringing products on Taobao Marketplace.  *Id.* at 13.  An infringement may occur when a protected image is displayed and viewed on a computer.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007).  It appears that on this basis Alibaba Defendants contend that the "mere availability" of infringing product listings to users of Taobao Marketplace is not enough to show that Plaintiff's claims arise out TCHL's contacts.  *See* Mot. 10 (citing *Rosen v. Terapeak, Inc.*, No. CV-15-00112, 2015 WL 12724071, at *8 (C.D. Cal. Apr. 28, 2015)).

Plaintiff counters that "an infringement claim 'arises out of' online contacts when the infringing material was posted on a website that is 'accessible to users in the forum state.'"  Opp'n 8 (citing *Mavrix*, 647 F.3d at 1228).  On this basis, Plaintiff argues that her claims arise out of forum contacts because her copyrights and MICHEL KECK trademark were infringed on Taobao Marketplace which is accessible in the forum.  *See id.*; *see also* Compl. ¶ 265.  Plaintiff further asserts that she need not allege the sale of infringing goods to justify personal jurisdiction.  *Id.* at 9.

The Court is unpersuaded by Alibaba Defendants' arguments.  First, the unauthorized display of Plaintiff's artwork is an infringing activity.  *See, e.g.*, *Amazon.com*, 508 F.3d at 1160.  As such, as Plaintiff contends, she does not need to allege that infringing products were *sold* into the United States to show that her claims arise out of or relate to TCHL's forum related activities.

Second, in *Mavrix*, the Ninth Circuit held that the "arising out of" prong was satisfied because the plaintiff's claim arose out of the defendant's publication of photos on a website accessible to users in the forum state.  647 F.3d at 1228.  Alibaba Defendants assert that the

17

United States District Court
Northern District of California

1     "arising under" issue was not disputed in *Mavrix* and the court "assumed that anyone who visited

2     the site saw the infringing material."  Reply 8.  As mentioned, they also rely on *Rosen* to argue

3     that Plaintiff must allege that someone from the United States viewed infringing listings on

4     Taobao Marketplace.  Mot. 10; Reply 7–8 (citing *Rosen*, 2015 WL 12724071, at *8).  Even

5     assuming Alibaba Defendants are correct, they have not rebutted Plaintiff's contention that her

6     claims arise out of TCHL's forum contacts.

7          The Ninth Circuit in *Mavrix* did not explicitly state that it assumed that anyone from the

8     forum viewed the infringing material when accessing the defendant's website.  In any case, this

9     Court need not determine whether the holding in *Mavrix* requires that Plaintiff must allege that

10    someone from the United States viewed her artwork (and thereby caused infringement).  This is

11    because the evidence shows that Plaintiff's artwork listed on Taobao Marketplace was actually

12    viewed from the United States (Ex. 8 to Opp'n 8–9, ECF 196-8).  Alibaba Defendants contend that

13    those views were made by Plaintiff or her agents and thus were "manufactured" and cannot

14    support an exercise of personal jurisdiction.  Reply 13.  However, as Plaintiff argues (Opp'n 10),

15    Alibaba Defendants point to no evidence in support of this contention.  To the extent that Alibaba

16    Defendants raise a factual dispute, that conflict must be resolved in favor of Plaintiff.  *Vista*, 2014

17    WL 55077648, at *1.  Accordingly, the Court finds that Plaintiff has made a *prima facie* showing

18    that her claims arise out of TCHL's operation of Taobao Marketplace which was purposefully

19    directed toward the United States.

20              **c.  Reasonableness**

21          Because Plaintiff satisfies the first two prongs of the specific jurisdiction test, the burden

22    shifts to Alibaba Defendants to present a "compelling case" that the exercise of jurisdiction would

23    be unreasonable.  *CollegeSource*, 653 F.3d at 1076.  Alibaba Defendants, however, provide no

24    argument why this Court's exercise of personal jurisdiction over TCHL would be unreasonable

25    and thus have failed to meet their burden.

26              **d.  Conclusion**

27          For the above reasons, the Court concludes that Plaintiff has made a *prima facie* showing

28    that it has specific jurisdiction over TCHL based on nationwide contacts pursuant to Rule 4(k)(2).

1  The Court need not further determine whether it has jurisdiction over TCHL based on California

2  contacts because Alibaba Defendants have not suggested that TCHL is subject to jurisdiction in

3  any other U.S. state. Alibaba Defendants' motion to dismiss TCHL for lack of personal

4  jurisdiction is DENIED.

5  **B.    Dismissal Based on Failure to State a Claim**

6  Alibaba Defendants move to dismiss the Complaint against AGHL, Alibaba.com, Inc., and

7  Alibaba US pursuant to Rule 12(b)(6). Mot. 17. Alibaba Defendants define those three entities as

8  "Non-Operating Defendants." *Id.* at 3.

9  Plaintiff alleges claims for contributory copyright infringement (claim 2), vicarious

10  copyright infringement (claim 3), and contributory trademark infringement[6] (claims 7 and 8)

11  against all Alibaba Defendants. Because AGHL is dismissed for lack of personal jurisdiction, the

12  issue now presented in Alibaba Defendants' Rule 12(b)(6) motion is whether Plaintiff's claims

13  against the remaining Non-Operating Defendants, Alibaba.com, Inc. and Alibaba US, should be

14  dismissed. Thus, the Court addresses the parties' arguments with respect to Alibaba.com, Inc. and

15  Alibaba US.

16  As a preliminary issue, Alibaba Defendants contend that Plaintiff must allege unlawful

17  conduct with respect to each defendant. *See* Mot. 17–18. Alibaba Defendants contend that the

18  Complaint impermissibly contains numerous allegations which group these defendants as

19  "Alibaba" and pleads that they provide services for the Alibaba websites and have ability to

20  remove listings on those websites (*see, e.g.*, Compl. ¶¶ 185–87, 197). Plaintiff responds that

21  Alibaba Defendants have called themselves "Alibaba" and that she is not required to allege how

22  each defendant infringed the plaintiff's copyright. Opp'n 22.

23  To be sure, allegations that lump all defendants as a group may satisfy the pleading

24  standards under some circumstances. But this does not mean that Plaintiff may always rely on

25  allegations that are so generalized. Federal Rule of Civil Procedure 8 requires that a pleading

26

27  [6] The parties do not distinguish between claim 7 (contributory trademark infringement) and claim
8 (contributory trademark infringement and false designation of origin under 15 U.S.C. § 1125(a))
28  in their briefing. As such, the Court refers to both claims as the "contributory trademark
infringement" claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    must be sufficient to give a defendant "fair notice."  *Twombly*, 550 U.S. at 555.  Here, as pled, the

2    Complaint's general reference to Alibaba without more does not give sufficient notice whether all

3    Alibaba Defendants or only specific entities engaged in the purported conduct.  Moreover, it is not

4    plausible that all Alibaba Defendants engaged in the same activities alleged in the Complaint.  As

5    such, the Court finds that the Complaint's allegations fail to give Alibaba.com, Inc. and Alibaba

6    US "fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.* (quoting *Conley*

7    *v. Gibson*, 355 U.S. 41, 47 (1957)).  Thus, the Court rejects Plaintiff's argument that the

8    Complaint adequately pleads the elements of contributory and vicarious infringement claims

9    against Alibaba.com, Inc. and Alibaba US based on allegations that generally reference "Alibaba"

10   (Opp'n 22).

     The Court next turns to the parties' specific arguments concerning the contributory

12   copyright infringement, vicarious copyright infringement, and contributory trademark

13   infringement claims.

### i.    Contributory Copyright Infringement Claim

15   Contributory copyright infringement requires a showing of (1) knowledge of another's

16   infringement and either a material contribution to or inducement of that infringement.  *Perfect 10,*

17   *Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017) (citation omitted).

18   Alibaba Defendants argue that the Complaint fails to allege that Alibaba.com, Inc. and

19   Alibaba US knew about the infringement of Plaintiff's copyrights.  Mot. 18.  They also assert that

20   "[p]roviding marketing and technical support services to a company that operates" a website

21   where the infringement occurs does not "constitute a material contribution to the infringement."

22   *Id.*  In addition, Alibaba Defendants claim that the Complaint does not allege that Alibaba.com,

23   Inc. and Alibaba US engaged in inducement of the infringement.  *Id.* at 19.

24   Plaintiff responds that the Complaint pleads that Alibaba US knew of the purported

25   infringing activity because she sent emails to Daniel Dougherty, Matthew Bassiur, and Xinghao

26   Wang regarding infringement of her artwork.  Mot. 24 (citing Compl. ¶¶ 253–54).  According to

27   Plaintiff, Alibaba US would be liable for contributory copyright infringement because its

28   "provision of maintenance, support, marketing, and investment services" for the Alibaba Websites

materially contributed to the infringing activity.  *Id.* (citing Compl. ¶¶ 4, 102).  She provides no specific arguments in support of her claims against Alibaba.com, Inc.

The Court finds that the Complaint fails to plead a claim for contributory copyright infringement against Alibaba.com, Inc. and Alibaba US.  First, the Complaint alleges that Dougherty was the senior director for "Alibaba Group's global IP enforcement team" (Compl. ¶ 227), Bassiur was "Alibaba's head of global intellectual property enforcement" (*id.* ¶ 225), and Wang was an "Alibaba" employee (*id.* ¶ 215).  Those allegations are insufficient to show that Dougherty, Bassiur, or Wang were employees of Alibaba.com, Inc. and Alibaba US.  Thus, Plaintiff's allegations that she sent emails to those individuals cannot support a plausible inference that Alibaba.com, Inc. and Alibaba US knew about the infringement of Plaintiff's copyrights.

Second, the Complaint pleads that Alibaba US provided services related to the "development and maintenance of online shopping platforms" as well as "marketing, investment, and R&D support services."  Compl. ¶¶ 4, 102.  Even if those allegations are read to mean that Alibaba US provided the listed services for the Alibaba Websites, Plaintiff fails to plead the second element of her contributory copyright infringement claim.  "[L]iability for contributory infringement requires *substantial* participation in a specific act of direct infringement."  *In re Napster, Inc.Copyright Litig.*, No. C 00-1369 MHP, 2001 WL 36593841, at *2 (N.D. Cal. July 9, 2001) (emphasis added); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 797 (9th Cir. 2007) (allegations showing that a defendant "substantially assist[ed]" users to download infringing images satisfied the pleading standard while allegations concerning services for processing online payments did not).  Here, while the Complaint's allegations show that Alibaba US provided some services for the Alibaba Websites, they lack factual content that would support a reasonable inference that those services "substantially assist[ed]" the purported infringing activities.  *Visa*, 494 F.3d at 788.

Third, the Complaint alleges that Alibaba.com, Inc. "promotes the brand awareness of the Alibaba Platforms" through various marketing activities.  Compl. ¶ 3.  This allegation does not show that Alibaba.com, Inc. substantially assisted the purported infringement that occurred on the Alibaba Websites.  In fact, Plaintiff provides no argument that brand promotion of the Alibaba

United States District Court
Northern District of California

Websites satisfies the material contribution element.

Accordingly, Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and Alibaba US for failure to state a claim for contributory copyright infringement is GRANTED WITH LEAVE TO AMEND.

### ii.   Vicarious Copyright Infringement Claim

"To prevail on a claim for vicarious [copyright] infringement, a plaintiff must prove the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Giganews*, 847 F.3d at 673 (internal quotation marks and citation omitted).

Alibaba Defendants argue that the Complaint fails to plead that Alibaba.com, Inc. and Alibaba US "had the right or ability to remove infringing listings from websites operated by other Alibaba entities." Mot. 19. They also assert that the Complaint does not allege that Alibaba.com, Inc. and Alibaba US received direct financial benefit from the infringement. *Id.* According to Alibaba Defendants, users of the Alibaba Websites are not customers of those two defendants. *Id.*

Plaintiff has a different view. Plaintiff points out that the Complaint alleges that Wang, an "Alibaba" employee, told her that "we will process" her takedown request. Opp'n 23 (citing Compl. ¶¶ 215, 224). She further contends that Alibaba Defendants submitted a declaration confirming that Wang is an employee of Alibaba US. *Id.* (citing Ho Corr. Decl. ¶ 30). However, as Plaintiff acknowledges (*see id.* at 21), this Court cannot consider evidence outside the pleadings without converting a Rule 12(b)(6) motion into one for summary judgment unless an exception applies. *Ritchie*, 342 F.3d at 907. Only a few exceptions apply: A court may consider (1) documents attached to the complaint; (2) documents incorporated by reference in the complaint; and (3) matter that is judicially noticeable under Federal Rule of Evidence 201. *See id.* at 907–08. Alibaba Defendants' declaration (Ho Corr. Decl.) does not fall under any exception. As such, the Court cannot consider the declaration's statement that Wang is an employee of Alibaba US. Instead, the Court must view the Complaint's allegation that Wang was an "Alibaba" employee. This allegation is insufficient to support a reasonable inference that Wang was employed at Alibaba US as opposed another Alibaba entity. As such, the Court finds that the Complaint fails

United States District Court
Northern District of California

1    to plausibly allege that Alibaba US had the ability to remove infringing listings,[7] let alone "the

2    right and ability to supervise the infringing conduct."  *Giganews*, 847 F.3d at 673.

3          Furthermore, Plaintiff asserts that Alibaba US has "an interest in commissions and in an

4    increased U.S. [user base]" due to its close relationship with other Alibaba entities.  Opp'n 23.

5    However, this assertion is not pled in the Complaint and thus the Court cannot consider it

6    regardless of whether it is adequate to support a plausible claim.  Accordingly, the Court

7    concludes that the Complaint fails to allege that Alibaba US had "a direct financial interest in the

8    infringing activity."  *Giganews*, 847 F.3d at 673.

9          Plaintiff provides no argument with respect to Alibaba.com, Inc.  For similar reasons

10   discussed above, the Court finds that the Complaint does not plead a plausible claim for vicarious

11   copyright infringement against Alibaba.com, Inc.

12         Accordingly, Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and Alibaba US

13   for failure to state a claim for vicarious copyright infringement is GRANTED WITH LEAVE TO

14   AMEND.

15         **iii.    Contributory Trademark Infringement Claim**

16         "To be liable for contributory trademark infringement, a defendant must have (1)

17   intentionally induced the primary infringer to infringe, or (2) continued to supply an infringing

18   product to an infringer with knowledge that the infringer is mislabeling the particular product

19   supplied."  *Visa*, 494 F.3d at 807 (internal quotation marks and citation omitted).

20         Alibaba Defendants contend that the deficiencies in Plaintiff's contributory copyright

21   infringement claim mean she also failed to plead the contributory trademark infringement claim

22   because the standard for the latter is more stringent than the former.  Mot. 19 (citing *Routt v.*

23   *Amazon.com, Inc.*, 584 F. App'x 713, 716 (9th Cir. 2014)).

24         Plaintiff responds that she need only allege that "the defendants provided services to

25   someone they knew or had reason to know was engaging in trademark infringement" and that "the

26

27   ───────────────
     [7] Due to this deficiency, the Court need not determine whether the ability to remove infringing
28   listings satisfy the "right and ability to supervise" element of a vicarious copyright infringement
     claim.

                                                  23

1    defendants could control or monitor the instrumentality being used for the infringing activity."

2    Opp'n 24 (citing *Louis Vuitton Malletier, S.A. v. Akanoc Sols.*, Inc., 658 F.3d 936, 942 (9th Cir.

3    2011)).  Plaintiff claims that she met this standard by alleging that she told Alibaba US of the

4    infringement of the MICHEL KECK trademark and that Alibaba US could remove infringing

5    material from the Alibaba Websites.  *See id.*

6            The Court is unpersuaded by Plaintiff's arguments as the Complaint fails to plead a claim

7    even under the standard articulated by Plaintiff.  Here, the Complaint alleges only that Plaintiff

8    notified "Alibaba Defendants" (as opposed to Alibaba.com, Inc. or Alibaba US) about her

9    trademark by sending takedown requests.  Compl. ¶ 265.   As discussed earlier, that allegation

10   fails to support a reasonable inference that Alibaba.com, Inc. and Alibaba US knew about the

11   purported infringement.

12          Moreover, the Complaint pleads that "Alibaba" had the right to control and monitor

13   infringing activity on the Alibaba Websites.  *See, e.g.*, Compl. ¶¶ 281–84.  Because the Complaint

14   only generally refers to Alibaba, the Court finds that it does not contain factual allegations that

15   allow a reasonable inference to be drawn that Alibaba.com, Inc. or Alibaba US had "[d]irect

16   control and monitoring of the instrumentality used by a third party to infringe [Plaintiff's] mark."

17   *Visa*, 494 F.3d at 807 (citation omitted) (alteration in original); *see also Akanoc Sols.*, 658 F.3d at

18   942.

19          For the above reasons, Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and

20   Alibaba US for failure to state a claim for contributory trademark infringement is GRANTED

21   WITH LEAVE TO AMEND.

22          **C.    Fourth Claim for Declaratory Judgment and Fifth Claim for Injunctive Relief**

23          The fourth claim seeks declaratory judgment that Alibaba Defendants are not entitled to a

24   safe harbor defense provided by the Digital Millennium Copyright Act ("DMCA").  Compl.

25   ¶¶ 323–26.  The fifth claim asserts that Plaintiff and the purported class are entitled to injunctive

26   relief.  Compl. ¶¶ 327–29.  Alibaba Defendants argue that the fourth claim is improper because

27   they have not asserted an affirmative defense based on DMCA's safe harbor provision and that the

28   fifth claim for injunctive relief is not a cause of action.  Mot. 20–22.  On this basis, Alibaba

1    Defendant seeks to dismiss the fourth and fifth claims.  *Id.*

2         The Court agrees with Alibaba Defendants' arguments.  In fact, during the hearing,

3    Plaintiff conceded that the fourth and fifth claims may be dismissed.  Hearing Tr. 31:19–23.

4    Accordingly, Alibaba Defendants' motion to dismiss the fourth and fifth claims is GRANTED.

5    This dismissal is without prejudice to Plaintiff's ability to seek injunctive relief or challenge a

6    DMCA safe harbor defense later in this action.

7

8    **V.    CONCLUSION**

9         For the foregoing reasons, IT IS HEREBY ORDERED that:

10   (1) Alibaba Defendants' motion to dismiss AGHL for lack of personal jurisdiction is

11        GRANTED WITHOUT LEAVE TO AMEND.

12   (2) Alibaba Defendants' motion to dismiss TCHL for lack of personal jurisdiction is

13        DENIED.

14   (3) Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and Alibaba US for failure to

15        state a claim for contributory copyright infringement is GRANTED WITH LEAVE TO

16        AMEND.

17   (4) Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and Alibaba US for failure to

18        state a claim for vicarious copyright infringement is GRANTED WITH LEAVE TO

19        AMEND.

20   (5) Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and Alibaba US for failure to

21        state a claim for contributory trademark infringement is GRANTED WITH LEAVE

22        TO AMEND.

23   (6) Alibaba Defendants' motion to dismiss AGHL for failure to state a claim is

24        TERMINATED as moot as AGHL is dismissed for lack of personal jurisdiction.

25   (7) Alibaba Defendants' motion to dismiss the fourth and fifth claims is GRANTED

26        without prejudice to Plaintiff's ability to seek injunctive relief or challenge a DMCA

27        safe harbor defense later in this action.

28   (8) Plaintiff may file an amended complaint **within twenty-one (21) days** of the date of

United States District Court
Northern District of California

1   this order.

2    **IT IS SO ORDERED.**

3

4 Dated: August 30, 2018

5

6                BETH LABSON FREEMAN
                United States District Judge

# EXHIBIT B

2012 WL 162495
Only the Westlaw citation is currently available.
United States District Court,
E.D. Missouri,
Eastern Division.

Patrick ENGLERT, et al., Plaintiffs,
v.
ALIBABA.COM HONG
KONG LTD., et al., Defendants.

No. 4:11CV1560 RWS.
|
Jan. 19, 2012.

**Attorneys and Law Firms**

Andrew H. Koor, Suddarth and Koor, O'Fallon, MO, for Plaintiffs.

Darryl M. Woo, Kathryn J. Fritz, Leslie A. Kramer, Ryan J. Marton, Fenwick & West LLP, San Francisco, CA, Richard B. Walsh, Jr., Michael J. Hickey, Lewis Rice, St. Louis, MO, for Defendants.

***MEMORANDUM AND ORDER***

RODNEY W. SIPPEL, District Judge.

 **\*1** This matter is before me on defendant Alibaba Group Holding Limited's motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). Plaintiffs oppose the motion and the issues have been fully briefed.[1] For the reasons set out below, the motion to dismiss will be granted.

Plaintiffs purchased products found on a website, alibaba.com, that were allegedly counterfeit and seized by United States customs officials before being delivered. These products are unidentified by plaintiffs and were sold by unidentified third-party suppliers. Defendant Alibaba.Com Hong Kong Limited (hereinafter Alibaba Hong Kong) is a Hong Kong corporation with its principal place of business in Wanchai, Hong Kong. Alibaba Hong Kong is a subsidiary of Alibaba Group Holding Limited, a Cayman Islands corporation. Alibaba Hong Kong maintains websites in the United States and elsewhere that allow a variety of third party sellers to display products for sale to consumers in one central internet location. Plaintiffs claim that Alibaba Hong Kong has

2,067 third party suppliers who identify themselves as being located in Missouri.

Alibaba Group Holding Limited (hereinafter Alibaba Holding) is a Cayman Islands Corporation with its principal place of business in Hong Kong. Alibaba Holding is a holding company that owns a number of internet business, including Alibaba Hong Kong. Alibaba Holding owns the domain name "alibaba.com" and owns the marks "Alibaba" and "Aliexpress." Alibaba Holding is the majority shareholder of Alibaba Hong Kong. Additionally, Alibaba Hong Kong and Alibaba Holding share the same chairman of their separate boards of directors. Alibaba Holding maintains no presence of any kind in Missouri.

*Legal Standard*

In ruling on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff. *Toombs v. Bell,* 798 F.2d 297, 298 (8th Cir.1986). When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists.

*KV Pharmaceutical Co. v. J. Uriach & CIA, S.A,* 648 F.3d 588, 591–92 (8th Cir.2011); *Viasystems, Inc. v. EBM–Pabst St. Georgen GMBH & Co., KG,* 646 F.3d 589, 592 (8th Cir.2011); *Miller v. Nippon Carbon Co., Ltd.,* 528 F.3d 1087, 1090 (8th Cir.2008); *Dever v. Hentzen Coatings,* 380 F.3d 1070, 1072 (8th Cir.2004); *Epps v. Stewart Information Servs. Corp.,* 327 F.3d 642, 647 (8th Cir.2003); *Burlington Indus. v. Maples Indus.,* 97 F.3d 1100, 1102 (8th Cir.1996); *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir.1992); *Enterprise Rent–A–Car Co. v. Stowell,* 137 F.Supp.2d 1151, 1154 (E.D.Mo.2001). To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant. *KV Pharmaceutical,* 648 F.3d at 591 ("To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists ..."); *Steinbuch v. Cutler,* 518 F.3d 580, 585 (8th Cir.2008) ("To survive a motion to dismiss, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in

the forum state."); *Dever, 380 F.3d at 1072–73* (plaintiff must produce some evidence; conclusory allegations are insufficient to sustain the prima facie showing); *Epps, 327 F.3d at 647*; *Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir.2000).* A plaintiff's prima facie showing "must be tested, not by pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *KV Pharmaceutical, 648 F.3d at 592* (internal quotation marks and citation omitted); *Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir.1998)* (when considering whether personal jurisdiction exists under Missouri long arm statute, court may inquire by affidavits or otherwise into facts as they exist). Although a court must view evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction. *Viasystems, 646 F.3d at 592*; *Epps, 327 F.3d at 647*.

*Discussion*

**\*2** For a federal court to exercise personal jurisdiction over a non-resident defendant, two prerequisites must be satisfied. *Johnson v. Arden, 614 F.3d 785, 794 (8th Cir.2010)*; *see KV Pharmaceutical, 648 F.3d at 592.* First, the forum state's long arm statute must be satisfied. *Viasystems, 646 F.3d at 593*; *Johnson, 614 F.3d at 794.* Second, the Court must determine whether the defendant has sufficient contacts with the forum state to satisfy the Due Process clause of the Fourteenth Amendment. *Johnson, 614 F.3d at 794*; *Miller, 528 F.3d at 1090*; *Stanton v. St. Jude Medical, Inc., 340 F.3d 690, 693 (8th Cir.2003)*; *St. Jude Medical, Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 591 (8th Cir.2001)*; *Clune, 244 F.3d at 541*; *Redwing, 146 F.3d at 543*; *Burlington Indus., 97 F.3d at 1102.* The due process and long arm statute inquiries should be analyzed separately. *Viasystems, 646 F.3d at 593 n. 2.*

The reach of Missouri's long arm statute is a question of Missouri law. *See Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 311 (8th Cir.1982).*

Missouri's long arm statute provides for personal jurisdiction over any person or firm who, inter alia, either in person or through an agent transacts business, makes a contract, or commits a tort within Missouri. *Mo.Rev.Stat. § 506.500.1(1)-(3).* Missouri's long-arm statute has been interpreted as covering "extraterritorial acts that yield consequences in Missouri." *Furminator, Inc. v. Wahba, 2011 WL 3847390 at \*2 (E.D.Mo. Aug.29, 2011)* (quoting *Bryant v. Smith Interior Design Group, Inc., 310 S.W.3d 227, 232 (Mo.2010)*).

The second prerequisite—minimum contacts—is based on the notion that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro, ⸺ U.S. ⸺, ⸺, 131 S.Ct. 2780, 2787, 180 L.Ed.2d 765 (2011).* Due process requires that a plaintiff show that a non-resident have "minimum contacts" with the forum state and that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *Id.;* *World–Wide Volkswagen v. Woodson, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)*; *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)*; *see Asahi Metal Indus. Co. v. Superior Court of California, Solano County, 480 U.S. 102, 109–112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)*; *Guinness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607, 614 (8th Cir.1998).* A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen, 444 U.S. at 297*; *Stanton, 340 F.3d at 694*; *Epps, 327 F.3d at 648.* Sufficient minimum contacts "requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Nicastro, 131 S.Ct. at 2787* (internal quotation marks and citation omitted); *see Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir.2004).*

**\*3** The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Stanton, 340 F.3d at 693–94* (internal quotation marks and citation omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant

himself that create a substantial connection with the forum state." *Stanton,* 340 F.3d at 694 (internal quotation marks and citation omitted). That is, "jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state. In other words, the cause of action must arise out of or relate to a defendant's activities within a state." *Romak USA,* 384 F.3d at 984 (internal citations omitted).

The Eighth Circuit Court of Appeals established a five factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state. *Romak USA,* 384 F.3d at 984. The five factors are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties. *Id.* The first three factors are of "primary importance," while the last two factors are of "secondary importance" and as such are not determinative of personal jurisdiction. *Id.*

With respect to the third factor, the Supreme Court has differentiated between general and specific jurisdiction. *Viasystems,* 646 F.3d at 589. " 'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while [g]eneral jurisdiction ... refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.' " *Id.* at 593 (internal quotation marks and citation omitted). General personal jurisdiction may be exercised if a defendant has maintained systematic and continuous presence in a forum state such that it has purposefully availed itself of the privileges of a particular state's laws to the point where exercising jurisdiction does not offend traditional notions of fair play or substantial justice. *Nicastro,* 131 S.Ct. at 2787. Unlike specific personal jurisdiction, general personal jurisdiction does not require a direct relationship between the defendant's contacts with the forum and the plaintiff's cause of action. *See Steinbuch v. Cutler,* 518 F.3d 580, 586 (8th Cir.2008).

Plaintiffs argue that Alibaba Holding is subject to the jurisdiction of this Court because it owns the domain name www.alibaba.com, certain trade names and marks in connection with its subsidiary Alibaba Hong Kong, and it is the majority shareholder of Alibaba Hong Kong. There is no dispute that Alibaba Holding does not manufacture, display, or sell any products, and it does not operate the alibaba.com website or exercise any direct control over Alibaba Hong Kong. Few Missouri courts have addressed the issue of whether the Missouri long arm statute reaches a parent company due to the alleged tortious conduct of a subsidiary.

In *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.,* 32 S.W.3d 592 (Mo.Ct.App.2000), the Missouri Court of Appeals decided whether a parent corporation was subject to personal jurisdiction in Missouri for actions of a subsidiary which occurred in Missouri. The Missouri Court of Appeals held the parent company did not have sufficient minimum contacts to support jurisdiction because the parent did not commit the allegedly tortious acts in Missouri, and the plaintiff had not shown the subsidiary was acting as an agent of the parent. *Id.* at 601–02. The same is true in this case, as plaintiffs have no evidence that Alibaba Hong Kong was acting as the agent of Alibaba Holding. [2]

**\*4** In addition to failing to demonstrate that Alibaba Holding would be subject to personal jurisdiction under Missouri's long-arm statute, plaintiffs have also failed to meet their burden of demonstrating that the exercise of jurisdiction would comport with Due Process requirements, either. The mere fact that Alibaba Holding owns the domain name for the alibaba.com website and the trademarks used by Alibaba Hong Kong is insufficient to confer jurisdiction over Alibaba Holding in Missouri. *See Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 223 (4th Cir.2002) (mere act of registering domain names insufficient to confer personal jurisdiction); *Componentone, LLC v. ComponentArt, Inc.,* 2007 WL 2359827, at \*4 (W.D.Pa. Aug.16, 2007) (registration of domain name and ownership of patent insufficient to confer jurisdiction over holding company that did not operate website). Plaintiffs' argument that Alibaba Holding is somehow directly controlling or operating the website merely through its position as the majority shareholder of Alibaba Hong Kong is equally unavailing as a corporation's contacts cannot be imputed to the shareholder for purposes of establishing jurisdiction. *See Trim Fit, LLC v. Dickey,* 2006 WL 1134672, at \*4 (E.D.Mo. Apr.25, 2006) (under Missouri law, "a corporation is regarded as a separate entity, distinct from the members who compose it.") (quoting *Morgan v. Ackerman,* 964 S.W.2d 865, 869 (Mo.Ct.App.1998)); *see also Blackwell Printing Co. v. Blackwell–Wielandy Co.,* 440 S.W.2d 433, 437 (Mo.1969) ("a corporation is ordinarily an entity, separate and apart from its

stockholders, and the mere ownership of all the stock of one corporation by another, and the identity of officers of one with officers of another, are not alone sufficient to create identity of corporate interest between the two companies or to create the relation of principal and agent ....") (citation omitted).

Plaintiffs next argue that Alibaba Holding may become subject to this Court's jurisdiction based upon its relationship with Alibaba Hong Kong, citing *Anderson v. Dassault Aviation,* 361 F.3d 449 (8th Cir.2004). In *Dassault,* the Eighth Circuit Court of Appeals held a parent corporation which completed manufacture of a majority of its products through a subsidiary located in Arkansas was subject to personal jurisdiction in Arkansas based upon "a close, synergistic relationship that is not an abuse of the corporate organizational form." *Id.* at 453. *Dassault,* however, is distinguishable from the present case. Here, Alibaba Holding only owns the domain name of a web site viewable, but not based, in Missouri. While Alibaba Holding certainly derives a benefit from Alibaba Hong Kong's use of its domain name, the relationship between parent and subsidiary does not approach the same level of symbiosis found in *Dassault.*

In *Viasystems, Inc. v. EBM Pabst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 596 (8th Cir.2011), the Eighth Circuit cautioned against the misapplication of *Dassault.* The appellate court explained that determining whether or not a parent purposefully directed products at a forum state and attributing the conduct of a subsidiary to a parent within a given forum should be "conceptually separate" inquiries. *Id.* The Eighth Circuit Court of Appeals opined that attribution of subsidiary conduct to a parent entity for jurisdictional purposes requires a degree of parental control and domination. *Id.* Although not quantifying the degree of parental control and domination required, the Eighth Circuit equated the parental relationship necessary to attribute the conduct of a subsidiary to its parent corporation with the alter ego relationship required by *Epps v. Stewart Information Services Corp.,* 327 F.3d 642, 649 (8th Cir.2003). In *Epps,* the Eighth Circuit Court of Appeals stated that jurisdiction over a non-resident parent corporation can be based on the actions of a resident subsidiary corporation "only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." *Id.*

**\*5** Plaintiffs have failed to show the level of control needed to attribute Alibaba Hong Kong's conduct to Alibaba Holding. Plaintiffs point out that the defendants both use Alibaba in their names, have the same chairman (but separate boards of directors), and that Alibaba Holding is the majority shareholder of Alibaba Hong Kong as evidence of the control required to attribute Alibaba Hong Kong's contacts to Alibaba Holding. This evidence falls far short of that required by the Eighth Circuit in *Viasystems* and *Epps.* Beyond the parental relationship and ownership interests in domain names and trademarks indicated previously, Alibaba Holding does no business in Missouri. Alibaba Holding has never entered into any contract in Missouri, and is not registered to conduct business in Missouri with the Missouri Secretary of State. Although plaintiffs argue that Alibaba Holding breached a contract and committed various state law torts within Missouri, these allegedly wrongful acts were performed (if at all) by Alibaba Hong Kong, not Alibaba Holding. Finally, plaintiffs have failed to sufficiently argue that Alibaba Hong Kong is either an agent or an alter-ego of Alibaba Holding so as to subject Alibaba Holding to personal jurisdiction in Missouri. Although plaintiffs half-heartedly argue that they should be permitted jurisdictional discovery, the only discovery they actually mention relates to Alibaba Hong Kong's customers. This evidence would not assist plaintiffs in demonstrating that personal jurisdiction exists over Alibaba Holding because Alibaba Hong Kong's contacts cannot be imputed to Alibaba Holding for the reasons set out above. The only evidence before me is that Alibaba Holding has no contact whatsoever with Missouri. Without any evidence of contact with Missouri, this Court cannot exercise personal jurisdiction over Alibaba Holding consistent with either Missouri's long arm statute or due process. [3] *See also Cepia, L.L.C. v. Alibaba Group Holding, Ltd.,* 2011 WL 5374747, at \*6 (E.D.Mo. Nov.8, 2011) (holding that this court lacks personal jurisdiction over Alibaba Holding and that contacts of Alibaba Hong Kong cannot be attributed to Alibaba Holding).

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [# 23] is granted, and plaintiffs' complaint against defendant Alibaba.Com Hong Kong Limited is dismissed for lack of personal jurisdiction.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 162495

## Footnotes

1    Plaintiffs were granted leave to amend their complaint to correct the numerous pleading deficiencies pointed out in defendant Alibaba Hong Kong's motion to dismiss. I also gave plaintiffs the opportunity to notify the Court if the amended complaint would contain any new allegations relevant to the jurisdictional issues at issue in this motion. Plaintiffs did not so notify the Court, and their time for doing so has expired. Therefore, the motion will be ruled upon as submitted.

2    In a similar vein, the Eighth Circuit held that a North Carolina corporation was not subject to personal jurisdiction in a Nebraska Court based upon a subsidiary's conduct in *Nebraska.* *Peterson v. U–Haul. Co.,* *409 F.2d 1174 (8th Cir.1969)* (applying Nebraska's long arm statute). Nebraska's long arm statute provided jurisdiction was proper in Nebraska so long as a party either conducted business in Nebraska or committed a tortious act in Nebraska. *Id.* at 1183. Nebraska's long arm statute is substantially similar to Missouri's long arm statute, in that both statutes confer jurisdiction over parties that either conduct business or commit a tort with the forum state. *See* Mo. Rev. St. § 506.500(1)-(3); *Peterson,* 409 F.2d at 1183. In determining whether or not a Nebraska District Court had jurisdiction over a North Carolina company based upon business conducted by a Nebraska subsidiary, the Eighth Circuit Court of Appeals explained that "the doing business of a subsidiary corporation in a state does not without more confer jurisdiction over the nonresident parent corporation." *Peterson,* 409 F.3d at 1184.

3    Plaintiffs also attempt to argue that this Court has general jurisdiction over Alibaba Holding, but again, the only contacts plaintiffs can point to are contacts by Alibaba Hong Kong. However, the contacts of Alibaba Hong Kong cannot be imputed to Alibaba Holding in an effort to establish personal jurisdiction for the reasons set out above. This argument therefore also fails.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   5

# EXHIBIT C

2017 WL 11680202

Only the Westlaw citation is currently available.

United States District Court, S.D. Florida.

ATMOS NATION LLC, a Nevada

Limited Liability Company, Plaintiff,

v.

ALIBABA GROUP HOLDING LTD. et al., Defendants.

Case No. 0:15-CV-62104-KMM

|

Signed 04/25/2017

|

Entered 04/26/2017

**Attorneys and Law Firms**

Glen Shrayer, Shrayer Law Firm, LLC, Fort Lauderdale, FL, for Plaintiff.

Edward Soto, Weil Gotshal & Manges, Miami, FL, Jonathan Bloom, R. Bruce Rich, Weil Gotshal & Manges, New York, NY, for Defendants Alibaba Group Holding Ltd., Alibaba.com Hong Kong Ltd., Alibaba.com Ltd., Alibaba.com Investment Holding Ltd., Alibaba.com Investment Ltd., Alibaba (China) Technology Co., Ltd.

Edward Soto, Weil Gotshal & Manges, Miami, FL, Jared R. Friedmann, Pro Hac Vice, Jonathan Bloom, Pro Hac Vice, R. Bruce Rich, Pro Hac Vice, Weil, Gotshal & Manges, LLP, New York, NY, for Defendants Taobao Holding Ltd., Taobao China Holding Ltd., Taobao (China) Software Co., Ltd.

ORDER GRANTING MOTION TO DISMISS

K. MICHAEL MOORE, CHIEF UNITED STATES DISTRICT JUDGE

**\*1** THIS CAUSE came before the Court upon the Alibaba Defendants' [1] Motion to Dismiss the Second Amended Complaint Pursuant to Rules 12(B)(4) and 12(B)(2) (the "Motion") (ECF No. 88). Plaintiff Atmos Nation LLC ("Plaintiff" or "Atmos") filed a Response (ECF No. 97), and the Alibaba Defendants filed a Reply (ECF No. 102). The matter is now ripe for review. For the reasons set forth herein, the Motion is GRANTED.

I. PROCEDURAL BACKGROUND [2]

On October 6, 2015, Plaintiff filed the initial Complaint (ECF No. 1). Shortly thereafter, Plaintiff filed a First Amended Complaint (ECF No. 5) and a Second Amended Complaint (the "SAC") (ECF No. 21). After the filing of the Second Amended Complaint in October of 2015, Plaintiff served only one Alibaba entity, the United States based Alibaba.com, Inc. On December 11, 2015, Alibaba.com, Inc. moved to dismiss for lack of personal jurisdiction and the Court granted the Motion. *See* Order Granting Motion to Dismiss dated March 15, 2016 ("March 15, 2016 Order") (ECF No. 59). In the March 15, 2016 Order, the Court found that Alibaba.com, Inc. neither operates nor controls any of the Alibaba Platforms, nor has any presence in Florida and granted the motion to dismiss on the basis of a lack of personal jurisdiction. On July 11, 2016, the Court entered default judgment against defendants Shenzhen Forevertop Technology Limited, Shenzhen Yibok Technology Co. Ltd., Shenzhen Hengyuan Technology Co., Ltd., Shenzhen Allsmoke Technology Co. Ltd., Shenzhen Aricon Biotech Co. Ltd., Shenzhen Cigwe Technology Co. Ltd., Shenzhen Cigabuy Co. Limited, Shenzhen Elikang Technology Co. Ltd., Shenzhen Joyelife Technology Co. Ltd., Shenzhen Itoy Technology Limited, Shenzhen Kingconti Technology Co., Ltd., Shenzhen Meiya Printing Co., Ltd. (collectively "Merchant Defendants"). *See* Order Granting in Part Motion for Default Judgment Against the Merchant Defendants (ECF No. 67).

The only remaining defendants, the Alibaba Defendants, can be further divided into two categories: those that operate Alibaba websites and those that do not. Plaintiff alleges that Alibaba.com Hong Kong Limited and Taobao China Holding Ltd. (the "Operating Entities") operate Alibaba websites. *See* SAC ¶¶ 16, 25. Alibaba Group Holding Ltd., Alibaba.com Ltd., Alibaba.com Investment Holding Ltd., Alibaba.com Investment Ltd., Alibaba (China) Technology Co., Ltd., Taobao Holding Ltd., and Taobao (China) Software Co., Ltd. (the "Non-Operating Entities") are Alibaba Defendants who are not alleged to operate websites. *See id.*

The Alibaba Defendants now seek dismissal for insufficient process, or in the alternative, lack of personal jurisdiction, pursuant to Rules 12(B)(4) and 12(B)(2) of the Federal Rules of Civil Procedure.

II. DISCUSSION

A. Service of Process

**\*2**  Rule 4 of the Federal Rules of Civil Procedure sets forth the requirements for commencing an action and service of process. Fed. R. Civ. P. 4. Rule 4(a) requires that the summons, properly signed and sealed, be issued by a clerk for each defendant to be served. Id. 4(a). Rule 4(c)(1) states, that in general, "[a] summons must be served with a copy of the complaint." A defendant may waive service pursuant to Rule 4(d), however, that did not occur here. At the time Plaintiff filed the Second Amended Complaint, Rule 4(m) provided that a defendant must be served within 120 days of filing of the complaint, absent good cause. [3]

Rule 4(m)'s time limit for service provides an exception for service in a foreign country. The Court of Appeals for the Eleventh Circuit has not held "whether or what time constraints apply to service on foreign defendants" but stated "[s]pecific time limits aside, '[m]ost courts faced with a challenge to the timeliness of foreign service have applied a 'flexible due diligence' standard to determine whether the delay should be excused." ⚑ Harris v. Orange S.A., 636 Fed. App'x 476, 485 (11th Cir. 2015) (quoting ⚑ Lozano v. Bosdet, 693 F.3d 485, 488–9 (5th Cir. 2012)). Without establishing a definitive rule, in Harris the Eleventh Circuit held that a "complaint may be dismissed upon a showing that [plaintiff] failed to exercise diligence in attempting to effectuate service." ⚑ Id. at 486 (affirming the district court's dismissal of plaintiff's claims against foreign defendants for failure to exercise diligence in attempting service for a period of 268 days). Other Courts of Appeal have varied in their stances. See ⚑ Lucas v. Natoli, 936 F.2d 432, 432–33 (9th Cir. 1991) (holding that the requirement that complaint be served within 120 days after filing did not apply to foreign service); Nylok Corp. v. Fastener World Inc., 396 F.3d 805, 807 (7th Cir. 2005) ("[b]ecause district courts need to be able to control their dockets ... time allowed for foreign service is not unlimited"); and ⚑ Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse, 996 F. 2d 506, 512 (2d Cir. 1993) (attempt to serve must be made within 120 days).

Here, Plaintiff filed the Second Amended Complaint in October of 2015 and was afforded numerous opportunities to effectuate service. On June 1, 2015—more than seven months after the filing of the Second Amended Complaint—Plaintiff sought leave of Court for service by alternative means. See Plaintiff's Motion for Service by Publication (ECF No. 66). The Court granted the motion [4] and Plaintiff still failed to serve Defendants. On September 20, 2016, the Court

ordered Plaintiff to show cause as to why a notice of service had not yet been filed. See Order to Show Cause (ECF No. 69). Plaintiff responded that, in essence, the failure to perfect service was due to anticipated settlement. See Response to Order to Show Cause (ECF No. 74).

On September 21, 2016, Defendants expressly consented to receive service through their United States counsel for purposes of this litigation and, one year after the filing of the Second Amended Complaint, Plaintiff yet again failed to effectuate proper service. See Defendants' Motion to Withdraw or Modify Order (ECF No. 73); see also Certificate of Service filed October 19, 2016 (ECF No. 87). Following the Court's Order to Show Cause, a process server delivered to defense counsel's New York office a stack of papers containing: (i) a copy of the First Amended Complaint; (ii) a copy of the Second Amended Complaint; (iii) a copy of the August 18 Order; and (iv) a copy of a draft summons addressed to Alibaba Group Holding Ltd. This draft summons was undated and unsigned. Yet another month transpired and the Court directed Plaintiff to file a Certificate of Service of the Second Amended Complaint in accordance with the Local Rules of the United States District Court for the Southern District of Florida. See Order dated October 17, 2016 (ECF No. 85).

**\*3**  On November 7, 2016, Defendants filed the instant motion and moved to dismiss arguing that Defendants had still not been served with process and that the Court lacks personal jurisdiction. It was not until November 21, 2016, that Plaintiff filed the summonses with the Court. See Summons (ECF No. 93).

More than a year transpired after the filing of the Second Amended Complaint before Plaintiff perfected service. [5] The arduous recitation of Plaintiff's missteps and excuses, as well as the Court's liberal grant of opportunities to perfect service, make it abundantly clear that Plaintiff "failed to exercise diligence." See ⚑ Harris, 636 Fed. App'x at 486. Applying a standard of "flexible due diligence", the Court finds that dismissal is warranted under these circumstances.

B. Jurisdiction

The Alibaba Defendants—except for Alibaba.com Hong Kong Ltd. [6] —also move to dismiss the action under Rule 12(b)(2) for lack of personal jurisdiction. Plaintiff argues that this Court does indeed have personal jurisdiction, both

general and specific, over the Alibaba Defendants, under Florida's long-arm statute.

Because federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons, *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014), a federal court sitting in Florida must conduct a two-step inquiry to determine whether it has personal jurisdiction over a non-resident defendant. The court must determine "(1) whether personal jurisdiction exists over the nonresident defendant ... under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

If the requirements of the long-arm statute are satisfied, then the court must determine whether the defendant has established sufficient "minimum contacts" with the State of Florida, such that the exercise of jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

The plaintiff bears the initial burden of pleading sufficient material facts to make out a prima facie case of jurisdiction. *See Future Tech. Today, Inc., v. OSF Healthcare Systems*, 218 F.3d 1247, 1249 (11th Cir. 2000). If the plaintiff meets his or her burden, the burden then shifts to the defendant to contradict the plaintiff's allegations by affidavits or other competent evidence. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214–15 (11th Cir. 1999). To the extent the defendant's proffered evidence does not contradict the plaintiff's jurisdictional allegations, the allegations must be accepted as true. *See id.* at 1215 (citation omitted). But to the extent the defendant does contradict the plaintiff's allegations, the burden shifts back to the plaintiff, this time requiring the plaintiff to prove—not merely allege— jurisdiction by affidavits, testimony, or other documents. *See id.* at 1214–15.

### *1. The Alibaba Defendants Are Not Alter Egos of One Another.*

**\*4** The Second Amended Complaint alleges that the Alibaba Defendants are all alter egos of one another and that they operate as a single unit, maintain common office spaces, and that the subsidiaries are financially dependent upon their parent, the Alibaba Group. *See* SAC ¶¶ 61–64. However, the Court has already addressed Plaintiff's alter ego theory. *See* March 15, 2016 Order. For the reasons set forth in the March 15, 2016 Order, the Court declines finding that the Alibaba Defendants are alter egos of one another. *See id.* at 12–13 ("At most, Plaintiff's alter ego theory amounts to a claim that the various Alibaba entities are related to each other and act together in certain respects—which is not enough to justify personal jurisdiction. *See, e.g., Mother Doe I v. Maktoum*, 632 F. Supp. 2d 1130, 1142 (S.D. Fla. 2007)").

### *2. The Court Does Not Have General Jurisdiction Over the Non-Operating Entities.*

"General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation." *See Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990), n.7. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations," without offending due process "when their affiliations with the State are 'so continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). General jurisdiction over a foreign corporation will not lie "unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015).

Here, Plaintiff alleges that personal jurisdiction is proper over all Defendants. *See, e.g.*, SAC ¶¶ 46, 48. Plaintiff does not however allege that the individual Non-Operating Entities are engaged in substantial activity within Florida. Plaintiff instead argues more broadly that that Alibaba Defendants "are a part of an ecosystem" and relies upon an alter ego theory to support a finding of jurisdiction. All of the Non-Operating Entities are incorporated outside of the United States, have a principal place of business outside of the United States, do not have any offices or employees within the United States and are not registered to conduct business or direct their business into Florida. Thus, the Court finds that it lacks general jurisdiction over the Non-Operating Entities. *See,*

*e.g.,* 🔖 *Hard Candy, LLC v. Hard Candy Fitness, LLC,* Case No. 13-23705-CIV, 2015 WL 3377906, at *18 (S.D. Fla. May 13, 2015) (finding that Florida's long-arm statute did not extend jurisdiction over non-resident defendants who were not incorporated in Florida, whose principal place of business was not in Florida, and who did not have continuous and systematic contacts with Florida).

### 3. The Court Lacks Specific Jurisdiction Over the Non-Operating Entities.

To determine whether specific jurisdiction exists over a defendant the court must determine whether the requirements of Florida's long-arm statute are satisfied and, if so, whether the requirements of due process are satisfied. *See* 🔖 *Madara,* 916 F.2d at 1514. The specific jurisdiction provision of Florida's long-arm statute provides, in relevant part, that a non-resident defendant "submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from" one of several enumerated activities. Fla. Stat. § 48.193(1)(a).

"Even though a statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " 🔖 *Licciardello v. Lovelady,* 544 F.3d 1280, 1284 (11th Cir. 2008). The second step of the jurisdictional inquiry, the Due Process inquiry, requires that the Court examine "whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." 🔖 *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,* 421 F.3d 1162, 1166 (11th Cir. 2005) (quoting 🔖 *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319). Due process requires that the defendant have "fair warning" that his actions might subject him to the jurisdiction of a foreign sovereign. *See* 🔖 *Burger King Corp. v. Rudzeqicz,* 471 U.S. 462, 472 (1985). "This fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out

of or relate to those activities." 🔖 *Licciardello,* 544 F.3d at 1284.

**\*5** Plaintiff alleges that personal jurisdiction over the non-resident Defendants is proper because they are committing tortious acts within Florida, they have caused injury to the Plaintiff by their actions, and are either engaged in solicitation within Florida or have engaged in substantial activity within Florida. *See* SAC ¶ 48. Further, Plaintiff alleges that the Alibaba Defendants

> knowingly operate a marketplace for Counterfeit Products with the knowledge and intent that such Counterfeit Products (i) will ultimately be offered to consumers in Florida and throughout the United States; (ii) infringe the rights of intellectual property owners in Florida and throughout the United States, including but not limited to the Plaintiff; (iii) cause substantial consumer confusion among consumers in Florida and throughout the United States; and (iv) cause the harm alleged herein that results from sales of Counterfeit Products in Florida and throughout the United States, including but not limited to the harm caused to the Plaintiff, which has their principal place of business and substantial operations in Florida.

*Id.* ¶ 65.

The Alibaba Defendants do not dispute that operation of a website through which sales are made into Florida may establish minimum contacts. However, the Non-Operating Entities do *not* operate such websites nor does the Second Amended Complaint allege as such. In response to this point, Plaintiff merely states "[a]ll Defendants help facilitate every transaction on their website" and reiterates that "[t]he Defendants are part of an ecosystem that allows counterfeit products to be sold here in the United States of America" and in Florida. *See* Response at 8. Plaintiff does not provide the

Court with any facts or arguments whatsoever that indicate that the Non-Operating Entities have submitted themselves to jurisdiction in Florida.

Tellingly, Plaintiff's opposition does not distinguish between the various Defendants in addressing personal jurisdiction. *See, e.g.,* Response at 13 ("Here, the Defendants through their internet platform and website Alibaba.com ..."); *see also id.* at 14 ("The Defendants are an international company that performs millions of transactions annually ..."); *see also id.* at 16 ("All of the Alibaba Defendants participate in this 'ecosystem' and are properly subject to jurisdiction for the purposeful sale of counterfeits into Florida.").

The Court finds that even if Florida's long-arm statute permitted the exercise of jurisdiction over the Non-Operating Entities, Plaintiff has not alleged sufficient minimum contacts with Florida and the exercise of jurisdiction over them would violate the Due Process Clause.

### 4. The Court Lacks Personal Jurisdiction Over Taobao China Holding Ltd.

Taobao China Holding Ltd. is the operator of the Chinese language website Taboao.com. *See* SAC ¶¶ 26, 51. It is organized and exists under the laws of Hong Kong and is the direct-wholly owned subsidiary of Taobao Holding. *Id.* ¶ 26. Taobao China Holding Ltd. is one of the Alibaba Defendants (*see* SAC ¶ 27), however, it operates Taobao.com and is therefore an "Operating Entity."

As Plaintiff fails to sufficiently allege general and personal jurisdiction over the Non-Operating Entities, it also fails to do so with respect to Taobao China Holding Ltd. Plaintiff alleges no facts to suggest that Taobao China Holding Ltd. is engaged in substantial activity within Florida in support of the assertion of general jurisdiction. Fla. Stat. Ann. § 48.193(2). It is a company organized and based in Hong Kong with no employees or offices in the United States and it is not registered to conduct business in the United States.

**\*6** Specific personal jurisdiction is not supported because, although Taobao China Holding Ltd. operates a website through which allegedly counterfeit goods are sold, Plaintiff has not alleged that that website was used in connection with any sales of products into Florida. Indeed, the Second Amended Complaint indicates that there are barriers to accessing the website. The Second Amended Complaint

alleges that, as of July 17, 2015, there were at least seventeen advertisements for counterfeit products on Taobao.com, however, sample purchases could not be made without entering Chinese passport information and a bank account number from a Chinese bank. *See* SAC ¶ 285. Plaintiff also states that "[u]pon information and belief, none of the Chinese Banks ... have Florida Branches." *Id.*

To establish specific jurisdiction under § 48.193(1)(a), a nonresident defendant's actions "must ... show a general course of business activity in the State for pecuniary benefit." *Fraser v. Smith,* 594 F.3d 842, 848 (11th Cir. 2010). Plaintiff's allegations that it was *unable* to make a purchase from the website operated by Taobao China Holding Ltd., a foreign corporation without any offices or employees in the United States, hardly demonstrate a "general course of business activity" in Florida. Accordingly, the Court is without jurisdiction over Taobao China Holding Ltd.

### 5. The Federal Long-Arm Statute Does Not Confer Personal Jurisdiction Over the Non-Operating Entities or Taobao China Holding Ltd.

Rule 4(k) of the Federal Rules of Civil Procedure "permits a court to aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must 'arise under federal law;' and (2) the exercise of jurisdiction must be 'consistent with the Constitution and laws of the United States.' "

*Consolidated Development Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir. 2000) (quoting Fed. R. Civ. P. 4(k)(2)). Jurisdiction "consistent with the Constitution and laws of the United States," meaning that it comports with due process, requires that a non-resident defendant have certain minimum contacts. *Id.* (internal quotation omitted). In order to assert general personal jurisdiction, the requirements are stringent and require a showing of continuous and systematic general business contacts with the forum state. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.,* 786 F.2d 1055, 1057 (11th Cir. 1996). Exercise of specific jurisdiction arises from a defendant's activities in the forum which are related to the cause of action alleged in the complaint.

*Madara,* 916 F.2d at 1516, n. 7 (11th Cir. 1990) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 9 (1984)). "It has long been recognized that a court has the minimum contacts to support specific

jurisdiction only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d at 1291 (citing *Hanson v. Denckla*, 351 U.S. 235, 253 (1958)).

Here, Plaintiff has not alleged sufficient facts to support a finding that the Non-Operating Entities or Taobao China Holding Ltd. are subject to either general or specific jurisdiction under the Federal long-arm statute. As discussed above, the Non-Operating Entities and Taobao China Holding Ltd. have not had continuous and systematic business contacts with Florida. Additionally, Plaintiff does not allege sufficient facts to demonstrate minimum contacts with Florida warranting specific jurisdiction.

### 6. *Jurisdictional Discovery is Not Warranted.*

In the Response, Plaintiff requests an opportunity to engage in "thorough jurisdictional discovery" and argues that "[d]iscovery will elaborate on the exact nature of the Defendants and how each individual entity provides essential support to the Merchant Defendants, which allow counterfeit products to end up in stores and in consumers' hands in Florida." *See* Response at 9.

**\*7** "[A] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *Mother Doe I*, 632 F. Supp. 2d at 1145 (internal citations and quotations omitted). The Court looks to the timing and nature of the jurisdictional discovery request. *Id.* at 1146.

In *Mother Doe I*, the Court was faced with similar facts. There, Defendants moved to dismiss the complaint arguing, among other things, that the Court lacked personal jurisdiction over the defendants and that the requirements of Florida's long-arm statute were not satisfied. *Id.* at 1143–4. Plaintiffs did not request permission to take limited jurisdictional discovery. *Id.* at 1144. Much of the information regarding the defendants' contacts came from publicly-available sources. *Id.* at 1146. Instead, in a footnote to their opposition to the defendants' motion to dismiss, the plaintiffs

stated that they should be permitted to take jurisdictional discovery if the Court finds that they have not sufficiently demonstrated the existence of jurisdiction. *Id.* at 1146. Additionally, the Court went on to state,

> whether the Court should postpone its decision concerning personal jurisdiction to allow Plaintiffs an opportunity, almost a year after the suit was filed and after all arguments have been presented in writing and orally, and in the absence of a formal motion or other showing as to the scope of any proposed jurisdictional discovery request and on the factual showing made by Plaintiffs, to engage in such discovery. The answer is 'No.'

*Id.*

Here, more than a year has transpired since the filing of the Second Amended Complaint. Plaintiff has not formally moved for jurisdictional discovery but embedded this "request" in its opposition to Defendants' motion to dismiss. The request for jurisdictional discovery also fails to specify how additional discovery would assist. As the Court held in *Mother Doe I*, the Court similarly finds that jurisdictional discovery is not justified by the circumstances.

### III. CONCLUSION
For the foregoing reasons, it is ordered and adjudged that the Alibaba Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 88) is hereby GRANTED.

The Clerk of the Court is instructed to CLOSE this case. All other pending motions are DENIED AS MOOT.

Done and ordered in Chambers at Miami, Florida, this 25th day of April, 2017.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 11680202

## Footnotes

1     Defendants Alibaba Group Holding Ltd., Alibaba.com Hong Kong Ltd., Alibaba.com Ltd., Alibaba.com Investment Holding Ltd., Alibaba.com Investment Ltd., Alibaba (China) Technology Co., Ltd., Taobao Holding Ltd., Taobao China Holding Ltd., and Taobao (China) Software Co., Ltd. shall herein be referred to as the "Alibaba Defendants."

2     The Court set forth the factual background previously in its Order Granting Motion to Dismiss dated March 15, 2016.

3     On December 1, 2015, Federal Rule 4(m) was updated to require service upon a defendant within ninety (90) days of the issuance of the complaint.

4     On August 18, 2016, the Court granted Plaintiff's Motion for Alternative Service of Process. *See* ECF No. 68. The Court subsequently entered an Order striking its prior Order on Motion for Service by Publication upon Defendants' express consent to receive service through their United States counsel for purposes of this litigation. *See* Orders dated October 12, 2016 (ECF Nos. 82, 83).

5     To be precise, 398 days elapsed before Plaintiff served the Defendants.

6     Alibaba.com Hong Kong Ltd. does not challenge personal jurisdiction but joins the motion to dismiss for failure to serve.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT D

2011 WL 5374747
Only the Westlaw citation is currently available.
United States District Court,
E.D. Missouri,
Eastern Division.

CEPIA, L.L.C., Plaintiff,
v.
ALIBABA GROUP HOLDING LIMITED and
Alibaba.Com Hong Kong Limited, Defendants.

No. 4:11–CV–273 SNLJ.
|
Nov. 8, 2011.

**Attorneys and Law Firms**

Andrew J. Scavotto, Sandra Jane Wunderlich, Stinson and Morrison, St. Louis, MO, Penny R. Slicer, Stinson And Morrison, Kansas City, MO, for Plaintiff.

Darryl M. Woo, Kathryn J. Fritz, Ryan J. Marton, Leslie A. Kramer, Fenwick & West LLP, San Francisco, CA, Richard B. Walsh, Jr., Michael J. Hickey, Lewis Rice, St. Louis, MO, for Defendants.

***MEMORANDUM AND ORDER***

STEPHEN N. LIMBAUGH, JR., District Judge.

**\*1** Plaintiff has filed a multicount trademark infringement complaint raising claims of trademark infringement, trade dress infringement, false advertising, false designation of origin, copyright infringement, unfair competition, and dilution. This matter is before the Court on Defendant Alibaba Group Holding Limited's motion to dismiss for lack of personal jurisdiction [35], filed June 7, 2011 and Defendant Alibaba.Com Hong Kong Limited's motion to dismiss for lack of personal jurisdiction [33], filed June 7, 2011. Extensive responsive pleadings have now all been filed and this matter is ripe for disposition.

## I. BACKGROUND

Plaintiff Cepia, LLC is a limited liability company organized under the laws of Missouri, with its principal place of business in St. Louis, Missouri. Plaintiff develops, manufactures, and sells various children's toy lines. Plaintiff's most successful line to date and the subject of this lawsuit is the ZhuZhu Pets line which can best be described as motorized animal toys. Plaintiff launched ZhuZhu Pets in 2009 and was recognized as "Toy of the Year" by the Toy Industry Association in the same year. Plaintiff later extended distribution beyond the United States to Europe, Asia, Australia, New Zealand, and North and South America. In addition to expanding its geographic distribution, Plaintiff extended the ZhuZhu Pets line to include a wide variety of similar and supporting products. In 2010, Plaintiff successfully registered the mark "ZhuZhu Pets," along with the ZhuZhu Pets logo, with the United States Patent and Trademark Office. Plaintiff also is the owner of several copyrights related to ZhuZhu Pet product design and packaging.

Defendant Alibaba.Com Hong Kong Limited (hereinafter Alibaba.Com) is a Hong Kong corporation with its principal place of business in Wanchai, Hong Kong. Alibaba.Com is a subsidiary of Alibaba Group Holding Limited, a Cayman Islands corporation. Alibaba.Com maintains websites in the United States and elsewhere that allow a variety of third party sellers to display products for sale to consumers in one central internet location. Alibaba.Com maintains no physical presence of any kind in Missouri beyond the operation of its websites. Alibaba.Com generally does not offer products of its own creation for sale; instead facilitating commercial transactions between buyers and sellers online through its global websites. Alibaba.Com operates as an online marketplace where various third party sellers can list their products for sale, often purchased by wholesale buyers. Alibaba.Com has two "paid users" in Missouri, as well as 1,211 [1] third party suppliers who identify themselves as being located in Missouri. [2] Alibaba.Com permits visitors to search for products either based upon pre-determined product category listings or based upon search terms provided by individual visitors. During the relevant period, Alibaba.Com provided a link viewable on its home page that directed visitors to a page built specifically for ZhuZhu Pet merchandise. The ZhuZhu Pet link existed on Alibaba.Com's home page regardless of any search terms a visitor may or may not have provided.

**\*2** Alibaba Group Holding Limited (hereinafter Alibaba Holding) is a Cayman Islands Corporation with its principal place of business in Hong Kong. Alibaba Holding is a holding company that owns a number of internet business, including Alibaba.Com. Alibaba Holding owns the domain name "alibaba.com" and owns the marks "Alibaba" and

"Aliexpress." Alibaba Holding is the majority shareholder of Alibaba.Com. Additionally, Alibaba.Com and Alibaba Holding share the same chairman of their separate boards of directors. Alibaba Holding maintains no presence of any kind in Missouri beyond its ownership interests in Alibaba.Com and Alibaba Holding's intellectual property used by Alibaba.Com.

Plaintiff contends Alibaba.Com unlawfully uses Plaintiff's ZhuZhu Pet related intellectual property, including the ZhuZhu Pet name, logo, packaging and product depictions to facilitate the sale of counterfeit and unauthorized ZhuZhu Pet merchandise. Plaintiff contends Alibaba.Com maintained, during the relevant time period, a link on the subject website taking visitors to a ZhuZhuPet microsite featuring ZhuZhu Pet products for sale from various sellers. According to Plaintiff, none of the sellers are authorized ZhuZhu Pet suppliers, and nearly all of the offered merchandise is counterfeit or otherwise unauthorized by Plaintiff.

## II. APPLICABLE LEGAL STANDARD—MOTION TO DISMISS

In ruling on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232 (1974); *Conley v. Gibson,* 255 U.S. 41, 45–46 (1957); *Toombs v. Bell,* 798 F.2d 297, 298 (8th Cir.1986). When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists. *KV Pharmaceutical Co. v. J. Uriach & CIA, S.A;* 648 F.3d 588, 591–92 (8th Cir.2011); *Viasystems, Inc. v. EBM–Pabst St Georgen GMBH & Co., KG,* 646 F.3d 589, 592 (8th Cir.2011); *Miller v. Nippon Carbon Co., Ltd.,* 528 F.3d 1087, 1090 (8th Cir.2008); *Dever v. Hentzen Coatings,* 380 F.3d 642, 647 (8th Cir.2004); *Epps v. Stewart Information Servs. Corp.,* 327 F.3d 642, 647 (8th Cir.2003); *Burlington Indus. v. Maples Indus.,* 97 F.3d 1100, 1102 (8th Cir.1996); *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir.1992); *Enterprise Rent–A–Car Co. v. Stowell,* 137 F.Supp.2d 1151, 1154 (E.D.Mo.2001). To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a *prima facie* showing of personal jurisdiction over the challenging defendant. *KV Pharmaceutical,* 648 F.3d at 591 ("To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that

personal jurisdiction exists ..."); *Steinbuch v. Cutler,* 518 F.3d 580, 585 (8th Cir.2008) ("To survive a motion to dismiss, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendant's may be subjected to jurisdiction in the forum state."); *Dever,* 380 F.3d at 1072–73 (plaintiff must produce some evidence; conclusory allegations are insufficient to sustain the *prima facie* showing); *Epps,* 327 F.3d at 647;*Clune v. Alimak AB,* 244 F.3d 538, 541 (8th Cir.2000); *Falkirk Mining Co. v. Japan Steel Works,* 906 F.2d 369, 373 (8th Cir.1990); *Enterprise Rent–A–Car,* 137 F.Supp.2d at 1154 (citing *Digi–Tel Holdings Inc. v. Proteq Telecomm., Ltd.,* 89 F.3d 518, 522 (8th Cir.1996)). A plaintiff's *prima facie* showing "must be tested, not by pleadings alone, but by affidavits an exhibits" presented in support or in opposition to the motion. *KV Pharmaceutical,* 648 F.3d at 592;*Miller,* 528 F.3d at 1090 (citing *Dever,* 380 F.3d at 1072); *Dever,* 380 F.3d at 1072 (citations omitted); *see Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir.1998) (when considering whether personal jurisdiction exists under Missouri long arm statute, court may inquire by affidavits or otherwise into facts as they exist). Although a court must view evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; the party seeking to establish the court's personal jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. *Viasystems,* 646 F.3d at 592;*Epps,* 327 F.3d at 647.

## III. DISCUSSION

**\*3** In order for a federal court to exercise personal jurisdiction over a non-resident defendant two prerequisites must be satisfied. *Johnson v. Arden,* 614 F.3d 785, 794 (8th Cir.2010); *see KV Pharmaceutical,* 648 F.3d at 592. Firstly, the forum state's long arm statute must be satisfied. *Viasystems,* 646 F.3d at 593;*Johnson,* 614 F.3d at 794. Secondly, the Court must determine whether the defendant has sufficient contacts with the forum state to satisfy due process concerns of the Fourteenth Amendment. *Johnson,* 614 F.3d at 794;*Miller,* 528 F.3d at 1090;*Stanton v. St. Jude Medical,* 340 F.3d 690, 693 (8th Cir.2003); *St. Jude Medical, Inc. v. Lifecare Int'l,* 250 F.3d 587, 591 (8th

Cir.2001); *Clune,* 244 F.3d at 541; *Redwing, 146 F.3d at 543*; *Burlington Indus., 97 F.3d at 1102.* The Eighth Circuit Court of Appeals suggests the due process and long arm statute inquiries should be analyzed separately. *Viasystems,* 646 F.3d at 593 n. 2 (citing *Bryant v. Smith Interior Design Grp., 310 S.W .3d 227, 231 (Mo.2010)).* [3]

The reach of Missouri's long arm statute is a question of Missouri law. *See Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 311 (8th Cir.1982).* Accordingly, the Court must accept the interpretation given the statute by the Missouri Supreme Court. *See id.* Missouri's long arm statute provides for personal jurisdiction over any person or firm who, *inter alia,* either in person or through an agent transacts business, makes a contract, or commits a tort within Missouri. *Mo.Rev.Stat. § 506.500.1(1)-(3).* Missouri's long-arm statute has been interpreted as covering "extraterritorial acts that yield consequences in Missouri." *Furminator v. Wahba,* No. 4:10–CV–01941, 2011 WL 3847390 at *2 (August 29, 2011) (quoting *Bryant v. Smith Interior Design Grp., Inc., 310 S.W.3d 227, 232 (Mo.2010)).*

The second prerequisite—minimum contacts—is based on the notion that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach. Ltd. v. Nicastro,* 131 S.Ct. 2780, 2787 (2011). Due process requires that a plaintiff show that a non-resident have "minimum contacts" with the forum state and that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *Id.; World–Wide Volkswagen v. Woodson,* 498 U.S. 286, 291–92 (1980); *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see Asahi Metal Indus. Co. v. Superior Court of California, Solano County, 480 U.S. 102, 109–112 (1987); Miller,* at 1090–1091; *Steinbuch;* at 585–86; *Stanton v. St. Jude Medical,* 340 F.3d at 693; *Epps, 327 F.3d at 647–48;Clune,* 244 F.3d at 541–42 (citing *Int'l Shoe, 326 U.S. 310).; Burlington Indus., 97 F.3d at 1102* (citing *World–Wide Volkswagen,* 498 U.S. at 291–92); *Guinness Import Co. v. Mark VII Distributors, 153 F.3d 607, 614 (8th Cir.1998); Enterprise Rent–A–Car.* at 1115 (citing *Int'l Shoe, 326 U.S. at 310).* A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen,* 444 U.S. at 297; *Stanton, 340 F.3d at 694*; *Epps, 327 F.3d at 648.* Minimum contacts can cover a plethora of activities; however, sufficient minimum contacts "requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Nicastro, 131 S.Ct. at 2787* (quoting *Hanson v. Denckla, 357 U.S. 235, 253 (1958)); see Miller, 528 F.3d at 1091*; *Steinbuch, 518 F.3d at 586*; *Romak USA v. Rich, 384 F.3d 979, 984 (8th Cir.2004); Dever,* 380 F.3d at 1073; *Stanton, 340 F.3d at 693*; *Epps, 327 F.3d at 648–49*; *Guinness Imports, 153 F.3d at 614.*

**\*4** The " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.' " *Stanton, 340 F.3d at 693–94(quoting Burger King, 471 U.S. 475* (citations omitted)); *see also Epps, 327 F.3d at 648*; *Guinness Imports, 153 F.3d at 614.* "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Stanton, 340 F.3d at 694* (quoting *Burger King,* 471 U.S. at 475). That is, "jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state. In other words, the cause of action must 'arise out of' or 'relate to' a defendant's activities within a state." *Romak USA, 384 F.3d at 984* (internal citations omitted).

Based on the due process standard espoused by *World–Wide Volkswagen* and *International Shoe* and their progeny, the Eighth Circuit Court of Appeals established a five factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state. *Romak USA, 384 F.3d at 984;but see Bryant; 310 S.W.3d at 233 n. 4* (noting that the five factor test is "simply a tool ...", not a required test for personal jurisdiction). The five factors utilized by the Eighth Circuit Court of Appeals are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its

residents; and 5) convenience of the parties. *Romak USA, 384 F.3d at 984;Dever,* 380 F.3d at 1073–74; *Stanton,* 340 F.3d at 694; *Epps,* 327 F.3d at 648; *Guinness Imports,* 153 F.3d at 614; *Burlington Indus.,* 97 F.3d at 1102;*see also Products Plus,* 112 S.W.3d 120, 124 (Mo.App.2002). The first three factors are of "primary importance", while the last two factors are of "secondary importance" and as such are not determinative of personal jurisdiction. *Romak USA,* 384 F.3d at 984;*Dever,* 380 F.3d at 1074; *Stanton,* 340 F.3d at 694; *Guinness Imports,* 153 F.3d at 614.

Furthermore, with respect to the third factor, the Supreme Court has differentiated between general and specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984); *see also Viasystems,* 646 F.3d at 589. " 'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while [g]eneral jurisdiction ... refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.' " *Viasystems,* 646 F.3d at 593 (*quoting Miller,* 528 F.3d at 1091) (alteration in original) (omission in original)). General personal jurisdiction may be exercised if a defendant has maintained systematic and continuous presence in a forum state such that it has purposefully availed itself of the privileges of a particular state's laws to the point where exercising jurisdiction does not offend traditional notions of fair play or substantial justice. *Nicastro,* 131 S.Ct. at 2787;*World–Wide Volkswagen,* 498 U.S. at 291–92; *Steibuch,* 518 F.3d at 586. Unlike specific personal jurisdiction, general personal jurisdiction does not require a direct relationship between the defendant's contacts with the forum and the plaintiff's cause of action. *See Steinbuch,* 518 F.3d at 586.

### A. Alibaba Holding

**\*5** Plaintiff first argues Alibaba Holding is subject to the jurisdiction of this Court because Alibaba Holding owns the domain name www.alibaba.com, certain trade names and other intellectual property in connection with its subsidiary Defendant Alibaba.Com, and due to Alibaba.Com's allegedly tortious acts. Few Missouri courts have addressed the issue of whether the Missouri long arm statute reaches a parent company due to the alleged tortious conduct of a subsidiary. In *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.,* the Missouri Court of Appeals narrowly addressed whether a parent corporation was subject to personal jurisdiction in Missouri for actions of a subsidiary which occurred in Missouri. *32 S.W.3d 592 (Mo.App.2000).* The Missouri Court of Appeals held the parent company did not have sufficient minimum contacts with Missouri to support jurisdiction pursuant to the Missouri long arm statute because the parent did not commit the allegedly tortious acts in Missouri, and the plaintiff had not shown the subsidiary was acting as an agent of the parent. *Id.* at 601–02.

In a similar vein, the Eighth Circuit held that a North Carolina corporation was not subject to personal jurisdiction in a Nebraska Court based upon a subsidiary's conduct in Nebraska. *Peterson v. U–Haul. Co.,* 409 F.2d 1174 (8th Cir.1969) (applying Nebraska's long arm statute). Nebraska's long arm statute provided jurisdiction was proper in Nebraska so long as a party either conducted business in Nebraska or committed a tortious act in Nebraska. *Id.* at 1183. Nebraska's long arm statute is substantially similar to Missouri's long arm statute, in that both statutes confer jurisdiction over parties that either conduct business or commit a tort with the forum state. *See Mo. Rev. St. § 506.500(1)-(3); Peterson,* 409 F.2d at 1183. In determining whether or not a Nebraska District Court had jurisdiction over a North Carolina company based upon business conducted by a Nebraska subsidiary, the Eighth Circuit Court of Appeals explained "the doing business of a subsidiary corporation in a state does not without more confer jurisdiction over the nonresident parent corporation." *Peterson,* 409 F.3d at 1184; *see Cannon Mfg. v. Cudahy Packing Co.,* 267 U.S. 333, 334–37 (1925).

Plaintiff next argues that a parent company may become subject to the jurisdiction of a forum based upon a symbiotic relationship with a subsidiary, citing *Anderson v. Dassault Aviation,* 361 F.3d 449 (8th Cir.2004). In *Dassault,* the Eighth Circuit Court of Appeals held a parent corporation which completed manufacture of a majority of its products through a subsidiary located in Arkansas was subject to personal jurisdiction in Arkansas based upon "a close, synergistic relationship that is not an abuse of the corporate organizational form." *Id.* at 453. *Dassault,* however, is distinguishable from the present case. *Dassault* involved a

parent company knowingly sending a majority of its products to a subsidiary in Arkansas for completion before the products were distributed to purchasers. The present case involves only the use of trademarks and other intellectual property on web sites viewable, but not based, in Missouri. While Alibaba Holding certainly derives a benefit from Alibaba.com's use of trademarks owned by Alibaba Holding, the relationship between parent and subsidiary does not approach the same level of symbiosis found in *Dassault.*

**\*6** Further, in *Viasystems, Inc. v. EBM Pabst St. Georgen GmbH & Co ., KG,* the Eighth Circuit cautioned against the misapplication of 📁 *Dassault.* 646 F.3d 589, 596 (8th Cir.2011). The Eighth Circuit explained that determining whether or not a parent purposefully directed products at a forum state and attributing the conduct of a subsidiary to a parent within a given forum should be "conceptually separate" inquiries. *Id.* The Eighth Circuit Court of Appeals opined that attribution of subsidiary conduct to a parent entity for jurisdictional purposes requires a degree of parental control and domination. *Id.* Although not quantifying the degree of parental control and domination required, the Eighth Circuit equated the parental relationship necessary to attribute the conduct of a subsidiary to its parent corporation with the alter ego relationship required by 📁 *Epps v. Stewart Information Services Corp ., 327 F.3d 642, 649 (8th Cir.2003).* In *Epps,* the Eighth Circuit Court of Appeals stated that jurisdiction over a non-resident parent corporation can be based on the actions of a resident subsidiary corporation "only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." *Id.*

Plaintiff has failed to sufficiently show the level of control needed to attribute Alibaba.Com's conduct to Alibaba Holding. Plaintiff points to use of the same name and logo, together with Alibaba.Com and Alibaba Holding having the same chairman of each entity's separate boards of directors, as evidence of parental control. Such an arrangement does not reach the level of control as set forth in *Epps.* Beyond the parental relationship and ownership interests in domain names and trademarks indicated previously, Alibaba Holding does no business in Missouri. Alibaba Holding has never entered into any contract in Missouri, and is not registered to conduct business in Missouri with the Missouri Secretary of State. Plaintiff alleges that Alibaba Holding committed various state law torts and Lanham Act violations relating

to trademark infringement and dilution. However, Plaintiff has asserted only that the allegedly infringing acts were performed by Alibaba.Com, not Alibaba Holding. Finally, Plaintiff has failed to sufficiently argue that Alibaba.Com is either an agent or an alter-ego of Alibaba Holding so as to subject Alibaba Holding to personal jurisdiction in Missouri. Therefore, Alibaba Holding's contacts with Missouri are insufficient to meet the jurisdictional requirements of Missouri's long arm statute.

Plaintiff alternatively argues Alibaba Holding is subject to the jurisdiction of the Court based upon Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) provides that jurisdiction over claims arising under federal law is proper if: "(A) the defendant is not subject to any state's courts general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed.R.Civ.P. 4(k)(2). The propriety of exercising jurisdiction under Rule 4(k)(2) is measured based upon a defendant's contacts with the United States as a whole to satisfy the due process concerns of the Fifth Amendment. *1st Technology, LLC v. Digital Gaming Solutions S.A., 2009 WL 879463 at \*6 (E.D.Mo.2009)* (citing 📁 *Mwani v. bin Laden, 417 F.3d 1 (D.C.Cir.2005)*). Due process analysis concerning jurisdiction under Rule 4(k)(2) must be focused on whether the "defendant purposely directed its activities at residents of the forum, and whether litigation results from alleged injuries that arise out of, or relate to those activities." *Id.* Again, Plaintiff has not shown Alibaba Holding has purposely directed its activities at Missouri. Further, Plaintiff has failed to show the conduct giving rise to this lawsuit is attributable to Alibaba Holding and not its subsidiary company Defendant Alibaba.Com. Therefore, jurisdiction under Federal Rule of Civil Procedure 4(k)(2) is not proper in this case.

**\*7** For the reasons set forth above, Defendant Alibaba Holding's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure will be granted.

### *B. Alibaba. Com*

Alibaba.Com is within reach of Missouri's long arm statute. Violations of the Lanham Act and related state law violations of which Alibaba.Com is accused are tortious acts. *See Furminator,* No. 4:10–CV–01941, 2011 WL 3847390 (Aug. 29, 2011). Tortious acts aimed at citizens of Missouri are sufficient to satisfy Missouri's long arm statute. *See id.* Plaintiff, a limited liability company organized under Missouri law with its principal place of business in

Missouri, is a Missouri citizen. Alibaba.Com's allegedly tortious conduct allegedly injured Plaintiff's intellectual property and business interests in Missouri. Furthermore, Alibaba.Com's relationships with its 1,211 third party suppliers in Missouri qualify as transacting business within the state. *See* 🔖 Mo.Rev.Stat. § 506.500(1). As a result, Missouri's long arm statute is satisfied.

Having concluded that Alibaba.Com's conduct brings it within reach of Missouri's long arm statute, the Court turns to consider whether asserting personal jurisdiction over Defendant Alibaba.Com comports with due process. Jurisdiction will be proper if it is consistent with principles of due process espoused by *World–Wide Volkswagen* and its progeny. In determining whether sufficient minimum contacts exist to exercise personal jurisdiction over Defendant Alibaba.Com, the Court considers the five factor test used by the Eighth Circuit in determining whether or not Alibaba.Com's contacts with Missouri are sufficient to support personal jurisdiction. *See* 🔖 *Steinbuch,* 518 F.3d at 586. The first three factors of the Eighth Circuit test each support the existence of personal jurisdiction. Firstly, Alibaba.Com operates a web site accessible in Missouri that is designed to generate commercial profits. Alibaba.Com allegedly infringed upon the intellectual property of Plaintiff in operating the subject website for profit, which was accessible from Missouri. Secondly, taking the evidence in a light most favorable to the Plaintiff, there are at least 1,211 third party sellers from Missouri that have entered into business relationships with Alibaba.Com to sell their products on the subject website. Alibaba.Com has at least two paid "users" in Missouri and unknown quantity of unpaid users of Alibaba.Com presumably in Missouri.

Third, without determining whether there is a sufficient connection between Alibaba.Com's contacts with Missouri and Plaintiff's cause of action that would support specific personal jurisdiction, the evidence amply supports a finding of general personal jurisdiction over Alibaba.Com. At the heart of determining whether the exercise of general personal jurisdiction is consistent with the principles of due process is a determination of whether the defendant has purposefully availed itself of the privileges of a particular state's laws such that exercising jurisdiction does not offend traditional notions of fair play or substantial justice. 🔖 *Nicastro,* 131 S.Ct. at 2787;*World–Wide Volkswagen,* 498 U.S. at 291–92. Alibaba.Com's contacts with Missouri are not fleeting or isolated. Alibaba.Com maintains significant business

relationships with over 1,200 persons or entities in Missouri on an ongoing basis. These relationships, combined with similar relationships across the world, are what allow Alibaba.Com to operate. In short, Alibaba.Com's commercial relationships with third party sellers are a critical aspect of its operation. Further, Alibaba.Com's commercial relationships with third party sellers are not a one time event, but rather a continuing critical component of its business. Alibaba.Com maintains 1,211 such relationships with suppliers in Missouri. Accordingly, Alibaba.Com's contacts with Missouri are systematic and continuous in such a manner that supports general personal jurisdiction. By maintaining systematic and continuous commercial relationships with at least 1,211 people or entities in Missouri, Alibaba.Com, has purposefully availed itself of Missouri's laws. As a result, it is reasonable that Alibaba.Com may be haled into court in Missouri without offending traditional notions of fair play or substantial justice. Therefore, exercising general personal jurisdiction over Alibaba.Com is consistent with principles of due process.

**\*8** Finally, the supplemental fourth and fifth factors further support the Court's finding of personal jurisdiction. Plaintiff is a Missouri citizen. Missouri has an interest in allowing its citizens to assert their rights and protect against allegedly tortious invasions of their intellectual property and business interests by foreign defendants. As for convenience, although Defendant Alibaba.Com is a Hong Kong Corporation, it maintains significant business relationships in the United States and Missouri. Thus, it cannot be said that litigation in Missouri poses a significant inconvenience to Alibaba.Com.

An analysis of the five factor test put forward by the Eighth Circuit Court of Appeals and an examination of the fundamental principles governing personal jurisdiction indicate that Alibaba.Com has sufficient contacts with Missouri to allow the Court to exercise general personal jurisdiction over Alibaba.Com

Accordingly, Alibaba.Com's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Alibaba Group Holding Limited's motion to dismiss due to lack of personal jurisdiction [35] is **GRANTED.**

**IT IS FINALLY ORDERED** that Alibaba.Com Hong Kong Limited's motion to dismiss due to lack of personal jurisdiction [33] is **DENIED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 5374747

## Footnotes

1   The parties disagree as to the number of third party suppliers in Missouri. Plaintiff contends there are over 2,000; Defendant contends there are 1,211. For the purposes of these motions only the Court will assume Alibaba.Com has 1,211 suppliers in Missouri.

2   None of the third party suppliers who identify themselves as being located in Missouri sell ZhuZhu Pet related merchandise.

3   At the time the parties briefed their arguments in this matter, precedent indicated only a due process inquiry was required. Since the parties briefed this issue, the Eighth Circuit in *Viasystems* indicated a two part inquiry, testing both the application of the state long arm statute and due process, is necessary. *Viasystems,* 646 F.3d at 593 n. 2.

---

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.