UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BWB CO LTD,<br><br>    Plaintiff,<br><br>v.<br><br>ALIBABA GROUP (US) INC., et al.,<br><br>    Defendants. | Case No. 3:23-cv-05917-JD<br><br>**ORDER RE DISMISSAL** |

Plaintiff BWB Co. Ltd. (BWB) sued defendants Alibaba Group (US) Inc., Alibaba Cloud US LLC, and Alibaba.com U.S. LLC (together, Alibaba), for infringement of patents related to customs preclearance information in e-commerce. Dkt. No. 1.[1] Alibaba asks to dismiss this case under Federal Rule of Civil Procedure 12(b)(6) on the grounds that BWB's patents are directed to patent ineligible subject matter under 35 U.S.C. § 101, and that BWB did not plausibly allege direct infringement. Dkt. No. 25. The Court need reach only the Section 101 contention, and concludes that the patents embody abstract ideas and lack an inventive concept. Consequently, the complaint is dismissed with leave to amend.

**BACKGROUND**

The patents-in-suit are United States Patent Nos. 10,460,366 ('366 patent), 11,138,644 ('644 patent), 11,776,027 ('027 patent), and 11,776,028 ('028 patent), all of which concern customs preclearance information in e-commerce. Dkt. No. 1 ¶ 1. As the '366 patent states in an apt fashion for all of the patents, "Recent years have seen an increase in using an EC (E-commerce; Electronic Commercial Transaction) site to perform commercial transaction operations across different countries." Dkt. No. 1-1 1:12-15. The patents aim to "make customs clearance

---

[1] The parties jointly agreed to dismiss defendants Alibaba Group Holding Limited and Alibaba.com US E-Commerce Corp. without prejudice, to resolve jurisdictional issues. *See* Dkt. Nos. 32, 34.

1  processing smoother" by using a system of three servers: an e-commerce (EC) server, an
2  administration server, and a customs clearance authentication server. *Id.* at 1:48-49, 2:40-46.
3     For the Section 101 argument, the parties agree to treat Claim 1 of the '366 patent as a
4  representative claim. Dkt. Nos. 25, 29; *see also Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1365
5  (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as if the
6  patentee does not present any meaningful argument for the distinctive significance of any claim
7  limitations not found in the representative claim or if the parties agree to treat a claim as
8  representative."). The Court will follow suit.
9     Claim 1 recites:
10  1. A commerce system comprising: a plurality of EC servers that connect to a user
11     terminal in a first economic zone and execute E-commerce; a customs clearance
12     authentication server that connects to a customs terminal run by customs authorities in
13     a second economic zone and administers pre-customs clearance information; and an
14     administration server that is connected to the customs clearance authentication server
15     and the plurality of EC servers;
16        the administration server including at least one first processor that executes the
17           steps of:
18              generating a registration request that includes product information
19                 regarding a product provided by a product administration server to
20                 the administration server;
21              transmitting the registration request to the customs clearance
22                 authentication server;
23              receiving pre-customs clearance information regarding the product from
24                 the customs clearance authentication server, wherein the pre-
25                 customs clearance information indicates whether or not the product
26                 has been cleared by the customs authorities in the second economic
27                 zone, the pre-customs clearance information including information
28                 on a tariff; and

2

        notifying the pre-customs clearance information to at least one of the plurality of EC servers such that the pre-customs clearance information is displayed together with the product information on a site accessed by the user terminal;

    the customs clearance authentication server including at least one second processor that executes the steps of:

        generating pre-customs clearance information based on the product information, in response to a request from the at least one of the [sic] plurality of the EC servers; and

        transmitting the generated pre-customs clearance information to the administration server, and

    each of the plurality of EC servers including at least one third processor that executes the steps of:

        transmitting the received pre-customs clearance information along with the product information to the user terminal in response to a search request made by a user, wherein the user terminal displays a search results list including the product information for one or more products, and the search results list includes an indication associated with each product of the one or more products, the indication indicating whether or not pre-customs clearance has been performed for a respective product of the one or more products; and

        accepting, from the user terminal, an instruction to circulate a product specified by the product information via customs;

    thereby improving customs clearance efficiency when circulating products between the first economic zone and the second economic zone.

Dkt. No. 1-1 at 10:23-11:9.

    Claim 1 describes a system consisting of three computer servers: an e-commerce (EC) server that displays product information and accepts orders from potential buyers; a customs

3

1  clearance authentication server that generates and transmits customs-related information; and an

2  administration server, which coordinates requests and transmits information between the EC and

3  customs servers. *Id.* The three servers are said to "improv[e] customs clearance efficiency," *id.* at

4  11:7-9, and the buyer is "spared the time and effort of going to customs and carrying out customs

5  procedures." *Id.* at 9:19-21.

## LEGAL STANDARDS

Under Rule 12(b)(6), the Court will dismiss a complaint that does not plausibly allege a claim upon which relief can be granted. The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073 (N.D. Cal. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

As a preliminary objection, BWB suggests that resolution of the Section 101 issue at the pleadings stage is premature. Dkt. No. 29 at 2. In general, claims need not be formally construed before a Section 101 challenge is decided. *See Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Because BWB has not identified fact or claim construction disputes that it contends must be resolved prior to the eligibility determination, the Section 101 inquiry may properly be made at this stage of the case. *See directPacket Rsch., Inc. v. Polycom, Inc.*, No. 3:19-CV-03918-JD, 2023 WL 6301066, at *3 (N.D. Cal. Sept. 26, 2023)**.**

Patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new or useful improvement thereof." 35 U.S.C. § 101. "[L]aws of nature, physical phenomena, and abstract ideas" are "specific exceptions to Section 101's broad patent-eligibility principles." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (internal quotations and citation omitted). These exclusions guard against overbroad patent protection which "would risk

4

disproportionately tying up the use of the underlying ideas." *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208, 217 (2014).

The Supreme Court has established a two-part test for patent eligibility under Section 101. First, the Court determines "whether the claims at issue are directed to a patent-ineligible concept" such as a law of nature, natural phenomenon, or abstract idea. *Alice* at 218; *see also Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022). In conducting the first step of the *Alice* test, the Court may "compare claims at issue to those claims already found to be directed to an abstract idea in the previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Oversimplification of the claims must be avoided because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 573 U.S. at 217.

If a patent is directed to a patent-ineligible concept, the second step in *Alice* looks for an "'inventive concept' -- *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-17 (alteration in original) (internal quotations and citation omitted); *see also Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). This step asks, "[w]hat else is there in the claims before us?" *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78 (2012). The answer must include something "significantly more" than the abstract idea itself. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). The "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve 'more than the performance of "well-understood, routine, conventional activit[ies]" previously known to the industry.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (alteration in original) (quoting *Alice*, 573 U.S. at 225). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC*, 899 F.3d at 1290-91.

**DISCUSSION**

**I.   USPTO PROCEEDINGS**

BWB submitted the file history of the '366 patent along with its opposition to Alibaba's motion, including the Patent Examiner's initial rejection on Section 101 grounds, and Examiner's subsequent finding that some claims in the '366 patent met the Section 101 threshold. *See* Dkt. No. 29-3 at ECF pp. 5, 52. BWB urges the Court to accept the PTO's finding that the '366 patent contains patent-eligible subject matter and deny dismissal on Section 101 grounds. *See* Dkt. No. 29 at 10.

The request is not well-taken. "Patent eligibility under 35 U.S.C. § 101 is an issue of law reviewed de novo." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015). Courts "are not required to defer to the Patent Office determinations as to eligibility," and the Court will not defer to the PTO's findings here. *Sanderling Mgmt. Ltd. v Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023). It also bears mention that the PTO initially determined that the patent was directed to an abstract idea, and that the additional claim elements were no more than a "generic computer . . . executing the functions." Dkt. No. 29-3 at ECF p. 8.

**II.   CLAIM 1 IS DIRECTED TO AN ABSTRACT IDEA**

Courts "have crafted various tools to analyze whether a claim is 'directed to' ineligible subject matter." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). The patent specification may be considered in this inquiry, but "reliance on the specification must always yield to the claim language in identifying" the claim's focus. *Id.* Alibaba says that claim 1 of the '366 patent is directed towards the abstract idea of the "collection, processing, and display of information." Dkt. No. 25 at 7. Although BWB says Alibaba "mischaracterizes the limitations of claim 1," it identifies no material omissions or other possible flaws in Alibaba's description. Dkt. No. 29 at 9.

The plain language of claim 1 establishes that the patents are directed to an abstract idea. As stated, claim 1 describes (1) an "administration server [capable of] generating a registration request . . . transmitting the registration request . . . receiving pre-customs clearance information . . . . [and] notifying the pre-customs clearance information to at least one of the plurality of EC

servers;" (2) a "customs clearance authentication server [capable of] generating pre-customs clearance information . . . [and] transmitting the generated pre-customs clearance information;" and (3) "EC servers . . . [capable of] transmitting the received pre-customs clearance information . . . in response to a search request made by a user . . . [and] accepting, from the user terminal, an instruction to circulate a product."

Overall, claim 1 describes three servers that generate, send, and receive information between one another. These are abstract concepts of handling information "in the 'familiar class of claims directed to a patent-ineligible concept.'" *Miller Mendel, Inc. v. City of Anna, Texas*, --- F.4th ---, 2024 WL 3448673, at *4 (Fed. Cir. July 18, 2024) (quoting *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1362 (Fed. Cir. 2023) (cleaned up)); *see also Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1047 (N.D. Cal. 2015) ("Shorn of its implementation-specific fleece, the claim is directed at providing a method . . . [to] share information.").

Claim 1 refers to computer systems but its focus "is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). As Alibaba suggests, claim 1 describes "quintessential human work," and the processes performed by each of the computer components recited in claim 1 could just as easily be performed mentally or by hand by a living person. *See* Dkt. No. 25 at 9. "[W]e have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Elec. Power Grp.*, 830 F.3d at 1355. The use of computer servers to automate the customs clearance process does not render the process non-abstract, as the "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

### III.   CLAIM 1 LACKS AN INVENTIVE STEP

Under the second step of *Alice*, BWB has also not shown that claim 1 embodies an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 221, (quoting *Mayo*, 566 U.S. at 72-73). The presence of an

7

inventive concept ensures a patent contains "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id.* at 217-218 (quoting *Mayo*, 566 U.S. at 72-73). The "inventive concept must be evident in the claims" themselves. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

BWB's main argument on Step 2 is again that the Court should defer to the PTO's determination that claim 1 contains additional elements beyond the ineligible abstract concept. *See* Dkt. No. 29 at 10. This is unpersuasive for the reasons discussed. Beyond that, BWB has little to offer in the way of an inventive concept. Claim 1 describes generic computer components. The "EC servers," "customs clearance authentication server," and "administration server," demand no special hardware and perform no specialized tasks, and their functionality is no different from a generic computer component. Claim 1 does not "require[] anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power Grp.*, 830 F.3d at 1355; *see also Linquet Techs., Inc. v. Tile, Inc.*, 559 F. Supp. 3d 1101, 1111 (N.D. Cal. 2021). "The Court in *Alice* made clear that a claim directed to an abstract idea does not move into section 101 eligibility territory by 'merely requir[ing] generic computer implementation.'" *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 212). "[A]n 'attempt[] to limit the use'" of an abstract idea "'to a particular technological environment,' . . . has long been held insufficient to save a claim in this context." *Id.* at 1355 (quoting *Alice*, 573 U.S. at 222-23); *see also TriDim Innovations*, 207 F. Supp. 3d. at 1080.

Nor does an inventive concept emerge from viewing the elements as a particular ordered combination. BWB has not alleged that the order in which the three servers generate, transmit, and receive information is in any way unconventional, or that the ordering improved upon the prior art. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) ("Cellspin's allegations identify several ways in which its application of capturing, transferring, and publishing data was unconventional.").

**CONCLUSION**

The complaint is dismissed. In light of the plain language of the claims in the patent, the Court has some doubt that BWB can amend around this problem. Even so, BWB may file an amended complaint by September 13, 2024. A failure to meet this deadline will result in a dismissal under Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: August 8, 2024

JAMES DONATO
United States District Judge