1  BO BRYAN JIN (SBN 278990)
   bryan.jin@stblaw.com
2  JONATHAN C. SANDERS (SBN 228785)
   jsanders@stblaw.com
3  SIMPSON THACHER & BARTLETT LLP
   2475 Hanover Street
4  Palo Alto, CA  94304
   Telephone: 650-251-5000
5  Facsimile: 650-251-5002

6  *Counsel for Defendants*
   *Alibaba Group (US) Inc., Alibaba*
7  *Cloud US LLC, and Alibaba.com US LLC*

8

9

10              UNITED STATES DISTRICT COURT

11        FOR THE NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13  BWB CO., LTD, a Japan limited liability      Case No. 23-cv-5917-JD
    company,
14                                                **DEFENDANTS' NOTICE OF**
                  Plaintiff,                      **MOTION AND MOTION TO**
15                                                **DISMISS PLAINTIFF'S FIRST**
           v.                                     **AMENDED COMPLAINT FOR**
16                                                **PATENT INFRINGEMENT**
    ALIBABA GROUP HOLDING LIMITED,
17  a Cayman Islands company, ALIBABA            Date: November 7, 2024
    GROUP (US) INC., a Delaware company,         Time: 10:00 a.m.
18  ALIBABA CLOUD US LLC, a Delaware             Judge: Hon. James Donato
    limited liability company, ALIBABA.COM       Courtroom: 11
19  US LLC, a Delaware limited liability
    company, ALIBABA.COM US ECOMMERCE
20  CORP., a Delaware company,

21                Defendants.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................ i

ISSUES TO BE DECIDED........................................................................................................... i

INTRODUCTION AND SUMMARY OF THE ARGUMENT.................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 2

    I.      THE PATENTS-IN-SUIT ........................................................................................ 2

    II.     THE COURT'S PRIOR ORDER............................................................................. 4

    III.    THE FAC ................................................................................................................. 5

    IV.   PLAINTIFF'S INFRINGEMENT ALLEGATIONS................................................ 6

    V.    WILLFULNESS ALLEGATIONS ......................................................................... 6

LEGAL STANDARD ................................................................................................................. 6

ARGUMENT ............................................................................................................................... 7

    I.      The Patents-in-Suit Claim Unpatentable Subject Matter Under 35 U.S.C § 101 ........... 7

         A.     All of the Asserted Patents Claim an Unpatentable Abstract Idea...................... 7

         B.     BWB's Conclusory Allegations Fail to Identify an Inventive Step ................. 10

    II.     Plaintiff's Boilerplate Allegations Fail to Plausibly Allege Direct Infringement ......... 14

CONCLUSION ......................................................................................................................... 15

Defs.' Notice of Motion and Motion to Dismiss                  Case No. 23-CV-5917-JD

ii

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ................................................................................................. 7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ............................................................................................... 4, 7, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 6

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ............................................................................... 12, 15

*Bilski v. Kappos*,
561 U.S. 593 (2010) .................................................................................................... 6

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ................................................................................... 12

*BuySAFE v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ................................................................................... 11

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) .................................................................................... 8

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .................................................................................... 8

*Hall v. Bed Bath & Beyond, Inc.*,
705 F.3d 1357 (Fed. Cir. 2013) ................................................................................... 15

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
839 Fed. Appx. 534 (Fed. Cir. 2021) ............................................................................ 8, 9

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ..................................................................................... 12

*In re TLI Commun's LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) .................................................................................... 11

*In re Villena*,
745 Fed. Appx. 374 (Fed. Cir. 2018) ............................................................................. 8

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (2015) ................................................................................................. 8

*Maxell, Ltd. v. VIZIO, Inc.*,
2022 WL 2167619 (C.D. Cal. Mar. 9, 2022) ................................................................... 12

Defs.' Notice of Motion and Motion to Dismiss

iii

Case No. 23-CV-5917-JD

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
   566 U.S. 66 (2012) ................................................................................................ 7, 10

*Miller Mendel, Inc. v. City of Anna*,
   2022 WL 2700334 (E.D. Tex. June 9, 2022), aff'd, 107 F.4th 1345 (Fed. Cir.
   2024) ................................................................................................................................ 4

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016) ................................................................................ 10

*Move, Inc. v. Real Estate All. Ltd.*,
   721 F. App'x 950 (Fed. Cir. 2018) ...................................................................... 12, 15

*MyMail, Ltd. v. OoVoo, LLC*,
   613 F. Supp. 3d 1142 (N.D. Cal. 2020) ................................................................ 9, 10

*MyMail, Ltd. v. ooVoo, LLC*,
   934 F.3d 1373 (Fed. Cir. 2019) ................................................................................ 8, 9

*Novitaz, Inc. v. inMarket Media,*
   *LLC*, 2017 WL 2311407 (N.D. Cal. May 26, 2017) .................................................. 15

*RingCentral, Inc. v. Dialpad, Inc.*,
   372 F. Supp. 3d 988 (N.D. Cal. Mar. 8, 2019) .................................................. 12, 15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) .................................................................................. 7

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019) ............................................................................ 10, 14

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
   2012 WL 1831543 (N.D. Cal. May 18, 2012) .......................................................... 16

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
   887 F.3d 1376 (Fed. Cir. 2018) ................................................................................ 10

*West View Research, LLC v. Audi AG*,
   685 F. App'x 923 (Fed. Cir. 2017) ............................................................................ 8

*Yanbin Yu v. Apple Inc.*,
   392 F. Supp. 3d 1096 (N.D. Cal. July 2, 2019) ...................................................... 13

## Statutes and Rules

Rule 12(b)(6) ...................................................................................................................... 6

35 U.S.C. § 101 ............................................................................................................... 4, 9

Defs.' Notice of Motion and Motion to Dismiss         Case No. 23-CV-5917-JD

iv

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at 10:00 a.m. on November 7, 2024, or as soon thereafter as the matter may be heard, in Courtroom 11, 19th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable James Donato, Defendants Alibaba Group (US) Inc., Alibaba Cloud US LLC, and Alibaba.com US LLC (collectively, "Defendants") will and hereby do move the Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the First Amended Complaint ("FAC") for failure to state a claim.

Defendants respectfully request that the Court grant the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and dismiss this case with prejudice on the grounds that: (1) the patents-in-suit are invalid under 35 U.S.C. § 101 for failing to claim patent-eligible subject matter, and (2) the Complaint fails to plead facts raising a plausible inference of infringement. Defendants also move to dismiss Plaintiff's willfulness allegation under Rule 12(b)(6).

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities submitted herewith, the argument of counsel, and such other matters as the Court may consider.

## ISSUES TO BE DECIDED

(1)      Whether Plaintiff's FAC should be dismissed because the patents-in-suit are invalid under 35 U.S.C. § 101 for failure to recite patent-eligible subject matter;

(2)      Whether Plaintiff's FAC should be dismissed for failure to plead facts supporting a plausible inference of direct infringement by any Defendant; and

(3)      Whether Plaintiff's FAC raises a plausible inference of willful infringement.

Defs.' Notice of Motion and Motion to Dismiss                                    Case No. 23-CV-5917-JD

i

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

In dismissing Plaintiff BWB Co., Ltd.'s ("BWB's") Complaint, the Court noted that, "[i]n light of the plain language of the claims in the patent, the Court has some doubt that BWB can amend around this problem."  Order at 9:2-3, ECF No. 35.  The Court was prescient.  The FAC repeats nearly verbatim the same abstract ideas and non-inventive concepts in the patents themselves and the same failed arguments BWB advanced in opposition to Defendants' motion to dismiss.  Indeed, other than a series of conclusory statements that the claims are "inventive," the FAC does ***nothing*** but recite the same description from the patent that led this Court to previously hold that the "[t]he use of computer servers . . . does not render the process non-abstract" and that there was "no inventive concept."  Order at 7:20-24; 8:22.  And the FAC simply lists the same generic, black-box servers and computers that transmit and receive information, which is insufficient under § 101 as a matter of law.  In short, after essentially conceding that the patents claim an abstract idea, BWB does no more than assert that generic servers transmit information to allow for pre-customs clearance before a product is sold—exactly what a human would have done before the advent of technology.

Numerous Federal Circuit and district court decisions have held that simply asserting legal conclusions in an amended complaint is insufficient to overcome dismissal under § 101.  Because BWB fails to allege any ***facts*** showing that the patents claim patent-eligible subject matter, the FAC's conclusory allegations of inventiveness—which simply repeat the content of the patents—do nothing to overcome the Court's previous order dismissing the Complaint.  The Court should again find the asserted patents invalid under § 101, and dismiss the FAC, this time with prejudice.

Finally, while the Court need not reach these issues, the FAC also fails adequately to plead infringement or willfulness.  The FAC itself contains no information concerning how Defendants purportedly infringe upon the patents.  And the rudimentary claim charts Plaintiff again attaches contain little more than a handful of screenshots that, in many cases, have nothing to do with the claim elements.  The claim charts also fail to plead facts showing that any part of the system used, offered, or sold by Defendants is in the United States, nor has Plaintiff adequately pled numerous specific claim elements, including even what part of the accused products comprises each

Defs.' Notice of Motion and Motion to Dismiss    Case No. 23-CV-5917-JD

1

"server"; that Defendants obtain "clearance information" from any customs "authority"; or that this information is displayed on a user device. Lastly, Plaintiff again pleads no facts concerning willfulness, including no factual allegation that Defendants were aware of any patents-in-suit or alleged infringement or that any Defendant intentionally or recklessly infringed the patents-in-suit.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    THE PATENTS-IN-SUIT

As Defendants have previously explained and as the Court summarized at length in its prior Order, the Complaint asserts four patents, U.S. Patent Nos. 10,460,366 (the "'366 Patent"), 11,138,644, 11,776,027, and 11,776,028 (collectively, the "patents-in-suit"). FAC, Exs. A, C, E, G. All of the patents share a common specification. The patents are directed to "a system for realizing logistics across economic zones." FAC, Ex. A ('366 Patent) at 1:8−9. The patents assert that a flaw in the prior art was that "customs clearance procedures are performed after a product is purchased, and thus, there are cases where it is determined that custom conditions have not been met ex post facto." *Id.* at 1:34−38. The purported improvement in the patents-in-suit is "to make customs clearance processing smoother." *Id.* at 1:48−49.

The patents claim several servers that purportedly facilitate this process. An "EC server" connects to an e-commerce system and user device. *Id.* at 1:50−52. A "customs clearance authentication server . . . administers pre-customs clearance information." *Id.* at 1:52−53. The customs clearance authentication server generates pre-customs clearance information and transmits it to an "administration server." *Id.* at 1:63−2:1. The administration server receives the pre-customs clearance information from the authentication server and provides that information to the EC server. *Id.* at 1:55−63. Finally, the EC server transmits the pre-customs clearance information and product information for display on the user terminal, and the user accepts "an instruction to circulate a product specified by the product information via customs." *Id.* at 2:2−6.

Claim 1 of the '366 patent contains claim elements in each patent and is representative:

1. A commerce system comprising:

[1] **a plurality of EC servers** that connect to a user terminal in a first economic zone and execute E-commerce;

Defs.' Notice of Motion and Motion to Dismiss                             Case No. 23-CV-5917-JD

2

[2] **a customs clearance authentication server** that connects to a customs terminal **run by customs authorities** in a second economic zone and administers pre-customs clearance information; and

[3] **an administration server** that is connected to the customs clearance authentication server and the plurality of EC servers;

[4] the administration server including at least one first processor that executes the steps of

[5] generating a registration request that includes product information regarding a product provided by a product administration server to the administration server

[6] transmitting the registration request to the customs clearance authentication server

[7] **receiving pre customs clearance information** regarding the product from the customs clearance authentication server, wherein **the pre-customs clearance information indicates whether or not the product has been cleared by the customs authorities in the second economic zone**, the pre-customs clearance information including information on a tariff;

[8] notifying the pre-customs clearance information to at least one of the plurality of EC servers such that **the pre-customs clearance information is displayed** together with the product information **on a site accessed by the user terminal**;

[9] the customs clearance authentication server including at least one second processor that executed the steps of:

[10] generating pre customs clearance information based on the product information, in response to a request from the at least one of the plurality of the EC servers; and

[11] transmitting the generated pre-customs clearance information to the administration server, and

[12] each of the plurality of EC servers including at least one third processor that executes the steps of:

[13] transmitting the received pre-customs clearance information along with the product information to the user terminal in response to a search request made by a user, wherein **the user terminal displays a search results list** including the product information for one or more products, and the search results list includes an indication associated with each product of the one or more products, **the indication indicating whether or not pre-customs clearance has been performed** for a respective product of one or more products;

[14] accepting, from the user terminal, an instruction to circulate a product specified by the product information via customs;

[15] thereby improving customs efficiency when circulating products between the first economic zone and the second economic zone.

'366 Patent at Claim 1 (emphasis added). Figure 1 of the' 366 Patent, shown with the key

components highlighted below, shows the e-commerce system:

Defs.' Notice of Motion and Motion to Dismiss

3

Case No. 23-CV-5917-JD

Country X          FIG. 1          Country A

## II.     THE COURT'S PRIOR ORDER

On August 8, 2024, the Court dismissed Plaintiff's original Complaint under § 101.  The Court noted "[t]he plain language of claim 1 establishes that the patents are directed to an abstract idea."  Order at 6:25.  The Court explained that, "[o]verall, claim 1 describes three servers that generate, send, and receive information between one another," which are "abstract concepts of handling information 'in the familiar class of claims directed to a patent-ineligible concept.'"  *Id.* at 7:6-9 (quoting *Miller Mendel, Inc. v. City of Anna*, 2022 WL 2700334, at *4 (E.D. Tex. June 9, 2022)).  The Court further noted that "claim 1 describes 'quintessential human work,' and the processes performed by each of the computer components recited in claim 1 could just as easily be performed mentally or by hand by a living person.  *Id.* Order at 7:16-18.

The Court then found that the patents lacked an inventive step under step 2 of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 221 (2014).  The Court explained, "BWB has little to offer in the way of an inventive concept.  Claim 1 describes generic computer components.  The 'EC servers,' 'customs clearance authentication server,' and 'administration server,' demand no special hardware and perform no specialized tasks, and their functionality is no different from a generic computer component . . . . Claim 1 does not 'require[] anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.'"  Order at 8:8-14.  Nor had BWB "alleged that the order in which the three servers generate, transmit, and receive information is in any way unconventional, or that the ordering improved upon the prior art."  *Id.* at 8:23-25.

1   While the Court granted leave to amend, it noted that, "[i]n light of the plain language of

2   the claims in the patent, the Court has some doubt that BWB can amend around this problem." *Id.*

3   at 9:2-3.

4   ### III.   THE FAC

5   The FAC adds nothing more than a series of legal conclusions and parroting of the patents

6   themselves in seeking to overcome the Court's prior Order.  For example, the FAC repeatedly

7   makes conclusory statements that "[s]uch systems and processes as claimed in the patents in suit

8   for pre-customs clearance for products involved in EC transactions between two different

9   economic zones were not well-understood, routine, or conventional activity prior to the invention,

10  as they were never done before."  FAC ¶ 21.  Similarly, the FAC continually asserts in conclusory

11  fashion that the patents claim "inventive systems and process."  *Id.* ¶¶ 13-18, 24.

12  All of the remaining allegations in the FAC are simply paraphrased from the description in

13  the patents that the Court previously found inadequate.  For instance, the FAC asserts that, "[a]s a

14  result, the inventions claimed in the patents in suit significantly improve conventional business

15  practices by enabling: (1) the completion of pre-customs clearance procedures before listing a

16  product on an EC site."  *Id.* ¶ 20.  That is exactly what the patents say.  *See, e.g.*, FAC, Ex. A

17  ('366 Patent) at 1:37-38 (prior art customers clearance was performed "ex post facto after the

18  product has arrived at customs").  Similarly, the FAC alleges that the pre-clearance process is

19  performed by the seller so that the product clears customs as soon as it arrives (FAC ¶ 20)—again,

20  exactly what the patents say.  FAC, Ex. A ('366 Patent) at 9:18-29 (purchaser "spared the time and

21  effort" of clearing customs; product is "virtually guaranteed" to pass customs as soon as it arrives).

22  The FAC nowhere disputes the patents claim an abstract idea.  *Id.* ¶¶ 39-41, 44-46, 49–51, 54–56.

23  Notably absent from the FAC is ***any*** factual allegation concerning how the generic servers

24  accomplish this abstract idea or, indeed, what any of the servers even are.  Indeed, the rest of the

25  FAC simply summarizes the nonce, black box servers exactly as described in the patents.

26  *Compare, e.g.*, FAC ¶¶ 38-41 (summarizing in conclusory fashion the plurality of EC servers,

27  customs clearance authentication server, and administration server) *with* FAC, Ex. A ('366 Patent)

28  at Claim 1 (nearly verbatim description of same generic servers and processes).

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

5

## IV.    PLAINTIFF'S INFRINGEMENT ALLEGATIONS

Plaintiff's FAC also does nothing to improve on its original Complaint's allegations concerning how Defendants purportedly infringe the patents.  *See* FAC at 2:1−19:56.  Instead, Plaintiff again attaches a series of rudimentary claim charts.  *Id.*, Exs. B, D, F, H.  Although Plaintiff submitted a claim chart for each patent, each is substantially similar.  *Id.*  Indeed, Plaintiff relies for almost every claim element on a handful of cursory website screenshots.  *See, e.g.*, *id.*, Ex. B at p. 4 of 36 (screenshot referencing "online commissioned customs provide customs broker declaration" and "customs clearance points"); *id.* at p. 5 of 36 ("[r]eal-time online tracking of customs declaration status"); *id.* at p. 6 of 36 ("[p]rovide one-stop compliance fulfillment services such as tariff remittance"); *id.* at 12 of 36 ("export data").

## V.    WILLFULNESS ALLEGATIONS

Plaintiff's FAC seeks "enhanced damages pursuant to 35 U.S.C. § 284."  FAC at 25:7 (Prayer for Relief).  But the FAC again contains no factual allegations of willfulness, including no allegation that Defendants were previously aware of the patents-in-suit or the alleged infringement, except for the boilerplate statement—again supported by no factual allegations— that Defendants' infringement was "knowing and intentional."  *See id.* ¶¶ 61,68, 75, 82.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual detail to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Specifically, the complaint must include sufficient "factual content allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

As the Court is well aware and explained in its prior Order, whether Plaintiff's patents are directed to ineligible subject matter under Section 101 of the Patent Act is a "threshold test," *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), which can "be determined at the Rule 12(b)(6) stage." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Section 101 defines the four categories of subject matter eligible for patent protection: "any new and useful process, machine, manufacture, or composition of matter."  35 U.S.C. § 101. The

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

6

1    United States Supreme Court has long recognized an exception to this provision: "[l]aws of nature,

2    natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216

3    When evaluating claims for patent-eligible subject matter, courts uses a two-part test

4    established by the Supreme Court, commonly referred to as the "*Alice/Mayo*" test from the two

5    cases from which it was derived.  Step one determines "whether the claims at issue are directed to

6    one of [the] patent-ineligible concepts."  *Alice*, 573 U.S. at 217 (citing *Mayo Collaborative Servs.*

7    *v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 76−78, (2012)).  Step two then considers "the elements

8    of each claim both individually and 'as an ordered combination' to determine whether the

9    additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*.

10    (quoting *Mayo*, 566 U.S. at 78−79).  When applying this test, a single claim may be treated as

11    representative of multiple asserted patents.  *See, e.g., Alice*, 573 U.S. at 212 n.1, 213 n.2, (treating

12    a single method claim as representative of all asserted method claims from four patents); *Two-Way*

13    *Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1333 (Fed. Cir. 2017).

14    <u>**ARGUMENT**</u>

15    **I.    The Patents-in-Suit Claim Unpatentable Subject Matter Under 35 U.S.C § 101**

16    The FAC adds nothing relevant to the Court's conclusion that the patents-in-suit claim

17    unpatentable abstract ideas.  Independent Claim 1 of the '366 patent, which is representative of all

18    of the other asserted claims, asserts nothing more than a series of generic "servers" and

19    "processors" that collect and transmit customs information—exactly what a human would have

20    done prior to the use of servers.  The patents neither claim nor describe ***a single physical aspect*** of

21    any server, processor, or computer involved in the steps of any asserted claim—each of those

22    devices is literally a black box.  *See, e.g.*, '366 patent, Fig. 1.  For the reasons set forth below, all

23    of the patents claim unpatentable subject matter and are therefore invalid under 35 U.S.C. § 101.

24    **A.    All of the Asserted Patents Claim an Unpatentable Abstract Idea**

25    Defendants easily establish the first step of the *Alice/Mayo* test here, as the Court has

26    already found, because representative Claim 1 of the '366 patent claims nothing more than the

27    abstract idea of improving customs clearance efficiency by "gathering and analyzing" pre-customs

28    clearance information and "then displaying the results," and the claim is "therefore directed to an

Defs.' Notice of Motion and Motion to Dismiss                                              Case No. 23-CV-5917-JD

7

abstract idea" under controlling Federal Circuit case law.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *accord, e.g.*, *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 Fed. Appx. 534, 536 (Fed. Cir. 2021) ("We have routinely held that claims directed to gathering and processing data are directed to an abstract idea.") (collecting cases); *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1378 (Fed. Cir. 2019) (finding claims that "'fall within the category of gathering and processing information'" are invalid under § 101); *In re Villena*, 745 Fed. Appx. 374, 376 (Fed. Cir. 2018) ("Claim 57 recites the basic steps of receiving user input, producing property valuations, and providing display information.  This is a classic case of implementing an abstract idea on a computer, which is not eligible under *Alice*."); *West View Rsch., LLC v. Audi AG*, 685 F. App'x 923, 926 (Fed. Cir. 2017) (finding claims that "do not go beyond receiving or collecting data queries, analyzing the data query, retrieving and processing the information constituting a response to the initial data query, and generating a visual or audio response to the initial data query" directed to abstract idea); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (2015) (explaining that "'mere [data-gathering] step[s] cannot make an otherwise nonstatutory claim statutory'") (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011)); Order at 6:16-7:14.

Like all of those cases, representative Claim 1 here claims nothing more than the collection, processing, and display of information, as the Court has previously found.  A "customs clearance authentication server" sends data to an "administration server."  '366 patent, Claim 1 at 10:31−39.  The administration server receives "pre-customs clearance information" and provides it to an "EC server" for display.  *Id.* at 10:39−50.  And the EC server transmits the clearance information along with production information to the user, which provides "an instruction to circulate a product."  *Id.* at 10:59−11:9.  In other words, each of these generic servers gathers and transmits information to be displayed by the user—precisely the type of abstract idea that the Federal Circuit has deemed unpatentable for decades.  *See, e.g.*, *iLife Techs.*, 839 Fed. Appx. at 536; *MyMail*, 934 F.3d at 1378.

*MyMail, Ltd. v. OoVoo, LLC*, 613 F. Supp. 3d 1142 (N.D. Cal. 2020), is instructive.  There, the patents similarly related to a method for updating database "toolbars" on computers by

Defs.' Notice of Motion and Motion to Dismiss                                      Case No. 23-CV-5917-JD

8

1    "send[ing] information about those databases to a network server, which in turn uses the sent

2    information to determine whether any of the databases require updates." *MyMail*, 613 F. Supp. 3d

3    at 1146−47. Defendant moved to dismiss under § 101. With respect to step one, the court

4    explained that "information itself is intangible," and, as a result, "the Federal Circuit has generally

5    found claims abstract where they are directed to some combination of ***acquiring information,***

6    ***analyzing information, and/or displaying the results***." *Id.* at 1150 (emphasis added). The court

7    found that "the claims are analogous to claims that fall within the category of ***gathering and***

8    ***processing information***, which the Federal Circuit has established is an abstract idea." *Id.* at 1160

9    (emphasis added). Similarly, merely adding "components" that were "all generic and function in a

10   conventional manner"—specifically, "a 'user Internet device' and a server"—was not enough to

11   transform that abstract idea into patent-eligible subject matter:

12            Moreover, the claims call on these conventional components to
              perform their ***routine functions, including "displaying" a toolbar,***
13            ***"sending" and "receiving" information, "determining"***
              ***something based on that information*** . . . . No language in the
14            claims or the specifications "demonstrate[s] that the generic
              computer components function in an unconventional manner or
15            employ sufficiently specific programming" . . . . Instead, the
              functions recited by the claims at issue—that is, ***"displaying,"***
16            ***"sending," "receiving," "determining," and "initiating"***—are
              "specified at a high level of generality," which the Federal Circuit
17            has found to be "insufficient to supply an inventive concept."

18

19            *Id.* at 1165−66 (emphasis added) (citations omitted).

20            Here, just as in *MyMail* and the numerous other cases set forth above, the patents claim

21   describe nothing more than abstract ideas like gathering, sending, processing, and displaying

22   customs information, using generic "servers" and "processors" that have no defined features. *See,*

23   *e.g.*, '366 patent at Claim 1 ("***transmitting*** the registration request") (emphasis added); *id.*

24   ("***receiving*** pre-customs clearance information") (emphasis added); *id.* ("***generating*** pre-customs

25   clearance information") (emphasis added); *id.* ("***display[ing]*** the search results list") (emphasis

26   added). Those are exactly the same abstract ideas that *MyMail* and dozens of other courts have

27   held are insufficient abstract ideas that are unpatentable. *See, e.g.*, *MyMail*, 613 F. Supp. 3d at

28   1150−51 (explaining "displaying," "sending," and "receiving" are unpatentable abstract ideas).

Defs.' Notice of Motion and Motion to Dismiss                                    Case No. 23-CV-5917-JD

9

Finally, steps that may be performed mentally—or that are the equivalent of human mental work—have long been held patent-ineligible.  *See, e.g.*, *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.,* 916 F.3d 1363, 1367 (Fed. Cir. 2019) (patent that "automate[s] 'pen and paper methodologies' to conserve human resources and minimize errors" was a "quintessential 'do it on a computer' patent"); *Voter Verified, Inc. v. Election Sys. & Software LLC,* 887 F.3d 1376, 1385−86 (Fed. Cir. 2018) (invalidating abstract idea for voter verification historically performed by humans and performed on generic computer); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (computer-implemented system to enable borrowers to anonymously shop for loan packages claimed abstract idea when "[t]he series of steps covered by the asserted claims . . . could all be performed by humans without a computer.").  Here, gathering customs information, transmitting it, and displaying it are all quintessential human work that does not become patentable merely by adding empty words like "server," "processor," or "computer."

Notably, the FAC nowhere even disputes that the patents-in-suit claim an abstract idea. *See* FAC ¶¶ 39 ("To the extent the claims may be deemed to be directed to an abstract idea . . . ."), 40 (acknowledging the "putative abstract idea"), 41 (same), 44 (same), 45 (same), 46 (same).

**B.      BWB's Conclusory Allegations Fail to Identify an Inventive Step**

Plaintiff's claims also fail step two of the analysis, because the patents contain no inventive concept amounting to "significantly more" than the claimed abstract idea itself of sending and receiving data.  *See generally Mayo*, 566 U.S. at 73.  As the Court previously explained, "BWB has also not shown that claim 1 embodies an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible invention."  Order at 7:26-28 (quoting *Alice*, 573 U.S. at 221).  Indeed, the Federal Circuit has repeatedly held that patents invoking "computers and networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the application' of an abstract idea."  *Elec. Power Grp.*, 830 F.3d at 1355; *accord, e.g.*, *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016) ("[H]ere we need to only look to the specification, which describes the ***telephone unit and server*** as either performing basic computer functions such as ***sending and receiving data***, or performing functions 'known' in the art . . . .") (emphasis added); *id.* at 614 ("Here, the ***server*** simply ***receives data***, 'extract[s]

Defs.' Notice of Motion and Motion to Dismiss                                      Case No. 23-CV-5917-JD

10

classification information . . . from the received data,' and 'stor[es] the digital images . . .'") (emphasis added); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a *computer receives and sends the information over a network*—with no further specification—is not even arguably inventive.") (emphasis added).

Here, the patents literally claim and describe "servers," "processors," and "computers" *with no description* of the physical characteristics of those empty nonce words—much less sufficient technological improvement to transform those abstract ideas into patentable subject matter.  *See, e.g.*, '366 Patent at Fig. 1 (no information whatsoever about each server other than black boxes with the words "EC Server," "Product Administration Server," "Administration Server," and "Customs Clearance Administration Server"); *id.* at Fig. 2 and 3:55−4:3 (depicting "functional configuration" of "administration server" consisting of "information processing apparatus," "communication unit," "data processing unit," "storage unit," and "delivery administration unit"); *id.* at 5:28−31 ("Storage unit 340 is a storage apparatus such as a hard disk or a semi-conductor memory, and stores a program for realizing the above described functions on administration server 300 when it is executed by an OS, or a processor."); *id.* at 6:43−44 ("Customers terminal 800 is a computer run by customs authorities."); *id.* at 2:35−36 ("Fig. 6 is a diagram showing an example of a screen displayed on user terminal 500").

But as explained above, merely describing generic "servers," "processors," "computers," or "terminals" that receive, transmit, and display data is not enough to transform an abstract idea into patentable subject matter.  *See Alice,* 573 U.S. at 225 (no inventive concept where "the function performed by the computer at each step of the process" of the patents is "'[p]urely conventional'") (quoting *Mayo*, 566 U.S. at 79); *buySAFE, Inc.*, 765 F.3d at 1355 (computer sending and receiving information not even "arguably inventive"); *Maxell, Ltd. v. VIZIO, Inc.*, 2022 WL 2167619, at *6 (C.D. Cal. Mar. 9, 2022) ("Plaintiffs do not contend that any of the *generic, black-box components* recited in Claim 1 provide an inventive concept.  Nor could they since such components were known in the art . . . . [W]ithout an explanation of the mechanism for *how* the result is accomplished, this purported feature of the invention cannot supply an inventive concept.") (emphasis added) (internal quotation marks and citations omitted).

Defs.' Notice of Motion and Motion to Dismiss                                         Case No. 23-CV-5917-JD

11

1    The FAC offers nothing more than a series of conclusory statements that the patents are

2 "inventive" or "not well-understood, routine, or conventional" because pre-customs clearance

3 occurs before the product arrives at customs.  FAC ¶¶ 13-18, 21, 24.  But courts have routinely

4 held that merely offering legal conclusions in an amended complaint cannot circumvent a § 101

5 ruling and that these conclusory statements need not be accepted by the Court.  For example, in

6 *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988 (N.D. Cal. Mar. 8, 2019), the plaintiff

7 amended its complaint and "argue[d] that the Court must assume as true the complaint's

8 allegations that the patents use 'unconventional techniques.'"  *Id.* at 995.  The court flatly rejected

9 this argument, explaining that "RingCentral's complaint does not allege 'specific' facts

10 'suggest[ing] that the claimed invention is directed to an improvement in the computer technology

11 itself and not directed to generic components performing conventional activities . . . . ***Instead, the***

12 ***'unconventional' allegations are conclusory, and the Court need not accept them as true***.'"  *Id.*

13 (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)) (emphasis added).

14    Numerous other Federal Circuit and district court cases have held the same.  *Accord, e.g.*,

15 *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1357 (Fed. Cir. 2024) ("There is no plausible,

16 non-conclusory allegation that the claimed GPS is anything other than part of, as the district court

17 put it, 'a set of generic computer components' . . . . Nowhere does the specification describe any

18 difference between how GPS would be equipped on a mobile phone and how it would be equipped

19 on any of the other described conventional computers."); *BSG Tech LLC v. Buyseasons, Inc.*, 899

20 F.3d 1281, 1288 (Fed. Cir. 2018) ("These benefits, however, are not improvements to database

21 functionality.  Instead, they are benefits that flow from performing an abstract idea in conjunction

22 with a well-known database structure."); *Move, Inc. v. Real Estate All. Ltd.*, 721 F. App'x 950,

23 956 (Fed. Cir. 2018) (rejecting "conclusory" assertion that limitations were "neither routine nor

24 conventional" and relying on the recitations of the claim); *Yanbin Yu v. Apple Inc.*, 392 F. Supp.

25 3d 1096, 1102 (N.D. Cal. July 2, 2019) ('a patentee cannot avoid dismissal for ineligible claims

26 purely on the basis of conclusory or generalized statements . . . .") (dismissing under § 101).

27    Legal conclusions aside, the remainder of the FAC does nothing more than parrot the

28 language of the patents and, indeed, Plaintiff's opposition to Defendants' prior motion to dismiss.

*Compare, e.g.*, FAC ¶ 20 (purportedly inventive step is "the completion of pre-customs clearance procedures **before** listing a product on an EC site so that the seller performs pre-clearance, the product immediately clears customs upon arrival, and tariffs are settled at the time of purchase") (emphasis added) *with* Opposition to Motion to Dismiss ("Opp.") at 2:2-5 ("The Patents-in-Suit recognize that traditional customs commerce systems at the time of the invention suffered from the disadvantage where it was 'determined that custom conditions ha[d] not been met **ex post facto** after the product arrived at customs, for example', causing a delay in delivery and logistics.") (emphasis added); FAC ¶ 22 ("In short, the prior art required that customs procedures be carried out subsequent to and separate from cross border EC purchases. The purchaser or a third party acting on behalf of the purchaser, such as a delivery company, was required to attend customs, pay applicable tariffs, and clear the purchase through customs. Thus, the advantages realized by utilizing the systems and processes claimed in the patents in suit for cross border EC transactions are not realized by use of the prior art systems and processes.") *with* Opp. at 3:5-10 ("The patented invention recognizes the advantages in configuring systems and processes using connected EC servers, user terminals, customs clearance authentication servers, and administration servers – all covering at least two economic zones – to request and receive pre-customs clearance information (including tariff information) and display such pre-customs clearance information along with corresponding product information at the time of sale or offer for sale."); FAC ¶ 38 ("[I]ndependent claim 1 recites a commerce system that comprises a plurality of EC servers, a customs clearance authentication server, and an administration server with specified configurations and performing specified EC process steps for the utility of 'improving customs clearance efficiency when circulating products between the first economic zone and the second economic zone.'") *with* Opp. at 5:15-17 ("With improved systems and processes, it is no longer necessary for the owners of each of a plurality of EC servers to separately apply to customs authorities in other economic zones for customs clearance.") & 3:23-4:27 (reciting claim).

And as with their prior opposition, Plaintiff again identifies **no structure or features** of these black box servers, and does not even allege how they perform the claimed sending and receipt of information, and what it is about these nonce servers that is a technological

Defs.' Notice of Motion and Motion to Dismiss

13

Case No. 23-CV-5917-JD

improvement over the prior art, or any "particular ordered combination" that "is in any way unconventional, or . . . improved upon the prior art."  Order at 8:22-25; *see generally* FAC ¶¶ 37-41 (parroting claims).  Indeed, the patent itself describes prior art systems that did the same thing, but after the product is purchased.  *See* FAC, Ex. A ('366 Patent at 1:34-44).  Thus, while Plaintiff adds the conclusory allegation that "[s]uch systems and processes as claimed in the patents in suit for pre-customs clearance for products involved in EC transactions between two different economic zones were not well-understood, routine, or conventional activity prior to the invention, as they were never done before" (FAC ¶ 21), by definition, the only purportedly novel step in the patent is doing those things before the product is purchased—exactly what a human being would have done before technology by, for example, calling customs or determining tariffs.  *See, e.g.*, Order at 7:16-18 ("claim 1 describes 'quintessential human work,' and the processes performed by each of the computer components recited in claim 1 could just as easily be performed mentally or by hand by a living person"); *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1367 (patent that "automate[s] 'pen and paper methodologies'" was a "quintessential 'do it on a computer' patent").

Finally, while Plaintiff describes other claims besides Claim 1 of the '366 patent, every paragraph of the FAC alleges in rote fashion the same claimed systems and processes, and the FAC nowhere suggests that there is any difference between representative Claim 1 and any other claim of any of the patents.  *See* FAC ¶¶ 37-56 (repeating same allegations verbatim for every claim).  Nor does the FAC suggest there is any claim construction or other issue that needs to be decided to again resolve the § 101 issue.  *See id.*  Simply put, because the FAC merely adds legal conclusions that the patents are "novel" or not "conventional"—with ***no*** new additional factual allegations addressing the Court's previous findings—the FAC must be dismissed with prejudice. *See RingCentral*, 372 F. Supp. 3d at 995; *Beteiro*, 104 F.4th at 1357; *Move*, 721 F. App'x at 956.

## II.     Plaintiff's Boilerplate Allegations Fail to Plausibly Allege Direct Infringement

While the Court need not reach any other issues, Plaintiff also again fails to plead facts giving rise to a plausible inference of direct infringement.  *See generally* Defendants' Motion to Dismiss at 10-13; *Novitaz, Inc. v. inMarket Media, LLC*, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017) (explaining that direct infringement allegations must be plausible under *Iqbal* and

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

14

"contain factual allegations that the accused product practices every element of at least one exemplary claim").

Plaintiff continues to allege not a single fact showing that any part of the accused system is made, used, or sold in the U.S. *See, e.g.*, FAC ¶ 21 (conclusory assertion that "Defendants' computer systems accessible through the Alibaba Website and/or the AliExpress Website" were made, used, or sold in United States). Nor does Plaintiff even attempt to show that any aspect of the accused system shows whether the product "has been cleared" by a customs authority, for example, only citing to screenshots stating that the product includes "visualization of the whole process of customs clearance points" (FAC, Ex B at p. 4 of 36), "full visibility of customs declaration link" (*id.* at p. 9 of 36), or "tariff remittance." *Id.* at p. 6 of 36. Finally, Plaintiff does not plead numerous other elements, including (1) the "display" of pre-customs information on the "user terminal" with product information (*id.* at 10:48−50; FAC, Ex. B at p. 12 (pointing only to "export data to prove trade strength" in order to "[u]se hot product for marketing")); (2) a "customs clearance authentication server [*i.e.*, a government authority] that connects to a customs terminal run by customs ***authorities*** in a second economic zone" ('366 Patent, Claim 1 at 10:25−27) (emphasis added); *see* FAC, Ex. B at p. 13 of 36 (alleging only an "online commissioned customers ***broker***") (emphasis added); (3) what the alleged administration server, customs clearance server, or EC servers even are (*see* FAC, Ex. B at p. 6 of 36 (to show "administration server," plaintiff merely points to a screenshot discussing a "platform" that allows for "tariff remittance"); *id.* at p. 3 of 36 (pleading existence of "plurality of EC servers" merely by alleging Alibaba has "sellers around the world")); or ***how*** Defendants purportedly infringe any of the patents. *See, e.g.*, *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013).

Nor does the FAC plead any facts supporting willfulness. *See* Defendants' Motion to Dismiss at 15; *Vasudevan Software, Inc. v. TIBCO Software Inc.,* 2012 WL 1831543, at *4 (N.D. Cal. May 18, 2012) (rejecting "conclusory assertion of 'willful infringement'").

## CONCLUSION

For all of the reasons set forth above, Defendants respectfully submit that the Court should dismiss Plaintiff's FAC with prejudice.

Defs.' Notice of Motion and Motion to Dismiss

15

Case No. 23-CV-5917-JD

Dated: October 2, 2024

SIMPSON THACHER & BARTLETT LLP


By /s/ Bo Bryan Jin
BO BRYAN JIN (SBN 278990)
bryan.jin@stblaw.com
JONATHAN C. SANDERS (SBN 228785)
jsanders@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA  94304
Telephone: 650-251-5000
Facsimile: 650-251-5002

*Counsel for Defendants Alibaba Group (US) Inc.,
Alibaba Cloud US LLC, and Alibaba.com US LLC*

Defs.' Notice of Motion and Motion to Dismiss                    Case No. 23-CV-5917-JD

16