MICHAEL A DINARDO (SBN 216991)
mdinardo@yklaw.us
AARON T BORROWMAN (SBN 201920)
aborrowman@yklaw.us
YK LAW LLP
445 S. Figueroa St, Suite 2280
Los Angeles, California 90071
Telephone: (213) 401-0970

*Counsel for Plaintiff BWB Co., LTD*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BWB CO., LTD, a Japan limited liability company<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA GROUP HOLDING LIMITED, a Cayman Islands company, ALIBABA GROUP (US) INC., a Delaware company, ALIBABA CLOUD US LLC, a Delaware limited liability company, ALIBABA.COM US LLC, a Delaware limited liability company, ALIBABA.COM US E-COMMERCE CORP., a Delaware company,<br><br>Defendants. | Case No. 3:23-cv-05917-JD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**<br><br>Date: November 7, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato<br>Courtroom 11; 9th Floor<br><br>FAC filed: September 12, 2024 |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. FACTUAL BACKGROUND ..................................................................................... 2
    A. Plaintiff and the Patents-In-Suit ........................................................................... 2
    B. Prior Art Ecommerce Systems and Processes ..................................................... 2
    C. Patented Ecommerce Systems and Processes ...................................................... 3

III. APPLICABLE LAW .................................................................................................. 5

IV. LEGAL DISCUSSION .............................................................................................. 5
    A. Plaintiff's Patents-in-Suit Are Not Directed To An Abstract Idea ...................... 5
        1. Enfish, LLC v. Microsoft Corp. ..................................................................... 5
        2. The Claimed E-Commerce Invention Is Not An Abstract Idea .................... 6
    B. Plaintiff's Patents Are Directed To An Inventive Concept .................................. 7
        1. DDR Holdings, LLC v. Hotels.com ............................................................... 7
        2. Bascom Global Internet Services, Inc. v. AT&T Mobility LLC and Amdocs (Israel) Ltd. v. Openet Telecom, Inc. ............................. 8
        3. Aatrix Software v. Green Shades Software .................................................. 9
        4. CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC and Cooperative Entertainment, Inc. v. Kollective Technology, Inc. ......... 10
        5. The Claimed Invention Is Directed To An Inventive Concept .................. 10
    C. Sufficiency of Pleading Infringement Allegations ............................................ 12
        1. Plaintiff Has Sufficiently Pled Infringement in the United States ............. 14
        2. Plaintiff's Claim Charts Plead the Presence of All Claim Limitations ...... 14
    D. Plaintiff's Complaint Adequately Pleads Willfulness ....................................... 15

V. CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Supreme Court**

Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 573 U.S. 208 (2014)..........................5, 7

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)............................................................12

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)) ................................12

**Court of Appeals**

Aatrix Software, Inc. v. Green Shades Software, Inc.,
    882 F.3d 1121 (Fed. Cir. 2018)..............................................................9, 11

Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,
    841 F.3d 1288 (Fed. Cir. 2016).............................................................8, 9, 11

Bascom Global Internet Services, Inc. v. AT&T Mobility LLC,
    827 F.3d 1341 (Fed. Cir. 2016).............................................................8, 9, 11

Cooperative Entertainment, Inc. v. Kollective Technology, Inc.,
    50 F.4th 127 (Fed. Cir. 2022) ................................................................. 10-11

CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC,
    15 F.4th 1091 (Fed. Cir. 2021) ............................................................... 10-11

DDR Holdings, LLC v. Hotels.com,
    773 F.3d 1245 (Fed. Cir. 2014)..........................................................5, 7, 11

Enfish, LLC v. Microsoft Corp.,
    822 F.3d 1327 (Fed. Cir. 2016)............................................................... 5-6

**District Court**

Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corporation (N.D. Cal.,
    June 15, 2023, No. 22-CV-04947-EJD) 2023 WL 7420648 ....................13

Novitaz Inc. v. inMarket Media, LLC, 2017 WL 2311407
    (N.D. Cal. May 26, 2017) ................................................................... 12-13

Sonos, Inc. v. Google LLC, (N.D. Cal. 2022) 591 F.Supp.3d 638, leave
    to appeal denied (Fed. Cir., May 11, 2022) 2022 WL 1486359................15

**Statutes**

35 U.S.C. § 101 .................................................................................................................5, 9

**Rules of Court**

FRCP, Rule 8 ........................................................................................................................12

FRCP, Rule 12(b)(6) ................................................................................................. 9, 11-12

## I. INTRODUCTION

Plaintiff's amendments in the First Amended Complaint ("FAC") establish how the inventions covered by Plaintiff's patents-in-suit improved upon the mechanics and systems of prior art cross-border e-commerce services in a manner that was not well-understood, routine, or conventional. Contrary to the assertions in Defendants' Motion to Dismiss, the amendments to the FAC do far more than merely recite the same description of the patents. As part of establishing the inventive concept embodied in the patents-in-suit, the amendments to the FAC establish that the overall claimed arrangement of servers and processes is non-conventional and non-generic. Such amendments clearly establish how the patents-in-suit provide technical improvements over the prior art e-commerce systems, by providing, in combination, separate administration servers, customs clearance authentication servers, and EC servers, with unconventional and non-routine processes to streamline customs processing of goods in cross-border e-commerce, particularly in the ordered presentation of claim elements.

Regarding the sufficiency of the infringement allegations in the FAC, the FAC in combination with the claims charts reference information taken directly from Defendants' publicly available websites regarding the servers and processes involved in cross-border e-commerce platforms at issue. These combined references of publicly available information plausibly plead infringement through the implementation of the inventive concepts claimed in the patents-in-suit, namely that the products offered for sale through the e-commerce platforms undergo pre-clearance with customs authorities in destination economic zones before such products are offered for sale. The remaining details are on Defendants' e-commerce platforms behind password protection and similar "blocking" walls such that the detailed information would only be available through discovery.

Regarding the sufficiency of the willfulness allegations in the FAC, Defendant were on constructive notice of the patents-in-suit and aware that their cross-border e-commerce platforms infringed on the same.

Based on the foregoing, Defendants' Motion to Dismiss the FAC should be denied in its entirety.

## II. FACTUAL BACKGROUND

### A. Plaintiff and the Patents-In-Suit

Plaintiff, on its own and through predecessors, acquired by assignment each of U.S. Patent No. 10,460,366 ("the '366 patent"), U.S. Patent No. 11,138,644 ("the '644 patent"), U.S. Patent No. 11,776,027 ("the '027 patent"), and U.S. Patent No. 11,776,028 ("the '028 patent") (collectively, the "patents-in-suit") from the inventor Ryutaro Nishiura. The Patents-in-Suit are all directed to embodiments of a commercial transaction system designed to facilitate and improve customs processing and logistics in commerce crossing multiple economic zones. (Dkt. Nos. 37-1, 37-3, 37-5, 37-7, Abstracts)

### B. Prior Art Ecommerce Systems and Processes

The patents-in-suit recognized and the First Amended Complaint presents detailed allegations as to how the prior art e-commerce systems were not set-up or configured for pre-customs administration and clearance before the goods were presented at customs, let alone before they were even offered for sale, and suffered from the disadvantage where goods could be refused entry at the border, causing a delay in delivery and logistics. FAC[1], ¶¶4-5; Dkt. 37-1, (the '366 patent), 1:34-40. Such pre-clearance was simply not performed in the prior art – whether manually or via a computer system.

Further, the allegations establish that in conventional, prior art cross-border e-commerce systems, procedures for getting the purchased products through customs in the destination country were carried out when the product arrived at the border, i.e., only after the customer had purchased the product. FAC, ¶¶7-10. In such conventional systems, it would be impossible for a purchaser to know whether a product could clear customs. With the recent growth of cross-border e-commerce transactions, the prior art conventional methods created issues for consumers not receiving their purchased products, sellers having to dispose of or retrieve products that were not allowed through customs, and for customs authorities dealing with a large volume of shipments with products to be reviewed for entry upon presentation. FAC, ¶¶11-13.

---

[1] "FAC" references the First Amended Complaint, Docket No. 36.

### C.   Patented Ecommerce Systems and Processes

The patented invention recognizes the advantages in configuring systems and processes to accomplish the novel practice of pre-customs clearance in cross-border e-commerce transactions, particularly before the product is offered for sale to the consumer. FAC, ¶3. In particular, the patents-in-suit recite a novel system of connected e-commerce servers, user terminals, customs clearance authentication servers, and administration servers – all covering at least two economic zones – to request and receive pre-customs clearance information (including tariff information) and display such pre-customs clearance information along with corresponding product information at the time of sale or offer for sale. FAC, ¶¶ 14-17; Dkt. 37-1, the '336 patent, 1:50-2:6, 4:4-18, 8:45-60, 9:18-29. As explicitly alleged in the First Amended Complaint, this novel system of interconnected servers – particularly the administration servers and the customs clearance authentication servers – and the processes implemented thereby, were not well-understood, routine, or conventional in the e-commerce industry prior to the invention of the patents-in-suit, particularly as there were no servers or processes linking the e-commerce servers to the customs authorities – thus providing a technical improvement in the field of e-commerce. FAC ¶¶19-21.

When considering each claim is in its entirety, the claimed combination of servers, the corresponding connectivity, and the functionality was not previously known, such that the same cannot be said to be well-understood, routine, or conventional. Claims 1, 2, and 8 of the '366 patent each recite an administration server in conjunction with a customs clearance authentication server that combine to automatically request and received pre-customs clearance from authorities in a second economic zone, and notify that clearance to the e-commerce server such that it is displayed with the product information at the time of sale. FAC ¶¶38-41. Claim 1 of the '644 patent recites a combination of administration and customs clearance authentication servers with similar functionality as claim 1 of the '366 patent, along with providing confirmation of the pre-customs clearance information to the customs terminal once the purchased product arrives at customs and storing information about completion of customs processing. FAC ¶¶43-46. Further, claims 1 and 9 of both the '027 and the '028 patents, each recite a similar combination

of administration and customs clearance authentication servers, as well as a plurality of non-transitory computer memory mediums, with similar functionality, along with providing confirmation of the pre-customs clearance information to the customs terminal once the purchased product arrives at customs and storing information about completion of customs processing. FAC ¶¶48-51 and 53-56.

As detailed by the extensive factual allegations in the First Amended Complaint, the claims of the patents-in-suit reflect technological improvements in the configuration of servers and the handling of cross-border e-commerce over the conventional processes known at the time of invention, through a practical application of the recited limitations. With the additional servers and processes, it is no longer necessary for the owners of each of a plurality of EC servers or individual consumers to separately apply to customs authorities in other economic zones for customs clearance with each transaction. In addition, with the implementation of the claimed processes in the administration server and the customs clearance authentication server, it is not necessary to send pre-customs clearance information to every e-commerce server. The process of applying customs clearance information in the system is reduced, administrative maintenance is centralized, and international ecommerce is simplified. <u>These are not simply mental functions that can be performed by an individual, particularly at the scope and in the volumes involved in the cross-border e-commerce industry.</u>

The patents-in-suit describe how the claimed inventions improve cross-border e-commerce whereby "the purchaser or receiver of the product, and the like is spared the time and effort of going to customs and carrying out custom procedures. Thus, customs clearance processing is performed smoothly with no delays of logistics at customs. Also, when a product is purchased, it is virtually guaranteed to pass through customs, and thus the user feels a sense of relief knowing that the product will definitely arrive. Furthermore, the user can comprehend the tariff rate in advance when purchasing a product, and thus can think about the product to be purchased while giving consideration to the tariff." See Dkt. 37-1, the '366 patent, 9:18-29.

III. **APPLICABLE LAW**

Plaintiff's memorandum in response to the prior motion to dismiss thoroughly discussed the law applicable to motions to dismiss and generally the *Alice* test for determining patent eligibility. Plaintiff will not repeat that standard here. Over the years, the Federal Circuit has issued multiple decisions (discussed below) setting forth its interpretation and application of the *Alice* test and finding patent eligible subject matter, particularly in computer implementations of inventions, based on such implementations not being directed to abstract ideas and/or otherwise comprising an inventive concept.

IV. **LEGAL DISCUSSION**

As set forth in the following discussion, Plaintiff respectfully submits that the claims of the patents-in-suit are not directed to an abstract idea, under the standard in *Enfish*. Further, Plaintiff submits that the claims of the patents-in-suit are directed to an inventive concept such that it is not necessary for the Court to consider whether the claims are directed to an abstract idea, under the standard in *DDR Holdings* and similar cases.

A. **Plaintiff's Patents-in-Suit Are Not Directed To An Abstract Idea**

1. ***Enfish, LLC v. Microsoft Corp.***

In *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), the Federal Circuit has established that in order to consider whether a claim is directed to an abstract idea, the claim must be considered as a whole, with the "focus" or "character" of the claim to be determined based on an evaluation of the specification. *Enfish*, 822 F.3d at 1335-36 ("[T]he first step of the *Alice* inquiry … asks whether the focus of the claims is on the specific asserted improvement in computer capabilities … or, instead, on a process that that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.")

The Federal Circuit cautioned against oversimplifying the recitation of the inventive concept – "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Id.* at 1337-38. Specific to the facts of *Enfish*, the Federal Circuit found that claims reciting a self-referential table for a computer database were not directed to an abstract idea since they were <u>directed to an</u>

5

improvement in computer capabilities, as opposed to merely using the computers as a tool. *Id.* at 1136. The Federal Circuit's decision specifically found that the district court in *Enfish* had oversimplified the inventive concept of the claims. *Id.* 822 F.3d at 1337.

### 2. The Claimed E-Commerce Invention Is Not An Abstract Idea

Analogized to *Enfish*, the claims of the patents-in-suit recite specific elements directed to an improvement of e-commerce marketplace capabilities through the establishment of separate and novel computer servers – administrative, customs clearance authentication, e-commerce, and user terminals – which facilitate the offering for sale, sale, and delivery of goods from one economic zone and through customs of another economic zone. In much the same way that "the self-referential table" of *Enfish* configured the computer memory to improve the computer operation in the claims (*Id.* at 1136), the establishment and configuration of the administrative and customs clearance authentication servers claimed in the patents-in-suit improve the operation of the e-commerce marketplace, particularly the e-commerce server and user terminals.

To consider only the pre-customs clearance function of the claims of the patents-in-suit, separate and apart from the claims as a whole, namely the establishment and configuration of the administrative and customs clearance authentication servers and the order of claim elements, risks the oversimplification cautioned in *Enfish*. Without exclusion of the overall claims, the same recite at least the "administration server" that is connected to the "customs clearance authentication server" and the "EC servers", in such a manner that the pre-customs clearance information is displayed together with the product information – clearly requiring that customs clearance is completed before offering the product for sale.

As detailed above, the claimed system of servers and processes provide functionality for obtaining pre-customs clearance, which clearance is displayed with the product information before the products are even offered for sale to consumers, and provide more certainty that the purchased products will be delivered to the buyer in another economic zone. Such certainty in the retail transaction improves the operation and capabilities of the e-commerce servers and user terminals. The overall improvement of the capabilities of the e-commerce marketplace is achieved by the claimed combination of above-described servers and processes that are

specifically recited in the claims of the patents-in-suit and plead in the FAC at ¶¶38-41, 43-46, 48-51, and 53-56.

### B. Plaintiff's Patents Are Directed To An Inventive Concept

#### 1. *DDR Holdings, LLC v. Hotels.com*

In *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014), rather than specifically identifying an abstract idea, the Federal Circuit moved directly to the second part of the *Alice* test finding an inventive concept. The court in *DDR Holdings* found that claims addressing the manipulation of web pages were directed to an inventive concept because they "did not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. *Id.* at 1258-59. The claims in *DDR Holdings* were found to be "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* Further, the court in *DDR Holdings* distinguished the subject claims insofar as they specified how the interactions on the Internet were manipulated to yield a desired result, which result overrides the routine and conventional sequence of events – nor did they recite a commonplace business method aimed at processing business information. *Id.* In *DDR Holdings*, the Federal circuit found that the subject claims did not merely recite a longstanding commercial or business practice known from the pre-Internet world along with the requirement to perform the practice on the Internet.

Similarly, the claims of the patents-in-suit do not recite a longstanding commercial or business practice from the pre-e-commerce world. Indeed, in a pre-e-commerce world, before they were offered for sale, retail goods were brought through customs in large quantities by the seller and displayed for sale in physical brick-and-mortar locations or catalogs. Even in a post-e-commerce world, retail goods would either (1) be brought through customs in large quantities by the seller – prior to offering for sale – and then displayed on an e-commerce site, or (2) offered for sale on an e-commerce site – without obtaining customs clearance – and the buyer would have to count on bringing the product through customs on an individual basis. Whether in a pre- or post- e-commerce world, the retail goods are not pre-approved before arriving at customs, particularly for individual unit sales, or even before listing the goods for sale.

The claims of the patents-in-suit recite a system of servers and processes whereby the consumers can purchase individual retail goods knowing that the product has already been approved to clear customs so as to have greater certainty that the product would arrive. Such is not a mere recitation of a known business practice from the pre-e-commerce world (or even the post-e-commerce world) along with the requirement that it be performed using computers. The claims of the patents-in-suit recite a novel combination of computer servers and processes to achieve pre-customs clearance – a practice previously unknown in the e-commerce world.

### 2.   *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC* and *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*

The Federal Circuit in *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) explains that an inventive concept can exist in the non-conventional and non-generic arrangement of known, conventional elements, including in the ordered combination thereof, while still recognizing that it must be more than the abstract idea as opposed to simply being an instruction to use a computer. *Id.* at 1349. The Bascom court specifically found that the ordered combination of claim limitations, i.e., non-conventional and non-generic arrangement, transform the abstract idea of filtering website content into a particular, practical application of the abstract idea. *Id.* at 1352.

In *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016), the Federal Circuit found that the patent claims were related to an abstract idea of using a database to compile and report on network usage information, while finding that the claims recited an inventive concept in the ordered combination of steps. Specifically, the *Amdocs c*ourt found that a distributed enhancement, i.e., processing records of network information close to their source, was a critical enhancement over the prior art, which comprises an unconventional technological solution to a technological problem using generic components. *Id.* at 1300-01.

In both *Bascom* and *Amdocs*, the Federal Circuit found that an inventive concept can still be found in the assembly of known, conventional elements based on a non-conventional and non-generic arrangement, i.e., an ordered combination. While the basic computer servers recited in the claims of the patents-in-suit may be generally "known" or "conventional", the operational and

process elements of the servers are not so "known" or "conventional" – particularly as to the ordered combination of those elements in e-commerce operations.  As to the claimed administrative and customs clearance authentication servers, the claims introduce an ordered combination to the recited assembly of elements, similar to *Bascom*.  Further, the claimed administrative and customs clearance authentication servers process the pre-customs clearance request and authorization within their local communication framework, i.e., close to the retail source, before listing the product for sale on the e-commerce server, similar to *Amdocs*.

### 3. *Aatrix Software v. Green Shades Software*

In *Aatrix Software v. Green Shades Software*, 882 F. 3d 1121 (Fed. Cir. 2018), the Federal Circuit considered performing a §101 eligibility analysis under Rule 12(b)(6), finding that such is only appropriate there are no factual allegations that when taken as true prevent resolving the eligibility question as a matter of law.  *Id.* at 1125.  Specifically, the Federal Circuit confirmed that a patentee who adequately alleges their claims contain inventive concepts survive a §101 eligibility analysis under Rule 12(b)(6).  *Id.* at 1126-27; citing *BASCOM*, 827 F.3d at 1352.

The patentee in *Aatrix* was found to have presented a proposed amended complaint that supplies numerous allegations related to the inventive concepts present in the claimed technology, describing the development of the patented invention, including the problems present in the prior art, and specific allegations directed to improvements and problems solved by the patented invention. *Id.* at 1127. In the context of such analysis, the pleading of specific factual allegations requires that the same involve more than the performance of well understood, routine, and conventional activities previously known in the industry, and that there be no proper basis for rejecting the allegations as a factual matter. *Id.* at 1128.  Thus, specific factual allegations relating to inventive concepts that amount to more than well-understood, routine, or conventional activities previously known in the industry, are sufficient to survive a §101 eligibility analysis under Rule 12(b)(6).  *Id.* at 1126-28.

4.  *CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC* and *Cooperative Entertainment, Inc. v. Kollective Technology, Inc.*

In *CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091 (Fed. Cir. 2021), the Federal Circuit found it was not necessary to determine whether the claims presented an abstract idea, because the claims presented an inventive concept in which the claim steps were not conventional. *Id*. at 1098. In *CosmoKey*, the court considered a patented method for a computer-implemented authentication technique that was found to comprise an inventive concept because the patent specification described how the particular arrangement of steps was not conventional and was a technical improvement over conventional methods. *Id*. The Federal Circuit found that there was nothing in the patents or elsewhere in the record that supported finding the claim steps conventional. *Id.* The Federal Circuit found that the statements in the subject patent distinguished the claimed invention from the prior art and that the patent specification described how the arrangement of claim steps was a technical improvement over conventional methods. *Id*.

In *Cooperative Entertainment, Inc. v. Kollective Technology, Inc.*, 50 F.4th 127 (Fed. Cir. 2022), similar to *CosmoKey*, the Federal Circuit skipped the abstract idea analysis because it specifically found that the patent claims presented an inventive concept. *Id.* at 131. More importantly and also similar to *CosmoKey*, the court found that patent eligibility can only resolved under Rule 12 if there are no plausible factual disputes after drawing all reasonable inferences from the record in favor of the non-moving party. *Id.* at 130. In making this determination, the court considered the claim language, the written description, and the amended complaint, as describing the claimed arrangements of elements as being a technical improvement over the prior art, so as to prohibit dismissal under Rule 12. *Id.* at 135-36.

5.  **The Claimed Invention Is Directed To An Inventive Concept**

The patents-in-suit recite and the FAC specifically pleads computer servers, combined in particular combinations and sequences to perform particular processes, so as to improve efficiency of cross-border e-commerce transactions. See, FAC ¶¶38-41 (claims 1, 2 and 8 of the

'366 patent); FAC ¶¶43-46 (claim 1 of the '644 patent); FAC ¶¶48-51 (claims 1 and 9 of the '027 patent); and FAC ¶¶53-56 (claims 1 and 9 of the '028 patent).

As in *DDR Holdings*, the systems and processes of the claims of the patents-in-suit do not rely on known or long-standing practices to achieve pre-customs clearance for the individual sale of retail items rather than waiting to know about customs clearance until the item arrives at customs for the destination country. The claimed systems of servers and processes, in their entireties, specifically including the "administrative server" and "customs clearance authentication server" and how they function together to secure pre-customs clearance such that it is displayed with the product information in the offer of sale, are both claimed in the patents-in-suit and plead in the FAC per the above.

As in *Bascom* and *Amdocs*, the systems and process of the claims of the patents-in-suit recite an ordered combination of elements, i.e., securing pre-customs clearance before listing a product for sale, in a manner that enhances cross-border e-commerce processing through communications within its established network of servers. That ordered combination and established network of servers relates to the requesting, receiving, and reporting of pre-customs clearance before the products are listed for sale on the e-commerce servers are specifically claimed in the patents-in-suit and plead in the FAC per the above.

As in *Aatrix*, the FAC in the instant case contains concrete allegations that the claim elements and the claimed combination are not well-understood, routine, or conventional. The FAC contains specific allegations regarding the prior art and disadvantages inherent therein (FAC ¶¶4-5 and 7-12), the development of the invention claimed in the patents-in-suit (FAC ¶¶ 6 and 13), the inventive concepts present in the claimed technology (FAC ¶¶14-17), and specific allegations directed to improvements and problems solved by the patented invention (FAC ¶¶18-20). Under the standards set by the Federal Circuit in *Aatrix*, these allegations in the FAC cannot be rejected as a factual matter under Rule 12(b)(6).

Similarly, as in both *CosmoKey* and *Coop Ent.*, in the context of a Rule 12 motion, courts must draw all favorable inferences in favor of the non-moving party, particularly as to factual determinations to be made from the record. In the instant case, as detailed above, the FAC

contains concrete factual allegations supported by the claims of the patents-in-suit, that must be reasonably inferred in favor of Plaintiff and cannot be resolved otherwise in the context of a Rule 12(b)(6) motion.

The overall improvement of the capabilities of the e-commerce marketplace is achieved by the claimed combination and order of servers and processes specifically recited in the claims of the patents-in-suit and plead in the FAC. The overall combination of the servers and processes claimed in the patents-in-suit, includes the "administration server" that is connected to the "customs clearance authentication server" and the "EC servers", and executes the claimed operational processes in such an ordered manner that the pre-customs clearance information is displayed together with the product information – clearly requiring that customs clearance is completed before offering the product for sale.

Based on the foregoing discussion, Plaintiff respectfully submits that the claims of the patents-in-suit are (1) not directed to an abstract idea; and (2) recite an inventive concept.

### C.   Sufficiency of Pleading Infringement Allegations

Courts determine whether a complaint states a cognizable legal theory and sufficient facts with reference to Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). As covered in detail in the briefing of Defendants' prior motion to dismiss and consistent the FAC, Plaintiff's allegations of direct patent infringement plausibly present a *prima facie* claim. There is no clear, one-size fits all standard that applies to all pleading, rather each inquiry should be performed on a case-by-case basis. See, e.g., *Novitaz Inc. v. inMarket Media, LLC*, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017) ("How these standards apply to allegations of direct patent infringement in the absence of Form 18 is still a developing topic.") The *Novitaz* court found that some inquiries may allow more generalized

allegations to be sufficient for the Court to plausibly infer that every claim element is satisfied by an accused instrumentality. *Id.*

Plaintiff's FAC extensively details the content of the prior art, the content of the patents-in-suit, and how details of publicly available information from Defendant's e-commerce platforms read on the claims of those patents-in-suit. The claims charts (Dkt. Nos. 37-2, 37-4, 37-6, 37-8) referenced in the FAC detail the correlation of the Defendants' publicly available information to the claims limitations, i.e., how the Defendant's e-commerce website operations read on the patent claims, to plausibly allege direct infringement under the applicable standard.

The details of the allegations, particularly in the referenced claims charts, are Defendants' own words, including from their "Cross-Border Supply Chains" and the "Commodity Link" websites, explaining how their e-commerce platforms facilitate customs clearance of a sellers products in a manner that improves customs clearance efficiency. For example:

- Dkt. No. 37-2, p. 4: "A single-system of multiple entry, automatically generate a full set of customs declaration information";
- Dkt. No. 37-2, pp. 9-11: "Real-time online tracking of customs declaration status", "Smarter second query for categorization More accurate international tariff calculation", "Calculation of Import Duties and Taxes for International Customs Destinations and Customs Tariff Queries";
- Dkt. No. 37-2, pp. 12 and 16: "Unique logo displayed on search list to attract buyer's attention", "The product details page reveals export data to prove trade strength"; and
- Dkt. No. 37-2, p. 18: "Intelligence Customs Declaration Platform" and "Improve Efficiency by 80%".

Through these claim charts, Plaintiff's FAC plausibly asserts using the publicly available information how Defendants' website and ecommerce services meet each and every limitation of at least one claim of each Patent-In-Suit. *See, e.g., Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corporation* (N.D. Cal., June 15, 2023, No. 22-CV-04947-EJD) 2023 WL 7420648, at *3.

In situations where details of an infringement are not publicly available, practically no plaintiff could ever meet the heightened standard advocated for by Defendants at this early stage.

Defendants' website architecture and design are not laid-open to the public but are hidden in the programming of Defendants' servers and behind password walls for sellers and operators. Plaintiff used the information that was publicly accessible to compile what it could into the detailed claim charts and present the current plausible allegations. Defendants' website is not like a physical product or article of manufacture, that Plaintiff can purchase and disassemble, or otherwise reverse engineer.

### 1.     Plaintiff Has Sufficiently Pled Infringement in the United States

In paragraph 30 of the FAC, Plaintiff plainly alleges that the Defendants "collectively owned, controlled and operated the websites at the URLs: www.alibaba.com (the "Alibaba Website") and www.aliexpress.com (the "AliExpress Website"), both accessible throughout the United States and in this judicial district." (Dkt 36-0, ¶30)(emphasis added)  In paragraphs 58, 65, 72, and 79 of the FAC, Plaintiff defines and references the "Accused Instrumentalities" as "the Alibaba Website and/or the AliExpress Website for facilitating [ecommerce] transactions between at least two different economic zones". (Dkt 36-0, ¶¶58, 65, 72, and 79) Further, in the same and other paragraphs, through the Accused Instrumentalities, the FAC alleges that the Defendants directly infringe the Patents-In-Suit "in the state of California, in this judicial district, and elsewhere in the United States" by "making, using, providing, selling, offering for sale, and/or importing into the United States products and services (or programs that provide the same) that practice one or more of the inventions claimed in the [Patents-In-Suit], including but not limited to Defendants' computer systems for implementing the functionality described in [the claim charts], including Defendants' computer systems". (Dkt 36-0, ¶¶58, 65, 72, and 79)

### 2.     Plaintiff's Claim Charts Plead the Presence of All Claim Limitations

The screenshots in the claim charts are enough to plausibly infer infringement.  In making their motion, Defendants' literally describe contents of the claim charts that recite the bases for such plausible inferences of meeting each of the subject claim limitations. Defendants advance a restrictive narrow reading of their website contents presented in the claims charts. From the claim charts, screenshots from Defendants' websites clearly show "visualization of the whole process of customs clearance points", "full visibility of customs declaration link", or "tariff remittance".

As the details of Defendants' operations are contained in the software on their servers and behind passwords or other non-public sources, Plaintiff has pled what information was publicly available as this stage – enough to make a plausible inference of infringement.

### D. Plaintiff's Complaint Adequately Pleads Willfulness

Plaintiff's FAC repeatedly alleges that Defendants' direct infringement was knowing, intentional, and continuing – and requests enhanced damages for the same. (Dkt. 36 ¶¶61, 63, 68, 70, 75, 77, 82, and 84) 24, 26; 31, 33; 38, 40; 45, and 47) The current standard requires that "knowledge of the patent and knowledge of infringement must be pled with plausibility." *Sonos, Inc. v. Google LLC*, (N.D. Cal. 2022) 591 F.Supp.3d 638, 643, leave to appeal denied (Fed. Cir., May 11, 2022, No. 2022- 134) 2022 WL 1486359. "[O]nce willfulness is adequately pled, the complaint need not go further and specify the further aggravating circumstances warranting enhanced damages". *Id*. Plaintiff respectfully submits that these allegations of knowledge and intent are enough to plausibly infer willfulness.

## V. CONCLUSION

Based upon the foregoing, Plaintiff respectfully submits that Defendant's Motion to Dismiss the First Amended Complaint be denied in its entirety.

Dated: October 16, 2024

By: /s/Michael A DiNardo
MICHAEL A DINARDO (SBN 216991)
mdinardo@yklaw.us
AARON T BORROWMAN (SBN 201920)
aborrowman@yklaw.us
YK LAW, LLP
445 S. Figueroa St, Suite 2280
Los Angeles, California 90071
Telephone: (213) 401-0970

*Counsel for Plaintiff BWB Co., LTD*