1   BO BRYAN JIN (SBN 278990)
    bryan.jin@stblaw.com
2   JONATHAN C. SANDERS (SBN 228785)
    jsanders@stblaw.com
3   SIMPSON THACHER & BARTLETT LLP
    2475 Hanover Street
4   Palo Alto, CA  94304
    Telephone: 650-251-5000
5   Facsimile: 650-251-5002

6   *Counsel for Defendants Alibaba*
    *Cloud US LLC, Alibaba Cloud US LLC, and*
7   *Alibaba.com US LLC*

8

9

10                  UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13  BWB CO., LTD, a Japan limited liability          Case No. 23-cv-5917-JD
    company,
14                                                   **REPLY IN SUPPORT OF**
                      Plaintiff,                     **DEFENDANTS' MOTION TO**
15                                                   **DISMISS**
                 v.
16                                                   Date: November 7, 2024
    ALIBABA GROUP HOLDING LIMITED,                   Time: 10:00 a.m.
17  a Cayman Islands company, ALIBABA                Judge: Hon. James Donato
    GROUP (US) INC., a Delaware company,             Courtroom: 11
18  ALIBABA CLOUD US LLC, a Delaware
    limited liability company, ALIBABA.COM
19  US LLC, a Delaware limited liability
    company, ALIBABA.COM US ECOMMERCE
20  CORP., a Delaware company,

21                    Defendants.

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

INTRODUCTION.................................................................................................................1

ARGUMENT ......................................................................................................................2

I.    Plaintiff's Opposition Identifies No Patent-Eligible Subject Matter Under 35
      U.S.C. § 101 and the *Alice/Mayo* Test ................................................................2

A.    *Enfish* Shows Why the Asserted Patents Are Directed to an Abstract Idea.........2

B.    None of Plaintiff's Cited Case Law Establishes an "Inventive Concept"............3

      1.    *DDR Holdings* Involved a Specific Technological Improvement ..........3

      2.    *Bascom* Is Distinguishable Because It Involved an Innovative "Ordered
            Combination" ................................................................................................6

      3.    Plaintiff's Remaining Case Law All Involved Technical Improvements 8

II.   Plaintiff Fails Adequately to Plead Direct Infringement......................................9

CONCLUSION ...................................................................................................................10

Reply in Support of Defs.' Motion to Dismiss                                    Case No. 23-CV-5917-JD

i

1

## **TABLE OF AUTHORITIES**

2

Page(s)

3

## **CASES**

4

*Aatrix Software v. Green Shades Software*,
    882 F. 3d 1121 (Fed. Cir. 2018) ............................................................................................ 9

5

6

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) ............................................................................................ 8

7

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ......................................................................................... 1, 6

8

9

*Beteiro, LLC v. DraftKings Inc.*,
    104 F.4th 1350 (Fed. Cir. 2024) ........................................................................................... 9

10

*Broadcom Corp. v. Netflix, Inc.*,
    598 F. Supp. 3d 800 (N.D. Cal. Apr. 13, 2022) .................................................................. 7

11

12

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ............................................................................................ 9

13

14

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ............................................................................................ 5

15

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011) .......................................................................................... 10

16

17

*CNET Networks, Inc. v. Etilize, Inc.*,
    528 F. Supp. 2d 985 (N.D. Cal. 2007) ............................................................................... 10

18

19

*CosmoKey Solutions GmbH & Co. KG v. Duo Sec. LLC*,
    15 F.4th 1091 (Fed. Cir. 2021) ............................................................................................. 8

20

21

*DDR Holdings, LLC v. Hotels.com*,
    773 F.3d 1245 (Fed. Cir. 2014) ............................................................................................ 4

22

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ..................................................................................... 3, 5, 7

23

24

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ......................................................................................... 1, 2

25

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    839 Fed. Appx. 534 (Fed. Cir. 2021) .................................................................................... 3

26

27

*In re TLI Commc'ns LLC Pat. Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) .............................................................................................. 5

28

Reply in Support of Defs.' Motion to Dismiss                          Case No. 23-CV-5917-JD

ii

*MyMail, Ltd. v. ooVoo, LLC*,
    934 F.3d 1373 (Fed. Cir. 2019) ..................................................................... 3, 7

*Open Text S.A. v. Alfresco Software Ltd.*,
    2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ................................................. 6

*Open Text S.A. v. Box, Inc.*,
    78 F.Supp.3d 1043 (N.D. Cal. 2015) ............................................................... 6

*Rothschild Dig. Confirmation, LLC v. Skedulo Holdings Inc.*,
    2020 WL 1307016 (N.D. Cal. Mar. 19, 2020) ................................................. 6

*Tridim Innovations LLC v. Amazon.com, Inc.*,
    207 F. Supp. 3d 1073 (N.D. Cal. 2016) .......................................................... 6

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    2012 WL 1831543 (N.D. Cal. May 18, 2012) ............................................... 11

*Yu v. Apple Inc.*,
    611 F. Supp. 3d 908 (N.D. Cal. 2020)
    *aff'd*, 1 F.4th 1040 (Fed. Cir. 2021) ..................................................... 7, 8, 9

Reply in Support of Defs.' Motion to Dismiss               Case No. 23-CV-5917-JD

iii

**INTRODUCTION**

Plaintiff's opposition simply re-hashes the same arguments the Court has already found insufficient to claim patentable subject matter under *Alice*. The opposition—which almost entirely ignores the arguments and case law in Defendants' motion to dismiss—identifies **no specific structure** in the generic, black-box servers that transmit and receive information. Nor does Plaintiff identify any purported technological improvement over the prior art, merely repeating the same assertion that the patented system sends and receives customs information before a product is sold. This abstract idea, which is the same function a person would have performed before the advent of technology, is insufficient for all the same reasons the Court has previously explained.

The specific arguments Plaintiff does make in its opposition fail to rehabilitate the unpatentable asserted claims. **First**, Plaintiff relies primarily on one case, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), to argue that the patents are not directed to an abstract idea. But *Enfish* found that the claims there were directed to a "**specific improvement to the way computers operate**," including a "self-referential" table that changed the way computer memory operated. Plaintiff does not even argue that the black-box servers here make any technological "improvement" over the prior art that is identified in the patents themselves. The purported invention uses generic-purpose computers, but it does not improve the way they operate.

**Second**, Plaintiff relies upon *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), to argue that the patents claim a unique "ordering" of information transmission that is inventive under the second step of *Alice*. That is the exact same case and argument Plaintiff previously made and that the Court **rejected** in finding that "BWB has not alleged that the order in which the three servers generate, transmit, and receive information is in any way unconventional, or that the ordering improved upon the prior art." Order at 8:23-25. In any event, neither the patents nor Plaintiff's First Amended Complaint ("FAC") identifies any novel way the generic servers are "ordered."

**Finally**, Plaintiff makes only a token attempt to show that it has adequately pled direct infringement and willfulness by citing a series of conclusory allegations that the accused products are sold in the United States; claim charts that do not even address numerous key claim elements;

1   and a perfunctory allegation that "Defendants' direct infringement was knowing, intentional . . .

2   and continuing."  These conclusory allegations fail even at the pleading stage under binding law.

3                                    **ARGUMENT**

4   **I.    PLAINTIFF'S OPPOSITION IDENTIFIES NO PATENT-ELIGIBLE SUBJECT
         MATTER UNDER 35 U.S.C. § 101 AND THE *ALICE/MAYO* TEST**

5

6        **A.    *Enfish* Shows Why the Asserted Patents Are Directed to an Abstract Idea**

7        As explained in Defendants' opening brief, nothing in the FAC even alleges—much less

8   shows—that the asserted patents are not directed to an abstract idea.  *See generally* Motion

9   ("Mot.") at 7-10; *see, e.g.*, FAC ¶¶ 39 ("***To the extent*** the claims may be deemed to be directed to

10  an abstract idea . . . .") (emphasis added), ¶ 40 (acknowledging the "***putative abstract idea***")

11  (emphasis added), ¶ 41 (same), ¶ 44 (same), ¶ 45 (same), and ¶ 46 (same).  Plaintiff does not

12  respond to any of Defendant's case law or, indeed, even acknowledge any of the arguments in

13  Defendant's motion to dismiss.  *Compare* Mot. at 7-10 *with* Opposition ("Opp.") at 5-7.

14       The only case Plaintiff does cite, *Enfish*, provides no support for its position.  In *Enfish*, the

15  patents claimed a detailed "self-referential table" that improved computer memory and "contain[s]

16  information about documents stored on the file repository," where "[e]ach table in the relational

17  model contains columns defining that table," followed by pages of detailed tables showing exactly

18  what the technological improvement over the prior art was.  *Enfish*, 822 F.3d at 1331-33.  The

19  court explained why this was not an "abstract idea," but rather a "specific asserted improvement in

20  computer capabilities (*i.e.*, the self-referential table for a computer database" (*id.* at 1336):

21           Here, the claims are not simply directed to any form of storing tabular data, ***but
             instead are specifically directed to a self-referential table for a computer***

22           ***database*** . . . . The specification also teaches that the self-referential table
             ***functions differently than conventional database structures*** . . . . [O]ur

23           conclusion that the claims are directed to an improvement of an existing
             technology is bolstered by the specification's teachings that the claimed invention

24           achieves other benefits over conventional databases, such as increased flexibility,
             faster search times, and smaller memory requirements.

25

26  *Id.* at 1336-37 (emphasis added).  The court thus concluded that "the claims here are directed to an

27  improvement in the functioning of a computer.  In contrast, the claims at issue in *Alice* and

28  *Versata* can readily be understood as ***simply adding conventional computer components to well-***

---

Reply in Support of Defs.' Motion to Dismiss                    Case No. 23-CV-5917-JD

2

1    ***known business practices***." *Id.* at 1337 (emphasis added).

2        Here, by contrast, Plaintiff does not identify ***any*** technological improvement over generic

3    computers and servers in the prior art, much less a specific improvement like the "self-referential

4    table" in *Enfish*. *See* Opp. at 5-7. Instead, Plaintiff simply asserts without explanation that "[t]he

5    overall improvement of the capabilities of the e-commerce marketplace is achieved by the claimed

6    combination of above-described servers and processes that are specifically recited in the claims of

7    the patents-in-suit and plead in the FAC at ¶¶ 38-41, 43-46, 48-51, and 53-56." *Id.* at 6:27-7:2

8    (emphasis added). Plaintiff never says what any of the black-box servers do or, indeed, even are.

9    *See, e.g.*, FAC ¶ 38. Moreover, as explained in Defendant's opening brief—and ignored by

10    Plaintiff here—the patents themselves identify prior art that did the same thing, but after the

11    product was sold. *See* Opp. Br. at 14 (citing '366 Patent at 1:34-44, which describes prior art

12    system in which "customs clearance procedures are performed after a product is purchased").

13        Because the patents identify nothing more than the abstract idea of using generic servers

14    send and receive customs information before a product is sold—the same thing a human could

15    have done before technology—the patents claim an unpatentable abstract idea as a matter of law.

16    *See generally* Mot. at 7-10; *see, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354

17    (Fed. Cir. 2016) (improving efficiency by "gathering and analyzing" information and "then

18    displaying the results" is "directed to an abstract idea"); *iLife Techs., Inc. v. Nintendo of Am., Inc.*,

19    839 Fed. Appx. 534, 536 (Fed. Cir. 2021) ("We have routinely held that claims directed to

20    gathering and processing data are directed to an abstract idea.") (collecting cases); *MyMail, Ltd. v.*

21    *ooVoo, LLC*, 934 F.3d 1373, 1378 (Fed. Cir. 2019) (claims that "'fall within the category of

22    gathering and processing information'" are invalid); Order at 7:15-18 ("[C]laim 1 describes

23    'quintessential human work,' and the processes performed by each of the computer components

24    recited in claim 1 could just as easily be performed mentally or by hand by a living person.").

25        **B.    None of Plaintiff's Cited Case Law Establishes an "Inventive Concept"**

26            **1.    *DDR Holdings* Involved a Specific Technological Improvement**

27        Plaintiff's reliance upon a handful of Federal Circuit decisions to try to show an inventive

28    concept under the second step of *Alice* fares no better. Plaintiff primarily cites *DDR Holdings,*

1  *LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014), which upheld patents claiming "the

2  manipulation of web pages." Opp.n at 7:7-8.  For reasons similar to those above, *DDR Holdings*

3  is easily distinguishable because the patents there claimed ***a specific technological improvement***

4  over the prior art, not using generic servers to do the exact same thing humans would have done.

5       *DDR Holdings* involved claims providing that, "upon the click of an advertisement for a

6  third-party product displayed on a host's website, the visitor is no longer transported to the third

7  party's website," instead calling for "an 'outsource provider' having a web server which directs the

8  visitor to an automatically-generated hybrid web page that combines visual 'look and feel'

9  elements from the host website and product information from the third-party merchant's website."

10  *DDR Holdings,* 773 F.3d . at 1257-58.  The Federal Circuit then contrasted this improvement with

11  non-inventive steps under *Alice* and progeny, explaining exactly why claims such as those at issue

12  here ***are not patentable***:

13       The '399 patent's claims are different enough in substance from those in
         *Ultramercial* because ***they do not broadly and generically claim "use of the***
14       ***Internet" to perform an abstract business practice*** (with insignificant added
         activity).  Unlike the claims in *Ultramercial*, the claims at issue here ***specify how***
15       ***interactions with the Internet are manipulated to yield a desired result***—a result
         that overrides the routine and conventional sequence of events ordinarily triggered
16       by the click of a hyperlink . . . .  When the limitations of the '399 patent's asserted
         claims are taken together as an ordered combination, the claims recite an
17       invention ***that is not merely the routine or conventional use of the Internet***.

18

19  *Id.* at 1258 (emphasis added).

20       Again, here, Plaintiff does not identify any specific technological improvement in the

21  asserted patents, which merely claim the "use of the Internet" to perform an abstract business

22  practice." *Id.*  Rather, Plaintiff simply asserts that, "[w]hether in a pre- or post- e-commerce

23  world, the retail goods are not pre-approved before arriving at customs," the exact same argument

24  Plaintiff made previously.  Opp. at 7:26-28.  But that is precisely the use of generic servers over

25  the Internet to perform the abstract idea (*DDR Holdings*, 773 F.3d. at 1258) that this Court and the

26  Federal Circuit have previously rejected.  *See, e.g.*, Order at 7-8; *Elec. Power Grp.*, 830 F.3d at

27  1355 (explaining that invoking "computers and networks that are not even arguably inventive are

28  'insufficient to pass the test of an inventive concept in the application' of an abstract idea"); *In re*

Reply in Support of Defs.' Motion to Dismiss                              Case No. 23-CV-5917-JD

4

1   *TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016) ("[H]ere we need to only look

2   to the specification, which describes the telephone unit and server as either performing basic

3   computer functions such as sending and receiving data, or performing functions 'known' in the art

4   . . . .") (emphasis added); *id.* at 614 ("Here, the server simply receives data, 'extract[s]

5   classification information . . . from the received data,' and 'stor[es] the digital images . . . .'")

6   (emphasis added); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a

7   computer receives and sends the information over a network—***with no further specification***—is

8   not even arguably inventive.") (emphasis added); Order at 8:15-18 ("The Court in *Alice* made

9   clear that a claim directed to an abstract idea does not move into section 101 eligibility territory by

10  'merely requir[ing] generic computer implementation.'") (quoting *buySAFE*, 765 F.3d at 1354-

11  55); *id.* at 8:18-20 ("[A]n 'attempt[] to limit the use'" of an abstract idea "'to a particular

12  technological environment,' . . . has long been held insufficient to save a claim in this context.")

13  (quoting same).

14      Plaintiff does not respond to or address any of these cases in any way.  That is because, as

15  explained in Defendants' motion, the patents literally claim and describe "servers," "processors,"

16  and "computers" ***with no description*** of the physical characteristics of those empty nonce words—

17  much less sufficient technological improvement to transform those abstract ideas into patentable

18  subject matter.  *See, e.g.*, '366 Patent at Fig. 1 (no information about each server other than black

19  boxes with words "EC Server," "Product Administration Server," "Administration Server," and

20  "Customs Clearance Administration Server"); *id.* at Fig. 2, 2:35-36, 3:55-4:3, 5:28-31, 6:43-44 2.

21      Indeed, this Court itself has routinely rejected patents under § 101—just as in this case—

22  where "the patents ***do not disclose any specific ways, hardware or software, that a user may***

23  ***program or implement these gestures*** . . . . These elements that are defined only in terms of their

24  functionalities, whether considered separately or as an ordered combination, fall short of

25  constituting an inventive concept." *Tridim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d

26  1073, 1080 (N.D. Cal. 2016) (Donato, J.) (emphasis added); *accord, e.g.*, *Rothschild Dig.*

27  *Confirmation, LLC v. Skedulo Holdings Inc.*, 2020 WL 1307016, at *5 (N.D. Cal. Mar. 19, 2020)

28  (Donato, J.) ("Once the abstract idea is removed, there are no allegations in the complaint or

Reply in Support of Defs.' Motion to Dismiss                                    Case No. 23-CV-5917-JD

5

1   patent as to claim 1's inventive concept or that the combination of claim limitations was not well-

2   understood, routine, or conventional."); *Open Text S.A. v. Alfresco Software Ltd.*, 2014 WL

3   4684429 at *5 (N.D. Cal. Sept. 19, 2014) (Donato, J.) ("The asserted claims in both patents

4   implement the basic marketing scheme **on a generic computer system without any meaningful**

5   **limitations**.") (emphasis added); *see also Open Text S.A. v. Box, Inc.*, 78 F.Supp.3d 1043, 1049

6   (N.D. Cal. 2015) (Donato, J.) ("[T]he Federal Circuit has found a claim reciting a 'server

7   component' invalid under section 101.").

8          Simply put, Plaintiff continues to identify no specific structure or physical components of

9   the patented system, other than generic servers that send and receive information.  This is

10  insufficient for the same reasons the Court has already held.  *See generally* Order at 7:25-8:7.

11         **2.**      ***Bascom* Is Distinguishable Because It Involved an Innovative "Ordered Combination"**

12         Plaintiff also again relies on *Bascom* 827 F.3d at 1350, to assert that the patents here claim

13  a "non-generic arrangement of known, conventional elements."  Opp. at 8:12.  Defendant

14  explained last time—and the Court has already rejected—the exact same argument.  *See, e.g.*,

15  Order at 8:23-25 ("BWB has not alleged that the order in which the three servers generate,

16  transmit, and receive information is in any way unconventional, or that the ordering improved

17  upon the prior art.").

18         As Defendants previously explained, the patent in *Bascom* claimed "the installation of a

19  filtering tool at a specific location, remote from the end-users, with ***customizable filtering features***

20  specific to each end user."  *Bascom*, 827 F.3d at 1350 (emphasis added).  That technological

21  improvement "g[a]ve the filtering tool both the benefits of a filter on a local computer and the

22  benefits of a filter on the ISP server . . . taking advantage of the ability of at least some ISPs to

23  identify individual accounts that communicate with the ISP server, and to associate a request for

24  Internet content with a specific individual account."  *Id.*  Importantly, the court in that case went

25  on to explain that "[t]he claims do not merely recite the abstract idea of filtering content along

26  with the requirement to perform it on the Internet, or to perform it on a set of generic computer

27  components.  ***Such claims would not contain an inventive concept***."  *Id.* (emphasis added).

28

Reply in Support of Defs.' Motion to Dismiss                     Case No. 23-CV-5917-JD

6

1    Here, unlike in *Bascom*, the patents claim the abstract idea of sending, receiving, and

2   displaying pre-customs clearance information and the implementation of that abstract idea using

3   generic computer components such as "processors," "servers," and "terminals." *See* Mot. at 6-10.

4   The patents provides no technical characteristics of any of these generic computer components,

5   which are literally black boxes. *See id.*; '366 Patent at Fig. 1.  Nor do the patents claim any

6   improved computer functionality or any specific features or arrangement of the servers. *See id.*

7   Indeed, unlike in *Bascom*, the asserted patents do not even say where any server must be located,

8   how any server is required to accomplish the required end result, or any particular components of

9   the generic servers.  Courts have routinely invalidated under § 101 similar patents that merely

10  claim a conventional "configuration" or "network" of generic devices that send and receive data.

11  *See*, *e.g.*, *Elec. Power*, 830 F.3d at 1355 ("But in this case the claims' invocation of ***computers,***

12  ***networks, and displays*** does not transform the claimed subject matter into patent-eligible

13  applications.  The claims at issue do not require any nonconventional computer, network, or

14  display components, or even a 'non-conventional and non-generic ***arrangement*** of known,

15  conventional pieces,' but merely call for performance of the claimed ***information collection,***

16  ***analysis, and display functions*** 'on a set of generic computer components' and display devices.")

17  (emphasis added); *MyMail, Ltd. v. ooVoo, LLC*, 613 F. Supp. 3d 1142, 1166 (N.D. Cal. 2020)

18  (claiming "basic configuration" of a network using "network servers/databases" and "processors,

19  memory, and support hardware" is insufficient because "the Federal Circuit has held that similar

20  components are generic"); *see also Yu*, 611 F. Supp. 3d at 916 (Donato, J.) (distinguishing *Bascom*

21  where plaintiff "has not plausibly alleged that the use of closely positioned sensors 'is a technical

22  improvement over prior art,' and so that cannot help claim 1 pass step 2 under Alice") (quoting

23  *Bascom*, 827 F.3d at 1350); *Broadcom Corp. v. Netflix, Inc.*, 598 F. Supp. 3d 800, 809 (N.D. Cal.

24  Apr. 13, 2022) (Donato, J.) ("Likewise, in *Bascom*, the specification explained that installing a

25  filtering tool at a specific location allowed for greater customization for users that was not possible

26  with previous systems . . . . ***Broadcom points to no similar disclosure*** . . . .") (emphasis added).

27    Indeed, unlike its prior opposition, Plaintiff does not even assert this time that the generic

28  servers are arranged in accordance with any "specific rules" or ordered functions, instead merely

Reply in Support of Defs.' Motion to Dismiss                    Case No. 23-CV-5917-JD

7

1    arguing without explanation that "[t]he overall improvement of the capabilities of the e-commerce

2    marketplace is achieved by the claimed combination and order of servers and processes

3    specifically recited in the claims of the patents-in-suit and plead in the FAC." Opp. at 12:5-7.  But

4    merely claiming a series of generic servers—with no specific functions, arrangement, or rules—is

5    insufficient to claim an inventive concept for the same reasons the Court has already found.  *See*

6    Order at 7-8.  And as explained above, the patents themselves identify prior art that did the same

7    thing, but after a product is sold.  *See* Mot. at 14.  Because using generic technology to perform

8    human tasks is not a "'technical improvement over prior art' . . . that can[] help claim 1 pass step 2

9    under Alice." *Yu v. Apple Inc.,* 611 F. Supp. 3d 908, 916 (N.D. Cal. 2020), aff'd, 1 F.4th 1040

10   (Fed. Cir. 2021) (Donato, J.) (quoting *Bascom,* 827 F.3d at 1350).

11           **3.     Plaintiff's Remaining Case Law All Involved Technical Improvements**

12           The smattering of other cases Plaintiff cites are all distinguishable for the same reasons set

13   forth above.  In *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir.

14   2016), the patent claimed "computer code for using the accounting information with which the

15   first network accounting record is correlated to enhance the first network accounting record" using

16   "the invention's distributed architecture."  The court explained that "this claim entails ***an***

17   ***unconventional technological solution*** (enhancing data in a distributed fashion) to a technological

18   problem," requiring that "generic components ***operate in an unconventional manner*** to achieve

19   an improvement in computer functionality."  *Id.* (emphasis added).  Again, in this case, Plaintiff

20   does not allege any "unconventional" manner (or, for that matter, any manner at all) that the

21   generic servers process routine customs information or any technical improvement over the prior

22   art.

23           Similarly, in *CosmoKey Solutions GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1098

24   (Fed. Cir. 2021), the court explained that "[t]he '903 patent claims and specification recite ***a***

25   ***specific improvement to authentication*** that increases security, prevents unauthorized access by a

26   third party, is easily implemented, and can advantageously be carried out with mobile devices of

27   low complexity," including four discrete steps unknown in the prior art such as using a

28   "predetermined time relation," "ensuring that the authentication function is normally inactive,"

1    using "information that the authentication function is active," and "thereafter ensuring that the

2    authentication function is automatically deactivated." *Id.* For the same reasons set out above, the

3    nonce servers here are not alleged to perform any novel technological function in any novel way.

4        Finally, in *Aatrix Software v. Green Shades Software*, 882 F. 3d 1121, 1125 (Fed. Cir.

5    2018), the proposed amended complaint involved specific allegations that the invention was novel

6    over the prior art and included specific technological improvements. There, the Federal Circuit

7    held that the district court had erred in **denying leave to amend** when the proposed amendment

8    "supplies numerous allegations related to the inventive concepts present in the claimed form file

9    technology," including "describ[ing] the development of the patented invention . . . the problems

10   present in prior art computerized form file creation . . . [and] **specific allegations directed to**

11   **'improvements and problems solved by the Aatrix patented inventions**,'" including detailed

12   factual allegations claimed a new way to "allow data to be imported into the viewable electronic

13   form from outside applications." *Id.* at 1127 (emphasis added).

14       In their opening brief, Defendants cited numerous cases expressly distinguishing *Aatrix*

15   and explaining why conclusory allegations—like those at issue here—that an invention is "novel"

16   or "inventive" are not enough to survive a § 101 challenge. *See generally* Mot. at 12-13; *see, e.g.*,

17   *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1357 (Fed. Cir. 2024) (citing *Aatrix* and then

18   explaining that "[t]here is no plausible, non-conclusory allegation that the claimed GPS is

19   anything other than part of, as the district court put it, 'a set of generic computer components'");

20   *Yu v. Apple Inc.*, 392 F. Supp. 3d 1096, 1106 (N.D. Cal. July 2, 2019) (distinguishing *Aatrix* at

21   length because, there, "plaintiffs made non-conclusory allegations establishing an inventive

22   concept"). Plaintiff does not respond to or even mention any of these cases, much less explain

23   why Plaintiff's wholly conclusory allegations would be distinguishable from any of these cases.

24   Because Plaintiff does not attempt to make any non-conclusory factual allegations concerning

25   what makes the generic servers novel over the prior art, *Aatrix* has no application.

26   **II.    PLAINTIFF FAILS ADEQUATELY TO PLEAD DIRECT INFRINGEMENT**

27       Plaintiff makes only a conclusory attempt to explain how the FAC alleges direct

28   infringement. ***First***, with respect to whether any product is sold in the U.S., Plaintiff points to

Reply in Support of Defs.' Motion to Dismiss                        Case No. 23-CV-5917-JD

9

1    allegations that "Defendants 'collectively owned, controlled and operated the websites at the

2    URLs: www.alibaba.com . . . and www.aliexpress.com . . . both accessible throughout the United

3    States and in this judicial district." Opp. at 14:8-11.  For the same reasons Defendants explained

4    before, this type of conclusory allegation—with no supporting factual allegations—fails because,

5    where "the situs of use of the system as a whole . . . is [abroad], not the United States," there is no

6    domestic infringement.  *CNET Networks, Inc. v. Etilize, Inc.*, 528 F. Supp. 2d 985, 991 (N.D. Cal.

7    2007).  In other words, the alleged infringer must "control the system as a whole and obtain

8    benefit from it" in the United States.  *See, e.g.*, *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l,*

9    *Inc.*, 631 F.3d 1279, 1283-84 (Fed. Cir. 2011).  Here, the patents claim servers located in whole or

10   in part outside the U.S.  *See, e.g.*, '366 Patent at Claim 1.

11       ***Second***, Plaintiff's opposition continues to rely upon cursory claim charts that do not

12   purport to address numerous required claim elements.  For example, Plaintiff still does not even

13   say ***what servers*** comprise the alleged "EC servers," "administration servers," and the other

14   elements of the asserted claims.  *See* Opp. at 13.  Nor does Plaintiff attempt to show how the

15   products connect to a "customs authority," display the required pre-customs information on a

16   "user terminal," or meet numerous other claim elements, as Plaintiff's brief acknowledges.  *Id.*

17       ***Finally***, Plaintiff again concedes there are no facts pled in the FAC showing that any

18   Defendant had knowledge of any asserted patent or of the alleged infringement.  Opp. at 15.  For

19   the second time, Plaintiff merely argues that, because it ***said*** Defendants willfully infringed, that is

20   sufficient.  That is simply not the law.  *Vasudevan Software, Inc. v. TIBCO Software Inc.*, 2012

21   WL 1831543, at *4 (N.D. Cal. May 18, 2012) (rejecting "conclusory assertion of willful

22   infringement").

23                                          **<u>CONCLUSION</u>**

24       For all of the reasons set forth above and in their opening brief, Defendants respectfully

25   submit that the Court should dismiss the FAC with prejudice.

26

27

28

Reply in Support of Defs.' Motion to Dismiss                                   Case No. 23-CV-5917-JD

10

1

Dated: October 23, 2024

2

SIMPSON THACHER & BARTLETT LLP

3

4

By /s/ Bo Bryan Jin

5

BO BRYAN JIN (SBN 278990)
bryan.jin@stblaw.com

6

JONATHAN C. SANDERS (SBN 228785)
jsanders@stblaw.com

7

SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street

8

Palo Alto, CA  94304
Telephone: 650-251-5000
Facsimile: 650-251-5002

9

10

*Counsel for Defendants Alibaba Cloud US LLC,
Alibaba Cloud US LLC, and Alibaba.com US LLC*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply in Support of Defs.' Motion to Dismiss                    Case No. 23-CV-5917-JD

11